1  DANIEL J. BUSSEL (State Bar No. 121939),
   MICHAEL L. TUCHIN (State Bar No. 150375), and
2  BRENDT C. BUTLER (State Bar No. 211273), Attorneys with
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3  2121 Avenue of the Stars, 33rd Floor
   Los Angeles, California 90067-5061
4  Telephone:   (310) 407-4000
   Facsimile:   (310) 407-9090
5

FILED

JUN 3 0 2003

AV U I

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                          Deputy Clerk

6  Reorganization Counsel for
   Debtors and Debtors in Possession

7  <u>Debtors' Mailing Address</u>
   27442 Portola Parkway, Suite 200
8  Foothill Ranch, CA 92610

9              **UNITED STATES BANKRUPTCY COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
10                **LOS ANGELES DIVISION**

11 In re:                          Case No.:   LA 01-39678 BB through
                                               LA 01-39697 BB
12 **FOUNTAIN VIEW, INC.**, a Delaware
   corporation, et al.            And         LA 01-45516 BB;
13                                            LA 01-45520 BB; and
                                              LA 01-45525 BB
14                                (Jointly Administered under Case No.
                                  LA 01-39678 BB)
15             Debtors.
                                  Chapter 11
16
                                  **DEBTORS' THIRD AMENDED**
17                                **JOINT PLAN OF**
                                  **REORGANIZATION DATED APRIL**
18                                **22, 2003**

19                                **<u>Confirmation Hearing</u>**

20                                **Date:**   July 3, 2003
                                  **Time:**   11:00 a.m.
21                                **Place:**  Courtroom 1475
                                             Royal Federal Building
22                                           255 E. Temple Street
                                             Los Angeles, CA 90012
23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

ORIGINAL

60419_1.DOC

# TABLE OF CONTENTS

I.   DEFINITIONS ........................................................................................... 1

    A.   Defined Terms. .............................................................................. 1

    B.   Rules of Construction. ................................................................. 20

II.  DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND
     INTERESTS ......................................................................................... 21

    A.   Summary of Classification of Claims. ....................................... 21

    B.   Allowance and Treatment of Unclassified Claims (Administrative
         Claims, Priority Tax Claims, and Priority Claims). .................... 23

         1.   Administrative Claims. ...................................................... 23

         2.   Priority Claims. ................................................................... 26

    C.   Classification and Treatment of Secured Claims (Classes 1, 2, 3, 4, 5, 6,
         7, & 8). .......................................................................................... 26

         1.   Class 1 (Bank Midwest—Impaired). ................................. 26

         2.   Class 2 (Woodlands Place Nursing Center, L.P.—Impaired) ... 27

         3.   Class 3 (Secured Tax Claims—Unimpaired). .................... 28

         4.   Class 4 (Union Bank of California—Unimpaired). ........... 28

         5.   Class 5 (Leonard and Catherine May—Unimpaired). ....... 29

         6.   Class 6 (Bergen—Impaired). .............................................. 29

         7.   Class 7 (Other Secured Claims Including Personal Property
              Lessors—Unimpaired). ...................................................... 30

         8.   Class 8 (Agent and Lenders—Unimpaired). ..................... 31

    D.   Classification and Treatment of Unsecured Claims (Classes 9, 10, 11, &
         12). ................................................................................................ 32

         1.   Class 9 (11¼% Notes—Impaired). ................................... 32

         2.   Class 10 (General Unsecured Claims—Impaired). ........... 35

         3.   Class 11 (Convenience Claims—Unimpaired). ................. 39

         4.   Class 12 (Insured Professional Liability Claims—Impaired). ... 39

         5.   Class 13 (Other Subordinated Claims—Impaired). ........... 40

    E.   Treatment of Interests (Classes 14, 15, 16, 17, 18, & 19). ........... 40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

1.    Class 14 (Existing Preferred Stock—Impaired). ...................................... 40

2.    Class 15 (Existing Class A Common Stock—Impaired). ...................... 41

3.    Class 16 (Existing Class B Common Stock—Impaired). ...................... 42

4.    Class 17 (Existing Class C Common Stock—Impaired). ...................... 42

5.    Class 18 (Existing Warrants—Impaired). ............................................. 42

6.    Class 19 (Existing Management Incentives and Other Existing
      Interests—Impaired). ............................................................................. 43

III.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES ........................................................................................................ 43

    A.    Assumption and Assignment of Contracts and Leases. ...................... 43

        1.    Schedule of Assumed or Assigned Agreements. ..................... 43

        2.    Cure Payments. ......................................................................... 44

        3.    Objections to Assumption or Assignment or Proposed Cure
              Payments. ................................................................................. 45

        4.    Liens with Respect to Assumed Contracts and Leases Pursuant to
              the Exit Facility and Plan. ....................................................... 45

    B.    Rejection of Contracts and Leases. ...................................................... 46

        1.    Schedule of Rejected Agreements. ........................................... 46

        2.    Bar Date for Rejection Damage Claims. .................................. 47

    C.    Postpetition Contracts and Leases. ...................................................... 47

IV.    MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN AND
       OTHER PROVISIONS .................................................................................. 48

    A.    Substantive Consolidation. .................................................................. 48

    B.    Corporate Restructuring Plan. ............................................................. 48

    C.    Exit Facility. ......................................................................................... 49

    D.    Amendment to Articles of Incorporation. ........................................... 50

    E.    The Claims Agent. ................................................................................ 50

        1.    Designation of the Claims Agent. ............................................ 50

        2.    Powers and Duties. ................................................................... 50

    F.    Revesting of Assets. ............................................................................. 51

    G.    Preservation of Causes of Action. ....................................................... 51

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

H.   Objections to Claims and Interests. ................................................................ 52

I.   Distribution of Property Under the Plan. ...................................................... 53

   1.   Manner of Cash Payments Under The Plan. ......................................... 53

   2.   No *De Minimis* Distributions. ................................................................. 53

   3.   No Distribution with Respect to Disputed Claims ............................ 53

   4.   Delivery of Distributions and Undeliverable or Unclaimed
        Distributions. ........................................................................................... 54

        a.   Delivery of Distributions in General. ..................................... 54

        b.   Delivery of 11¼% Noteholder Distributions. ....................... 54

        c.   Distribution to Interest Holders Under the Plan. ............... 56

        d.   Undeliverable and Unclaimed Distributions. ..................... 57

J.   Cancellation of Interests. ................................................................................... 58

K.   Full Satisfaction. .................................................................................................. 58

L.   Compliance With Tax Requirements. .............................................................. 58

M.   Setoff, Recoupment and Other Rights. ........................................................... 58

N.   Dissolution of the Debtors other than Fountain View, Inc., Summit Care
     Pharmacy, Inc., and the Other Reorganized Debtors. ............................... 58

O.   Conditions to Effectiveness of the Plan. ........................................................ 59

   1.   Conditions. ................................................................................................. 59

   2.   Waiver of Conditions. .............................................................................. 59

V.   MISCELLANEOUS PROVISIONS ............................................................................. 60

A.   Limitations of Liability. ...................................................................................... 60

   1.   For Solicitation or Participation. ............................................................ 60

   2.   For Actions in Connection with Plan and Related Matters. ............. 60

   3.   No Admissions. .......................................................................................... 61

B.   Dissolution of Committees. ............................................................................... 61

C.   Exemption from Certain Transfer Taxes. ....................................................... 61

D.   Modifications of the Plan. .................................................................................. 62

E.   Revocation of the Plan. ....................................................................................... 62

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

F.   Post-Effective Date Effect of Evidences of Claims or Interests. ......................... 62

G.   Nonapplicability of Local Rule 3020-1(2). ......................................................... 62

H.   Successors and Assigns. ........................................................................................ 62

I.   Saturday, Sunday, or Legal Holiday. .................................................................... 63

J.   Governing Law. ..................................................................................................... 63

K.   Severability of Plan Provisions. ........................................................................... 63

L.   Application of Code Section 1145. ....................................................................... 63

VI.   EFFECT OF CONFIRMATION OF THE PLAN. ........................................................ 64

A.   Discharge and Injunction. ..................................................................................... 64

B.   Payment of Statutory Fees. ................................................................................... 65

C.   Retention of Jurisdiction. ...................................................................................... 65

VII. RECOMMENDATION AND CONCLUSION .............................................................. 68

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

Fountain View, Inc. and its 22 Chapter 11 affiliates, debtors and debtors in possession in the above-captioned jointly administered chapter 11 cases, hereby propose this *Debtors' Third Amended Joint Plan of Reorganization Dated April 22, 2003.*

# I.

## DEFINITIONS

### A.   Defined Terms.

In addition to any other terms that are defined in the Plan, the following capitalized terms, when used in the Plan or the accompanying Disclosure Statement, have the meanings set forth below.

**"Administrative Claim"** means a Claim for administrative costs or expenses that are allowable under Code sections 503(b), 507(b), or 1114(e). These costs or expenses may include:  (i) Administrative Tax Claims; (ii) Ordinary Course Administrative Claims; or (iii) Non-Ordinary Course Administrative Claims.

**"Administrative Tax Claim"** means a Claim that is not an Allowed Secured Claim and that a government unit asserts against a Debtor either for taxes or for related interest or penalties for any period of time that—in whole or in part—falls after the commencement of the Reorganization Cases through and including the Effective Date.

**"ADR Procedures"** means those procedures (as they may be modified by the Plan and Confirmation Order) supplementing the Claims adjudication procedures set forth in the Code and the Bankruptcy Rules for the liquidation of professional liability Claims established by the *Order Establishing Alternative Dispute Resolution Procedures* (the "ADR Order") entered on the Court's official docket on June 17, 2002. Pursuant to the ADR Procedures, all holders of prepetition personal injury or wrongful death claims and their attorneys, agents, employees, servants, and successors are stayed from proceeding against the Debtors and any successors (including the Estates and the Reorganized Enterprise), any other defendant or defendants with respect to such claims and their insurers. The Debtors' primary and excess insurance carriers are also obligated to participate in good faith in the mediations provided for by the ADR Procedures. Those parties that submit to the ADR

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    Procedures agree to participate in negotiations and mediate with the Debtors to attempt to

2    reach a settlement. The Plan provides for the Court to enter an injunction pursuant to the

3    Confirmation Order, providing that the commencement or continuation of all personal injury

4    or wrongful death actions will be enjoined from proceeding except in conformity with the

5    ADR Procedures (or, as applicable, the Code's claim adjudication process). Pursuant to the

6    Plan and the Confirmation Order, the ADR Procedures will apply to all personal injury or

7    wrongful death actions that are based on Claims that arose prior to the Confirmation Date.

8    Relief from the injunction implementing the ADR Procedures and established by the

9    Confirmation Order will not be granted unless (i) both the entity seeking relief from the

10    injunction and the Reorganized Enterprise certify in writing that they have attempted to settle

11    their dispute in good faith pursuant to the ADR Procedures, and, notwithstanding the

12    completion of the ADR Procedures, they have failed to reach a settlement; or (ii) the entity

13    seeking relief from the injunction established by the Confirmation Order otherwise

14    establishes good cause not to follow the ADR Procedures under the circumstances of the

15    particular case.

16        **"Agent"** means Bank of Montreal, and its successors and assigns, as Agent for

17    the Lenders pursuant to the Prepetition Credit Agreement.

18        **"Allowed Administrative Claim"** means an Administrative Claim that is

19    allowed as set forth in Section II.B.1.

20        **"Allowed Claim" or "Allowed Interest"** means with respect to any of the

21    Debtors, as the case may be, a Claim or Interest, other than an Administrative Claim, to the

22    extent that:

23        (i)    Either: (a) a proof of Claim or proof of Interest was timely Filed; or (b)

24    a proof of Claim or proof of Interest is deemed timely Filed either under Bankruptcy Rule

25    3003(b)(1)-(2) or by a Final Order; and

26        (ii)    Either: (a) the Claim or Interest is not a Disputed Claim or a Disputed

27    Interest; or (b) the Claim or Interest is allowed either by a Final Order or under the Plan.

28        Unless otherwise specified in the Plan, an Allowed Claim does not include

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  interest on the Claim accruing after the Petition Date.  Moreover, any portion of a Claim that

2  is satisfied or released during the Reorganization Cases is not an Allowed Claim.

3          **"Avoidance Actions"** means any causes of action held by any of the Debtors

4  or the Estates arising out of Code sections 542, 544, 545, 547, 548, 549, 550, 551, and 553.

5          **"Ballot"** means the form of ballot approved by the Court for parties in interest

6  in the Reorganization Cases to cast votes and make appropriate elections under the Plan.

7          **"Bank Midwest Advance"** means the advance to Reorganized Fountain View

8  in the amount of $630,000 from the holder of the Class 1 Claim to be made within five days

9  after the Effective Date on the terms set forth in the Bank Midwest Stipulation.

10          **"Bank Midwest Amended and Restated Note"** means the amended and

11  restated promissory note made by the New Woodlands Entity in a principal amount equal to

12  (i) $4,927,126 (ii) Bank Midwest's reasonable legal fees and expenses in an amount not to

13  exceed $75,000, (iii) $630,000, and (iv) $1,206.13; payable in equal monthly installments of

14  principal and interest at 6% based on a 300-month (25-year) amortization schedule (and

15  monthly tax and insurance payments as required by the Deed of Trust Note held by the

16  holder of the Class 1 Claim) commencing on the Effective Date, but maturing in full on the

17  seventh anniversary of the Effective Date, and prepayable without premium or penalty at any

18  time, and otherwise, except as may hereafter be expressly agreed by the Debtors and the

19  holder of the Class 1 Claim, on the same terms as those of that certain Deed of Trust Note

20  dated March 6, 1985 as subsequently renewed, modified, extended and consolidated pursuant

21  to that certain Allonge thereto dated December 1, 1993.

22          **"Bank Midwest Deed of Trust"** means that certain Deed of Trust dated

23  December 1, 1993 assigned to Bank Midwest by instrument dated July 17, 2001 recorded in

24  the real property records of Montgomery County, Texas and constituting a first priority lien

25  against the real property associated with the long-term care facility known as the

26  "Woodlands" located in such county and owned and operated by the Debtors.

27          **"Bank Midwest Security Agreement"** means a new security agreement

28  between the holder of the Class 1 Claim and the New Woodlands Entity that, except as may

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

be expressly agreed otherwise by the Debtors and the holder of the Class 1 Claim, shall be on the same terms as that certain Security Agreement dated December 1, 1993 between Bank Midwest's predecessor in interest, the Secretary of Housing and Urban Development, and Woodlands Place Nursing Center, Inc., and that, when properly perfected, will constitute a first priority lien against the property subject to the Bank Midwest Security Agreement.

**"Bank Midwest Stipulation"** means that certain *Stipulation Regarding Treatment Of Bank Midwest Claim Under Debtors' Amended Joint Plan Of Reorganization* dated April 14, 2003 between Bank Midwest, N.A. and the Debtors and approved by Order of the Court on April 15, 2003.

**"Bankruptcy Code"** or **"Code"** means title 11 of the United States Code, as applicable in the Reorganization Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as applicable in the Reorganization Cases.

**"Bar Date"** means August 30, 2002 or such later date as fixed by the Court, pursuant to the Court's *Order (1) Establishing Procedures And Deadlines For Filing Proofs Of Claim And Interest; (2) Establishing Ramifications For Failure To Comply Therewith; And (3) Approving Form And Scope Of Notice Thereof* entered on the Court's official docket on June 5, 2002.

**"Bergen"** means AmerisourceBergen Drug Corporation, formerly known as Bergen-Brunswig Drug Company, the holder of the Class 6 Claim.

**"Bergen Note"** means the secured promissory note in the form filed with the Court on or before the Exhibit Filing Date issued to Bergen (or, if applicable, any transferee of Bergen holding the Class 6 Claim) by Reorganized Summit Care Pharmacy.

**"Business Assets"** means the rights, titles, interests, licenses, permits, and property (constituting substantially all the assets related to the operations of the Debtors' businesses) transferred or assigned to the Post-Effective Date Subsidiaries pursuant to the Corporate Restructuring Plan or retained by Reorganized Summit Care Pharmacy or the Other Reorganized Debtors.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    **"Business Day"** means a day that is not a Saturday, Sunday, or legal holiday

2    (as such term is defined in Bankruptcy Rule 9006(a)).

3    **"Check-the-Box Election"** means an election made under Section 301.7701-3

4    of the Tax Code.

5    **"Claim"** means a claim as defined in Code section 101(5) against any Debtor

6    or any Estate.

7    **"Class"** means a group of Claims or Interests as classified under the Plan.

8    **"Class 10 Deferred Obligation"** means the secured obligation of Reorganized

9    Fountain View under the Plan in the principal amount equal to 60% of the Allowed Claim of

10   each holder of a Class 10 Allowed Claim electing payment option 10B who is not a

11   Continuing Creditor.

12   **"CMS Stipulation"** means that certain stipulation, resolving certain alleged

13   deficiencies cited in prepetition surveys conducted by the Texas Department of Human

14   Services, between the Center for Medicare and Medicaid Services of the United States

15   Department of Health and Human Services and Summit Care Texas, L.P. dated as of

16   September 9, 2002 and approved by the Court by Order entered on its official docket

17   October 7, 2002.

18   **"General Claim Holder Agency Agreement"** means the agency agreement

19   between Reorganized Fountain View and the Claims Agent (and such related documents as

20   are necessary to evidence and perfect the liens created to secure the Class 10 Deferred

21   Obligation, the Continuing Creditor Deferred Obligation and the Vendors' Lien under

22   otherwise applicable non-bankruptcy law) pursuant to which the Claims Agent shall be

23   authorized to enforce the Class 10 Deferred Obligation, the Continuing Creditor Deferred

24   Obligation and the Vendors' Lien, all such documents in a form to be submitted by the

25   Debtors in the Plan Supplement and reasonably acceptable to the Creditors' Committee.

26   **"Claims Agent"** means the agent under the General Claim Holder Agency

27   Agreement.

28   **"Committees"** means the Creditors' Committee and the Noteholders'

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1     Committee.

2     **"Confirmation Date"** means the date on which the Confirmation Order is

3     entered on the Court's official docket.

4     **"Confirmation Hearing"** means the hearing regarding Plan confirmation held

5     pursuant to Bankruptcy Code section 1128.

6     **"Confirmation Hearing Date"** means the first date on which the Court holds

7     the Confirmation Hearing.

8     **"Confirmation Order"** means the Court order under Code section 1129

9     confirming this Plan as it may be subsequently amended or modified.

10     **"Continuing Creditor"** means those holder of a Class 10 Claim designated on

11     Exhibit 13 to the Disclosure Statement or as may otherwise be specifically designated in

12     writing by the Debtors that have agreed to extend new credit in connection with providing

13     goods or services to the Reorganized Enterprise in an amount and on terms no less favorable

14     than the terms extended by such holder to the Debtors prior to the Petition Date or in an

15     amount and on terms otherwise acceptable to the Reorganized Enterprise.

16     **"Continuing Creditor Deferred Obligation"** means the secured obligation of

17     Reorganized Fountain View under the Plan in the principal amount equal to 35% of the

18     Allowed Claim of each holder of a Class 10 Allowed Claim electing payment option 10B

19     that is a Continuing Creditor.

20     **"Convenience Claims"** means Allowed Unsecured Claims, other than Claims

21     for principal and interest arising under the 11¼% Notes, that are either:  (i) less than or equal

22     to $1,000; or (ii) voluntarily compromised by the holder pursuant to the Convenience Class

23     Election.

24     **"Convenience Class Election"** means the timely election by the holder of an

25     Allowed Unsecured Claim (other than Claims arising under the 11¼% Notes) in excess of

26     $1,000 to receive $1,000 in cash on the Effective Date on account of all such holder's Class

27     10 Allowed Claims, in lieu of the treatment otherwise afforded Class 10 Claims, and in full

28     satisfaction thereof.  Notwithstanding the foregoing, any holder that makes the Convenience

KLEE, TUCHIN, BOGDANOFF & STEIN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  Class Election but holds aggregate Allowed Class 10 Claims in excess of $1,250 will be
2  treated in Class 10 under payment option 10A as voting in favor of the Plan and will receive
3  cash equal to 80% of such holder's Allowed Claims without postpetition interest.

4       **"Corporate Restructuring Plan"** means the transactions pursuant to which
5  the Business Assets of the Debtors (other than those retained by Reorganized Summit Care
6  Pharmacy or the Other Reorganized Debtors) will be transferred to the Post-Effective Date
7  Subsidiaries pursuant to the Plan and the Corporate Restructuring Closing Documents.

8       **"Corporate Restructuring Closing Documents"** means the final
9  documentation for the Corporate Restructuring Plan to be Filed by the Debtors as part of the
10  Plan Supplement.

11       **"Court"** means the United States Bankruptcy Court for the Central District of
12  California or any other court that properly exercises jurisdiction over the Reorganization
13  Cases.

14       **"Creditors' Committee"** means the official committee of creditors holding
15  unsecured Claims (other than Claims arising under the 11¼% Notes) that the U.S. Trustee
16  appointed, pursuant to Bankruptcy Code section 1102, in the Reorganization Cases.

17       **"Cure Payments"** means amounts that Bankruptcy Code section 365(b)(1)
18  requires be paid in order for the Debtors to cure defaults under the executory contracts and
19  unexpired leases listed on the Schedule of Assumed or Assigned Agreements that will be
20  assumed or assigned under the Plan.

21       **"Debtor"** means any of the Debtors, individually, as the case may be.

22       **"Debtors"** means, collectively, Fountain View, Inc., a Delaware corporation;
23  Fountain View Holdings, Inc., a Delaware corporation; Fountain View Management, Inc., a
24  California corporation; Summit Care Corporation, a California corporation; Summit Care
25  Pharmacy, Inc., a California corporation; Summit Care Management Texas, Inc., a Texas
26  corporation; Summit Care Texas, L.P., a Texas limited partnership; Summit Care Texas
27  Equity, Inc., a California corporation; Summit Care Texas No. 2, Inc., a Texas corporation;
28  Summit Care Texas No. 3, Inc., a Texas corporation; Summit Care California, Inc., a

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1 DOC

7

1    California corporation; Elmcrest Convalescent Hospital, a California corporation; BIA Hotel

2    Corp., a California corporation; AIB Corp., a California corporation; Fountainview

3    Convalescent Hospital, a California corporation; Alexandria Convalescent Hospital, Inc., a

4    California corporation; Rio Hondo Nursing Center, a California corporation; Sycamore Park

5    Convalescent Hospital, a California corporation; Brier Oak Convalescent, Inc., a California

6    corporation; I. 'n O., Inc., a California corporation; Locomotion Therapy, Inc., a Delaware

7    corporation; Locomotion Holdings, Inc., a Delaware corporation; and On-Track Therapy

8    Center, Inc., a California corporation.

9        **"Debtors' Counsel"** means Klee, Tuchin, Bogdanoff & Stern LLP.

10        **"Disbursing Agent"** means Reorganized Fountain View or any entity or

11    entities employed by Reorganized Fountain View, in its sole discretion, to make

12    disbursements in accordance with the Plan; provided, however, that, with respect to Claims

13    for principal and interest arising under the 11¼% Notes, the Disbursing Agent means the

14    Indenture Trustee.

15        **"Disclosure Statement"** means the *Debtors' Disclosure Statement Dated*

16    *April 22, 2003,* as it may be amended, Filed in connection with the Plan.

17        **"Disputed Claim or Disputed Interest"** means a Claim or Interest:

18        (i)    As to which a proof of Claim is Filed or is deemed Filed under

19    Bankruptcy Rule 3003(b)(1) or a proof of Interest is Filed or is deemed Filed under

20    Bankruptcy Rule 3003(b)(2); and

21        (ii)    As to which:  (a) an objection has been timely Filed and has not been

22    overruled by a Final Order or withdrawn; or (b) a Debtor has listed such Claim or Interest on

23    its Schedules as disputed, contingent, or unliquidated.

24        **"Distribution Date"** means the date, occurring on or as soon as reasonably

25    practicable (and in no event more than 30 days) after the Effective Date, on which the

26    Disbursing Agent first makes distributions to holders of Allowed Claims and Allowed

27    Interests under the Plan.

28        **"Effective Date"** means the first day that is a Business Day (i) that is at least

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    eleven days after the Confirmation Date, (ii) on which no stay of the Confirmation Order is

2    in effect, and (iii) on which all of the conditions set forth in Section IV.O, below, have been

3    satisfied or waived in accordance with the Plan.

4        **"11¼% Notes"** means the 11¼% Senior Subordinated Notes due 2008 issued

5    by Fountain View, Inc. pursuant to that certain trust indenture dated April 16, 1998 between

6    State Street Bank & Trust, N.A. and Fountain View, Inc.  Claims for principal and interest

7    arising under the 11¼% Notes shall be Allowed Claims in an aggregate amount equal to

8    $133,012,500.

9        **"Estates"** means the estates created in the Reorganization Cases under Code

10    section 541.

11        **"Excess Cash Flow"** means the amount (based on annual audited results, not

12    projected cash flows) by which Reorganized Fountain View and the Post-Effective Date

13    Subsidiaries, on a consolidated basis, generate cash in excess of their reasonable operating,

14    financing, and investing needs (including, without limitation, scheduled amortization and

15    mandatory prepayment of the Class 10 Deferred Obligation and the Continuing Creditor

16    Deferred Obligation) to be determined in accordance with the terms of the indenture

17    governing the New Public Notes in a manner reasonably acceptable to the Debtors, the

18    Noteholders' Committee, and the lenders under the Exit Facility.

19        **"Exhibit Filing Date"** means the date that is the last Business Day that is at

20    least ten days prior to the Confirmation Hearing Date.

21        **"Existing Class A Common Stock"** means the 1,000,000 shares of Class A

22    Common Stock of Fountain View, Inc. issued and outstanding immediately prior to the

23    Effective Date.

24        **"Existing Class B Common Stock"** means the 114,202 shares of Class B

25    common stock of Fountain View, Inc. issued and outstanding immediately prior to the

26    Effective Date.

27        **"Existing Class C Common Stock"** means the 20,742 shares of Class C

28    common stock of Fountain View, Inc. issued and outstanding immediately prior to the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

Effective Date.

"**Existing Management Incentives**" means the options to purchase 23,793 shares of Existing Class C Common Stock issued to present and former directors, officers and employees.

"**Existing Preferred Stock**" means the 15,000 shares of preferred stock of Fountain View, Inc. issued and outstanding immediately prior to the Effective Date.

"**Existing Warrants**" means the warrants issued and outstanding immediately prior to the Effective Date to purchase 50,377 shares of Existing Class C Common Stock at a price of $.01 per share.

"**Exit Facility**" means the term loans and revolving loans and commitments to be made to the Reorganized Enterprise pursuant to the Exit Facility Closing Documents and Section IV.C as a condition to the occurrence of the Effective Date.   The liens and security interests securing the Exit Facility shall be subject to prior liens and security interests retained by the holders of Class 1, Class 2, Class 3, Class 4 and Class 7 Claims pursuant to the Plan and contractually senior to the liens securing the Bergen Note, the Class 10 Deferred Obligation, the New Public Notes, the Continuing Creditor Deferred Obligation, and the Vendors' Lien.

"**Exit Facility Closing Documents**" means the final documentation contemplated by the Exit Facility Commitment Letters evidencing and establishing the Exit Facility in the form to be submitted by the Debtors in the Plan Supplement.

"**Exit Facility Commitment Letters**" means that certain commitment letter dated March 6, 2003, as it may thereafter be amended, between CapitalSource Finance LLC, Highbridge/Zwirn Opportunity Fund LP and the Debtors; and that certain commitment letter dated March 7, 2003, as it may thereafter be amended, between Column Financial, Inc. (an affiliate of Credit Suisse First Boston) and the Debtors.   The Exit Facility Commitment Letters are attached as exhibits to the Disclosure Statement.

"**Filed**" means filed with the Court and reflected on the Court's official docket.

"**Final Order**" means an order or judgment of the Court entered on the Court's

KLEE, TUCHIN, BOGDANOFF & STEIN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  official docket:

2       (i)   that has not been reversed, rescinded, or stayed;

3       (ii)   that is in full force and effect; and

4       (iii)  with respect to which:  (a) the time to appeal or to seek review, remand,

5  rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or

6  petition for review, rehearing, remand, or *writ of certiorari* is pending; or (b) any such appeal

7  or petition has been dismissed, withdrawn, or resolved by the highest court to which the

8  order or judgment was timely appealed, or from which review, rehearing, remand, or a *writ*

9  *of certiorari* was timely sought.

10       **"Indenture Trustee"** means US Bank, N.A., in its capacity as successor

11  indenture trustee for the 11¼% Notes pursuant to that certain trust indenture dated April 16,

12  1998 between State Street Bank & Trust, N.A. and Fountain View, Inc.

13       **"Initial Cash Payment"** means $50 million dollars plus an amount equal to

14  the amount (if any) by which the Debtors' cash, cash equivalents, and undrawn revolving

15  commitments on the Effective Date exceed $30 million after giving effect to all payments

16  required by the Plan.

17       **"Interest"** means the interest, whether or not asserted, of any holder of an

18  equity security of the Debtors as defined in Code section 101(17), including the Existing

19  Class A Common Stock, the Existing Class B Common Stock, the Existing Class C

20  Common Stock, Existing Warrants, and Existing Management Incentives.

21       **"Lenders"** means the Agent, and those parties for whom the Agent acts, to

22  wit, the Bank of Montreal, BNP Paribas, ING Capital Advisors LLC, PB Capital Corp.,

23  Heller Financial Corp., General Electric Capital Corp., Golden Tree High Yield Opportunity

24  Fund I and II, Pilgrim America Prime Rate Trust, and Credit Suisse First Boston, and their

25  respective successors and assigns, as lenders under the Prepetition Credit Agreement.

26       **"New Class A Common Stock"** means the Class A Common Stock of

27  Reorganized Fountain View to be issued and outstanding as of the Effective Date.

28       **"New Preferred Stock"** means the preferred stock of Reorganized Fountain

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

11

View to be issued and outstanding as of the Effective Date.

**"New Public Notes"** means notes issued under the Plan to holders of Class 9 Allowed Claims by Reorganized Fountain View and guaranteed by Reorganized Summit Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective Date Subsidiaries (except for any special purpose entities formed for insurance coverage purposes) to the extent permitted by the Exit Facility.

**"New Woodlands Entity"** means the Post-Effective Date Subsidiaries to be formed under the Plan to own and operate the long-term care facility owned by Summit Care Texas, L.P., located in Montgomery County, Texas and known as the "Woodlands."

**"Non-Ordinary Course Administrative Claims"** means Administrative Claims that are not Ordinary Course Administrative Claims and include: (i) Professional Fee Claims; (ii) Cure Payments; (iii) U.S. Trustee fees under 28 U.S.C. § 1930; (iv) the reasonable trustee fees and expenses, and the reasonable attorneys' fees and expenses, of the Indenture Trustee in the aggregate approximate amount of $125,000; and (v) any other Claim arising after the Petition Date and before the Effective Date that is not an Ordinary Course Administrative Claim.

**"Noteholders' Committee"** means the official committee of holders of the 11¼% Notes that the U.S. Trustee appointed, pursuant to Code section 1102, in the Reorganization Cases.

**"Noteholder Prepayment Percentage"** means the ratio (expressed as a percentage) of the cumulative aggregate principal prepayments made on account of the New Public Notes to the aggregate principal amount of New Public Notes issued on the Effective Date.

**"Noteholders' Stock"** or **"Noteholders' Stock Distribution"** means 58,642 shares of New Class A Common Stock issued to holders of Class 9 Allowed Claims by Reorganized Fountain View.

**"Ordinary Course Administrative Claims"** means any Administrative Claim arising from the provision of goods or services to the Debtors in the ordinary course of

business of the Debtors and the provider of goods or services after the Petition Date and before the Effective Date.

**"Other Existing Interests"** means, collectively, any Interests in any of the Debtors including options, warrants, and any other rights to purchase or otherwise acquire Interests, and any stock appreciation or similar rights, existing prior to the Effective Date, other than the Existing Class A Common Stock, Existing Class B Common Stock, Existing Class C Common Stock, Existing Preferred Stock, Existing Warrants, and Existing Management Incentives.

**"Other Reorganized Debtors"** mean those Debtors, if any, other than Reorganized Fountain View or Reorganized Summit Care Pharmacy that will not be dissolved as of the Effective Date pursuant to the Corporate Restructuring Plan.

**"Other Secured Claims"** means any Secured Claim (including without limitation the Secured Claims of personal property lessors), other than those Secured Claims in Classes 1, 2, 3, 4, 5, 6 or 8.

**"Other Subordinated Claims"** means any Claim that is subject to subordination to an Allowed Claim in Classes 9, 10 or 11, or Allowed Interest in any junior class, whether by contract, by operation of law, or in accordance with equitable principles, including by operation of Code sections 510 or 726, including without limitation any Claim for punitive damages, fines or penalties, and including without limitation Claims under Texas Revised Civil Statutes article 4590(i) section 11.02, Texas Civil Practice & Remedies Code section 41.008, California Welfare & Institutions Code section 15657(a), California Business & Professions Code section 17200, California Civil Code sections 3294 & 3345, and California Civil Procedure Code section 1021.5, as well as any predecessor or successor laws thereto, or any similar foreign, federal, or state law, regulation or common law, from any jurisdiction, giving rise to any such Claim.

**"Petition Date"** means (i) October 2, 2001 for all of the Debtors other than Summit Care Texas No. 3, Inc., Fountain View Management Inc., and On-Track Therapy, Inc.; and (ii) November 28, 2001 for Summit Care Texas No. 3, Inc., Fountain View

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  Management Inc., and On-Track Therapy, Inc.

2  **"Plan"** means the *Debtors' Third Amended Joint Plan of Reorganization*

3  *Dated April 22, 2003,* as it may be subsequently modified or amended.

4  **"Plan Supplement"** means the forms of supporting documents necessary to

5  implement the terms of the Plan to be Filed by the Debtors on or before the Exhibit Filing

6  Date.

7  **"Post-Effective Date Subsidiaries"** means the directly and indirectly held

8  subsidiaries of Reorganized Fountain View to be formed and become the successors (by sale,

9  assignment, or merger) to the Business Assets not retained by Reorganized Summit Care

10  Pharmacy or any Other Reorganized Debtor pursuant to the Plan and Corporate

11  Restructuring Closing Documents.

12  **"Prepetition Credit Agreement"** means that certain Amended and Restated

13  Credit Agreement dated April 16, 1998, as amended from time to time, between the Debtors

14  and the Agent, as agent for the Lenders and any and all related documents, including all

15  documents related to security interests, liens and secured claims of the Agent and Lenders.

16  **"Prepetition Professional Liability Policies"** mean (i) policy number B

17  1999CN00002000 subscribed by Certain Underwriters at Lloyds, London, including but not

18  limited to St. Paul Syndicate Management Limited, American Re/Insurance Company and

19  Great Lakes Reinsurance Company UK, each a subsidiary of Munich Re; (ii) policy number

20  B2000CM00002004 subscribed by Certain Underwriters at Lloyds, London, including but

21  not limited to St. Paul Syndicate Management Limited, American Re/Insurance Company

22  and Great Lakes Reinsurance Company UK, each a subsidiary of Munich Re; (iii) policy

23  number BE 357-94-52 issued by American International Specialty Lines; (iv) policy number

24  BE 476-09-60 issued by American International Specialty Lines/AIU; (v) policy number

25  2004776 issued by Lexington Insurance Co./AIU; (vi) policy number P159392046 issued by

26  CNA Health Pro; and (vii) policy number UP012395 issued by US Risk.

27  **"Priority Claim"** means an Allowed Claim entitled to priority against any

28  Estate under Code section 507(a)(3), 507(a)(4), or 507(a)(6).

1    **"Priority Tax Claim"** means an Allowed Claim entitled to priority against

2    any Estate under Code section 507(a)(8).

3    **"Pro Rata"** means proportionately so that the ratio of (i) the amount of

4    consideration distributed on account of a particular Allowed Claim or Allowed Interest to (ii)

5    the Allowed Amount of the Allowed Claim or Allowed Interest, is the same as the ratio of

6    (a) the amount of consideration available for distribution on account of all the Allowed

7    Claims or Allowed Interests of the Class in which the particular Allowed Claim or Allowed

8    Interest is included to (b) the amount of all Allowed Claims or Allowed Interests of that

9    Class.

10    **"Professional Fee Claim"** means:

11    (a)    A Claim under Code sections 327, 328, 330, 331, 503, or 1103 for

12    compensation for professional services rendered or expenses incurred; or

13    (b)    A Claim either under Code section 503(b)(4) for compensation for

14    professional services rendered or under Code section 503(b)(3)(D) for expenses incurred in

15    making a substantial contribution to the Estates.

16    **"Record Date"** means April 15, 2003, which is the date by which the record

17    holders of the 11¼% Notes must be identified for purposes of the Plan.

18    **"Rejection Damage Claim"** means a Claim for rent, other obligations, or

19    damages arising under an unexpired real property or personal property lease or executory

20    contract rejected by any of the Debtors under Bankruptcy Code section 365.

21    **"Reorganization Case"** means any particular case commenced by a Debtor

22    under chapter 11 of the Code on the Petition Date and pending before the Court.

23    **"Reorganized Enterprise"** means Reorganized Fountain View, Reorganized

24    Summit Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective Date

25    Subsidiaries.

26    **"Reorganized Fountain View"** means Fountain View, Inc., after the Effective

27    Date as reorganized pursuant to the Plan and the Confirmation Order.

28    **"Reorganized Summit Care Pharmacy"** means Summit Care Pharmacy,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    Inc., after the Effective Date as reorganized pursuant to the Plan and the Confirmation Order.

2         **"Resident Agreements"** means agreements between one or more of the

3    Debtors and each of the patients and residents at their long-term care facilities defining the

4    terms of the services and stay, which include, inter alia, authorization (such as consents for

5    treatment) necessary for the Debtors to carry out their services and bill third-party payors as

6    well as defining the payment obligations of the patients and residents, including all

7    agreements relating to surety bonds issued in connection with resident trust accounts

8    pursuant to general agreements of indemnity, including those certain general agreements of

9    indemnity (Form F5556-11-2000) between Summit Care-California, Inc., Summit Care-

10   Texas, L.P. and Fountain View, Inc., on the one hand, and Western Surety Company, on the

11   other hand.

12        **"Schedule of Assumed or Assigned Agreements"** means the schedule, as it

13   may be subsequently amended, to be Filed with the Court and served on all affected non-

14   debtor parties of executory contracts and unexpired leases that: (i) have been or will be

15   assumed by Reorganized Fountain View; or (ii) have been or will be assumed and assigned

16   by one or more of the Debtors to one or more of the Post-Effective Date Subsidiaries.

17        **"Schedule of Rejected Agreements"** means the schedule, as it may be

18   subsequently amended, to be filed with the Court and served on all affected non-debtor

19   parties to the hearing on the Disclosure Statement, of executory contracts and unexpired

20   leases to be rejected by one or more of the Debtors as of the Effective Date.

21        **"Schedules"** means the schedules of assets and liabilities filed by the Debtors

22   pursuant to Code section 521(1), as amended.

23        **"SEC"** means the United States Securities and Exchange Commission.

24        **"Secured Claim"** means a Claim that is secured by a valid and unavoidable

25   lien against property in which an Estate has an interest or that is subject to setoff under Code

26   section 553.  A Claim is a Secured Claim only to the extent of the value of the holder's

27   interest in an Estate's interest in the collateral securing the Claim or to the extent of the

28   amount subject to setoff, whichever is applicable, and as determined under Code section

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

506(a).

**"Secured Tax Claim"** means a Secured Claim of a governmental unit for the payment of taxes.

**"Stockholders' Agreement"** means that certain Stockholders' Agreement dated March 27, 1998 among the holders of the Existing Class A Common Stock, Existing Class B Common Stock, Existing Class C Common Stock, and the Existing Preferred Stock, as subsequently amended on May 4, 1998 and as it shall be amended as of the Effective Date to provide, that: (i) the holders of the Noteholders' Stock Distribution shall be aggregated for purposes of determining whether any of them is a "Qualified Stockholder" (capitalized terms between quotation marks in this paragraph carry the meaning set forth in the Stockholders' Agreement) and all such holders shall be deemed to be entitled to all the rights and subject to all the obligations of a "Qualified Stockholder," under the Stockholders' Agreement; (ii) no waiver, modification or amendment of the Stockholders' Agreement shall be valid or binding on the holders of the Noteholders' Stock unless it is in writing and approved by a majority in interest of the holders of the Noteholders' Stock if the effect of such waiver, modification or agreement (A) differs in a material and adverse manner from the effect on "Heritage" or (B) would eliminate any of the material rights of such holders of Noteholders' Stock provided in the Stockholders' Agreement or create any material additional obligations for the holders of Noteholders' Stock; (iii) the last sentence of section 7.11 of the Stockholders' Agreement shall provide that any waiver, modification or amendment which requires any "Investor," "Management Stockholder" or holder of Noteholders' Stock to make additional cash contributions shall require the consent of such "Investor," "Management Stockholder" or holder of Noteholders' Stock; and (iv) notwithstanding anything else to the contrary in the Stockholders Agreement no holder of Noteholders' Stock shall be entitled to receive any report, securities filing or other information described in section 7.02 of the Stockholders' Agreement except as otherwise provided in the indenture governing the New Public Notes or exercise the right of inspection afforded to "Qualified Stockholders" under section 7.03 of the Stockholders' Agreement.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

**"Tax Code"** means the Internal Revenue Code of 1986, as amended, and any regulations promulgated thereunder.

**"TDHS Settlement"** means that certain settlement agreement, resolving certain alleged deficiencies cited in prepetition surveys conducted by the Texas Department of Human Services, between Summit Care Texas, L.P. and the Texas Department of Human Services dated as of April 14, 2003.

**"Treasury Regulations"** means regulations promulgated under the Tax Code by the United States Treasury Department.

**"Union Bank Extension Agreement"** means that certain First Amendment to Extension and Modification Agreement and Modification of Deed of Trust to be entered into between Union Bank of California, N.A. and the Debtors in the form filed with the Plan Supplement and effective upon the occurrence of the Effective Date.

**"Unsecured Claim"** means a Claim that is not an Administrative Claim, an Administrative Tax Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim, or an Other Subordinated Claim.

**"U.S. Trustee"** means the Office of the United States Trustee.

**"Vendors' Lien"** means a junior lien in (i) the Debtors' real property leases, and (ii) the Business Assets of the Reorganized Enterprise's pharmacy and therapy businesses in favor of Continuing Creditors, securing extensions of credit by Continuing Creditors in connection with the provision of goods or services to the Reorganized Enterprise in an aggregate amount not to exceed $8 million, in all cases limited to the extent required by the Exit Facility, such liens to be expressly subordinate to the Exit Facility, on terms reasonably acceptable to the Exit Facility lenders, subject to any prior valid and enforceable liens in such assets including those liens securing the Bergen Note and of equal rank with the liens securing the Class 10 Deferred Obligation, the Continuing Creditor Deferred Obligation, and the New Public Notes; provided, however, that the Vendors' Lien shall be subject to the same "basket" and release provisions as the lien securing the New Public Notes. The Vendors' Lien shall be administered by the Claims Agent pursuant to the

1  General Claim Holder Agency Agreement between the Debtors and the Claims Agent. The

2  Vendors' Lien will expire on the date 18 months following the Effective Date unless there is

3  a then-existing default in payment of the Continuing Creditor Deferred Obligation or other

4  extension of maturity in which case the Vendors' Lien will continue in force until such

5  defaults are cured or the obligation satisfied.

6         **"Woodlands Place Deed of Trust"** means a new deed of trust between the

7  holder of the Class 2 Claim and the New Woodlands Entity that, except as may be expressly

8  agreed otherwise by the Debtors and the holder of the Class 2 Claim in accordance with the

9  Woodlands Place Stipulation, shall be on the same terms as the Bank Midwest Deed of Trust

10 provided however that such lien when properly perfected, will be junior to the lien of the

11 Bank Midwest Deed of Trust and shall constitute a second priority lien against the property

12 subject to the Bank Midwest Deed of Trust.

13        **"Woodlands Place Note"** means the secured promissory note in the form filed

14 with the Court on or before the Exhibit Filing Date issued (i) to the holder of the Class 2

15 Claim; (ii) by the New Woodlands Entity; (iii) in a principal amount equal to $1,887,866.62

16 less the sum of all adequate protection payments received by the holder of the Class 2 Claim

17 after June 6, 2003; (iv) bearing interest on the unpaid principal balance from and after

18 December 1, 2003 at the rate of 9% per annum; (v) with principal and interest being payable

19 monthly in arrears based on a 15-year amortization schedule commencing on the Effective

20 Date; provided, however, that no interest shall be paid or accrued prior to December 1, 2003

21 and 100% of all monthly payments made prior to December 1, 2003 shall be credited entirely

22 to principal and shall accordingly reduce the final payment due on maturity of the

23 Woodlands Place Note; (v) shall mature in full upon the earlier of (y) the seventh

24 anniversary of the Effective Date; or (z) the sale or other disposition of the Woodlands or the

25 New Woodlands Entity to any person ("Subsequent Transferee") that is not at least 80%

26 owned or controlled directly or indirectly by Fountain View, Inc., unless the net worth of the

27 Subsequent Transferee (or if the Subsequent Transferee is part of a consolidated group of

28 affiliated entities, the net worth of the Subsequent Transferee's consolidated group), as

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

1  represented on its balance sheet, prepared in accordance with generally accepted accounting
2  standards and provided to the holder of the Woodlands Place Note at least 15 days prior to
3  the closing date of the transfer, is not less than that of the Reorganized Debtors on a
4  consolidated basis as of the Effective Date, (vi) shall be prepayable without premium or
5  penalty at any time and (vii) provide that the liens securing the Woodlands Place Note shall
6  be subordinate to those of the holder of the Bank Midwest Amended and Restated Note
7  (which, for the avoidance of doubt shall have been amended and restated to provide for, inter
8  alia, repayment of the Bank Midwest Advance).

9        "**Woodlands Place Security Agreement**" means a new security agreement
10  between the holder of the Class 2 Claim and the New Woodlands Entity that, except as may
11  be expressly agreed otherwise by the Debtors and the holder of the Class 2 Claim in
12  accordance with the Woodlands Place Stipulation, shall be on the same terms as the Bank
13  Midwest Security Agreement provided however that such lien when properly perfected, will
14  be junior to the lien of the Bank Midwest Security Agreement and will constitute a second
15  priority lien against the property subject to the Bank Midwest Security Agreement.

16        "**Woodlands Place Stipulation**" means that certain Stipulation Regarding
17  Treatment Of Woodlands Place Nursing Center L.P. Claim Under Debtors' Joint Plan Of
18  Reorganization dated June 9, 2003 between Woodlands Place Nursing Center L.P. and Filed
19  with the Court.

20      **B.**    **Rules of Construction.**

21      1.    The rules of construction in Code section 102 apply to this Plan.

22      2.    Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a)
23  applies when computing any time period under the Plan.

24      3.    A term that is used in this Plan and that is not defined in this Plan has
25  the meaning attributed to that term, if any, in the Code or the Bankruptcy Rules.

26      4.    The definition given to any term or provision in the Plan supersedes and
27  controls any different meaning that may be given to that term or provision in the Disclosure
28  Statement.

5.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

7.    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.    Unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

9.    Unless otherwise specified, all references to Sections or Exhibits are references to this Plan's Sections or Exhibits.

10.    Section captions and headings are used only as convenient references and do not affect this Plan's meaning.

11.    The words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to only a particular portion hereof.

## II.

## DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Summary of Classification of Claims.

This Section classifies Claims—except for Administrative Claims, Priority Claims, and Priority Tax Claims, which are not classified—for all purposes, including voting, confirmation, and distribution under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, that part of the Claim or Interest is classified in that different Class.   The following table summarizes the Classes of Claims and Interests under this Plan.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| None | Administrative Claims, Priority Claims and Priority Tax Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

| Class 1 | Secured Claims of Bank Midwest (The Woodlands, TX) | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 2 | Secured Claims of Woodlands Place Nursing Center, L.P. (The Woodlands, TX) | Impaired | Entitled to Vote |
| Class 3 | Secured Tax Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 4 | Secured Claims of Union Bank of California, N.A. | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 5 | Secured Claim of Leonard and Catherine May | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 6 | Secured Claims of Bergen | Impaired | Entitled to Vote |
| Class 7 | Other Secured Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 8 | Secured Claims of the Agent and the Lenders | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 9 | 11¼% Note Claims | Impaired | Entitled to Vote |
| Class 10 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 11 | Convenience Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 12 | Insured Professional Liability Claims | Impaired | Entitled to Vote |
| Class 13 | Uninsured Punitive Damage Claims and Other Subordinated Liabilities | Impaired | Entitled to Vote |
| Class 14 | Existing Preferred Stock | Impaired | Entitled to Vote |
| Class 15 | Existing Class A Common Stock | Impaired | Entitled to Vote |
| Class 16 | Existing Class B Common Stock | Impaired | Deemed to Reject – Vote Not Solicited |
| Class 17 | Existing Class C Common Stock | Impaired | Entitled to Vote |
| Class 18 | Existing Warrants | Impaired | Entitled to Vote |
| Class 19 | Existing Management Incentives and Other Existing Interests | Impaired | Deemed to Reject – Vote Not Solicited |

**Notwithstanding anything to the contrary herein, no distributions will be**

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  made and no rights will be retained on account of any Claim (or Interest) that is not an

2  Allowed Claim (or Allowed Interest).

3        The treatment in this Plan is in full and complete satisfaction of the legal,

4  contractual, and equitable rights that each entity holding a Claim or an Interest may have in

5  or against any Debtor, any Estate, or their respective property.  This treatment supercedes

6  and replaces any agreements or rights those entities have in or against any Debtor, any

7  Estate, the Reorganized Enterprise, or their respective property.    Except as otherwise

8  specifically provided herein, all distributions under the Plan will be tendered to the entity

9  holding the Allowed Claim or Allowed Interest.

10      **B.**    **Allowance and Treatment of Unclassified Claims (Administrative Claims,**

11         **Priority Tax Claims, and Priority Claims).**

12        Entities    that    hold    Administrative    Claims    other    than    Ordinary    Course

13  Administrative Claims and that do not timely file and serve a proof of Claim or a motion

14  seeking payment in accordance with this Section are forever barred from asserting those

15  Administrative Claims against the Debtors, the Estates, the Reorganized Enterprise, or their

16  respective property.

17      **1.**    **Administrative Claims.**

18      **Allowance of Ordinary Course Administrative Claims:** An entity holding

19  an Ordinary Course Administrative Claim may, but need not, File a request for payment of

20  its Claim.  The Debtors or the Reorganized Enterprise may File an objection to an Ordinary

21  Course Administrative Claim in their discretion.  Unless the Debtors object to an Ordinary

22  Course Administrative Claim, such Claim will be allowed in accordance with the terms and

23  conditions of the particular transaction that gave rise to the Claim.

24      **Allowance of Cure Payments:**  Cure Payments shall be allowed in accordance

25  with the procedures set forth in Section III.A of the Plan.

26      **Allowance of Non-Ordinary Course Administrative Claims (other than**

27  **Professional Fee Claims and Cure Payments):**  Unless the Debtors or the Reorganized

28  Enterprise otherwise agree or as otherwise expressly provided herein, Non-Ordinary Course

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

Case 2:01-bk-39678-BB    Doc 1726-1    Filed 06/30/03    Entered 07/01/03 00:00:00
Desc Main Document    Page 29 of 80

Administrative Claims other than Professional Fee Claims will be allowed <u>only</u> if:

      (i)    On or before the sixtieth day after the Effective Date, the entity holding the Non-Ordinary Course Administrative Claim Files a request for payment of its Claim and serves the request on the Debtors' Counsel, the U.S. Trustee, and counsel for the Committees; and

      (ii)   The Court allows the Claim by Final Order.

The Reorganized Enterprise or any other party in interest may File an objection to such request for payment within the time provided by the Bankruptcy Rules or within any other period that the Court establishes. **Entities holding Non-Ordinary Course Administrative Claims that do not timely File and serve a request for payment will be forever barred from asserting those Claims against the Debtors, the Estates, the Reorganized Enterprise, or their respective property.**

<u>**Allowance of Professional Fee Claims:**</u>  A Professional Fee Claim will be allowed <u>only</u> if:

      (i)    On or before the sixtieth day after the Effective Date, the entity holding the Professional Fee Claim both Files with the Court a final fee application or a motion requesting allowance and payment of the fees and serves the application or motion on the Debtors' Counsel, the U.S. Trustee, and counsel to the Committees; and

      (ii)   The Court allows the Claim.

The Reorganized Enterprise or any other party in interest may File an objection to such application or motion within the time provided by the Bankruptcy Rules or within any other period that the Court establishes. **Entities holding Professional Fee Claims who do not timely File and serve a fee application or motion for allowance and payment will be forever barred from asserting those Claims against the Debtors, the Estates, the Reorganized Enterprise, or their respective property.**

<u>**Treatment of Allowed Ordinary Course Administrative Claims:**</u>  Unless the entity holding an Allowed Ordinary Course Administrative Claim and the Debtors agree

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

1   otherwise, the Claim will be paid by the Disbursing Agent in accordance with the terms and

2   conditions of the particular transaction that gave rise to the Claim.

3   <u>**Treatment of Allowed Non-Ordinary Course Administrative Claims:**</u>

4   (i) <u>Professional Fee Claims</u> – Unless the entity holding a Professional Fee

5   Claim allowed by the Court agrees to different treatment, the Disbursing Agent will pay to

6   that entity cash in the full amount of the Professional Fee Claim, without interest, within five

7   days after the date on which the Court allows such Claim.

8   (ii) <u>Cure Payments</u> – Cure Payments will be made to the non-debtor parties to

9   the executory contracts or unexpired leases set forth on the Schedule of Assumed or

10  Assigned Agreements, in accordance with Section III.A.2 of the Plan.

11  (iii) <u>U.S. Trustee fees under 28 U.S.C. § 1930</u> – The Disbursing Agent will pay

12  to the U.S. Trustee all fees due and owing under 28 U.S.C. § 1930 in cash on the Effective

13  Date.

14  (iv) <u>Indenture Trustee's Fees and Expenses and Indenture Trustee's Attorneys'</u>

15  <u>Fees and Expenses</u>.  The Disbursing Agent will pay the reasonable trustee fees and expenses

16  and the reasonable attorneys' fees and expenses of the Indenture Trustee in the aggregate

17  approximate amount of $125,000, without interest, on or before the later of: (i) 30 days after

18  the Effective Date; or (ii) 30 days after the date (I) on which Reorganized Fountain View

19  receives from the Indenture Trustee a reasonably detailed itemized statement of the trustee

20  fees and expenses and attorneys' fees and expenses it has incurred in connection with acting

21  as Indenture Trustee so long as Reorganized Fountain View does not, within such 30 day

22  period, give written notice to the Indenture Trustee that it disputes the reasonableness of such

23  fees and expenses or any part thereof, or (II)  the Claim of the Indenture Trustee for

24  reimbursement of its reasonable trustee fees and expenses and its reasonable attorneys' fees

25  and expenses becomes an Allowed Claim.   If Reorganized Fountain View gives the

26  Indenture Trustee timely written notice that it disputes the reasonableness of the trustee fees

27  and expenses or the attorneys' fees and expenses, or any part thereof, for which the Indenture

28  Trustee seeks reimbursement, the amount of the Allowed Claim on account of such fees and

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    expenses shall be determined by the Court as if such Claim were a Professional Fee Claim.

2           (v) <u>Other Non-Ordinary Course Administrative Claims</u> – Unless the entity

3    holding an Allowed Non-Ordinary Course Administrative Claim (other than a Professional

4    Fee Claim, Cure Payment, Indenture Trustee fee Claim, or U.S. Trustee fee Claim) and the

5    Debtors agree otherwise, the Disbursing Agent will pay to that entity cash in the Allowed

6    Claim's full amount, without interest, on or before the latest of: (a) 30 days after the

7    Effective Date; (b) 30 days after the date on which the Non-Ordinary Course Administrative

8    Claim becomes an Allowed Claim; or (c) the date on which the Allowed Claim becomes due

9    and payable in accordance with its terms.

10         **2.**      **Priority Claims.**

11        **Treatment of Priority Claims:** Unless the entity holding an Allowed Priority

12    Claim and the Debtors agree otherwise, the Disbursing Agent will pay to that entity cash in

13    the full amount of the Allowed Priority Claims, without interest, on or before the latest of:

14    (i) the Distribution Date; (ii) 30 days after the date on which the Priority Claim becomes an

15    Allowed Priority Claim; or (iii) the date on which the Allowed Priority Claim becomes due

16    and payable in accordance with its terms.

17        **Treatment of Priority Tax Claims:** Unless the entity holding an Allowed

18    Priority Tax Claim and the Debtors agree otherwise, the Disbursing Agent will pay to that

19    entity the amount of its Allowed Priority Tax Claim, together with interest from the Petition

20    Date to the date of payment calculated at the federal judgment rate as of the Petition Date, on

21    the latest of (i) the Distribution Date; (ii) 30 days after the date such Priority Tax Claim

22    becomes an Allowed Claim; or (iii) the date on which the Allowed Priority Tax Claim

23    becomes due and payable in accordance with its terms.

24      **C.**      **Classification and Treatment of Secured Claims (Classes 1, 2, 3, 4, 5, 6, 7,**

25          **& 8).**

26        **1.**      **Class 1 (Bank Midwest—Impaired).**

27        **Classification:** Class 1 consists of all Claims held by Bank Midwest, N.A. as

28    assignee and successor in interest to the Secretary of Housing and Urban Development,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   pursuant to that certain Deed of Trust Note dated as of March 6, 1985 as renewed, modified,

2   extended and consolidated pursuant to that certain Allonge thereto dated as of December 1,

3   1993, and all documents collateral thereto.

4   **Treatment:**  Unless the holder of the Class 1 Claim agrees to other treatment,

5   on or as soon as reasonably practicable after the Effective Date, in accordance with the terms

6   of the Bank Midwest Stipulation (which are incorporated by reference herein and thereby

7   made a part of the Plan), the holder of the Class 1 Claim shall make the Bank Midwest

8   Advance and shall receive the Bank Midwest Amended and Restated Note which shall be

9   secured by the Bank Midwest Deed of Trust and the Bank Midwest Security Agreement.

10          **2.    Class 2 (Woodlands Place Nursing Center, L.P.—Impaired)**

11   **Classification:**  Class 2 consists of all Claims of Woodlands Place Nursing

12   Center, L.P., and any successor thereto, on account of that certain Agreement of Purchase

13   and Sale of Assets dated November 6, 1993 between Woodlands Place Nursing Center, Inc.

14   and Summit Care Texas No. 3, Inc.  and that certain Note dated as of December 1, 1993

15   which are secured pursuant to that certain Warranty Deed With Vendor's Lien dated as of

16   December 1, 1993 and recorded as instrument No. 9404875 in the Public Records of

17   Montgomery County, Texas and any other documents ancillary thereto.

18   **Treatment**:  Unless the holder of the Class 2 Claim agrees to other treatment,

19   in accordance with the terms of the Woodlands Place Stipulation (which are incorporated by

20   reference herein and thereby made a part of the Plan), the holder of the Class 2 Claim shall

21   receive (i) reimbursement for its as yet unreimbursed actual, reasonable legal fees and

22   expenses in an amount not to exceed $35,000 (a) upon the Effective Date if the amount of

23   such fees and expenses is not then disputed in good faith by the Debtors, or (b) if the amount

24   of the reasonable actual legal fees and expenses is disputed in good faith by the Debtors,

25   upon the resolution by Final Order of such dispute; and (ii) as soon as reasonably practicable

26   after the Effective Date, the Woodlands Place Note and shall, as security for the payment of

27   the obligations thereunder, receive the Woodlands Place Deed of Trust and the Woodlands

28   Place Security Agreement.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

1        **3.**     **Class 3 (Secured Tax Claims—Unimpaired).**

2        **Classification:** Class 3 consists of the Secured Tax Claims.

3        **Treatment:** Unless the holder of an Allowed Class 3 Claim agrees to other

4 treatment, the Disbursing Agent shall pay to such holder cash in the allowed amount of such

5 holder's Class 3 Allowed Claim on the latest of (i) as soon as reasonably practicable after the

6 Effective Date; (ii) 30 days after the date on which the Secured Tax Claim becomes an

7 Allowed Secured Tax Claim; or (ii) the date such Allowed Secured Tax Claim becomes due

8 and payable in accordance with its terms.

9        **4.**     **Class 4 (Union Bank of California—Unimpaired).**

10        **Classification:** Class 4 consists of the Claims of Union Bank of California,

11 N.A. under that certain Amended and Restated Commercial Promissory Note dated as of

12 April 1, 2001 which are secured, pursuant to that certain Extension and Modification

13 Agreement and Modification of Deed of Trust dated April 1, 2001, in the real property and

14 personal property affixed thereto located at 730 North Frederick Street and 2600 West

15 Magnolia Boulevard, Burbank, California, as such obligations shall be further modified and

16 extended pursuant to the Union Bank Extension Agreement.

17        **Treatment:** Unless the holder of the Class 4 Claim agrees to other treatment,

18 on or as soon as reasonably practicable after the Effective Date, Reorganized Fountain View

19 shall (i) cure any default, other than a default of a kind specified in Bankruptcy Code section

20 365(b)(2), with respect to such holder's Allowed Class 4 Claim, without recognition of any

21 default rate of interest or similar penalty or charge, and upon such cure, no default shall

22 exist; (ii) reinstate the maturity of such Allowed Class 4 Claim as the maturity existed before

23 any default, without recognition of any default rate of interest or similar penalty or charge;

24 and (iii) leave unaltered all other legal, equitable, and contractual rights of such holder with

25 respect to such Allowed Class 4 Claim as such obligations shall be further modified by the

26 Union Bank Extension Agreement. Notwithstanding the foregoing, the Confirmation Order

27 shall constitute an order of the Court authorizing the sale of the property securing the Class 4

28 Claim free and clear of the liens of the holder of the Class 4 Claim in accordance with

28

sections 363, 1123 and 1129 of the Bankruptcy Code, and all applicable Bankruptcy Rules, provided, however, that concurrently with any such sale the Class 4 Claim is satisfied by the payment from the proceeds of any such sale to the holder of the Class 4 Claim of cash in an amount equal to Allowed Class 4 Claim.

### 5.   Class 5 (Leonard and Catherine May—Unimpaired).

**Classification:**  Class 5 consists of all Claims of Leonard and Catherine May.

**Treatment:**  The holders of the Class 5 Claim shall receive in full satisfaction of the Class 5 Allowed Claim cash in the amount of the Class 5 Allowed Claim (after crediting all adequate protection payments made by the Debtors) without recognition of any default rate of interest or similar penalty or charge.

### 6.   Class 6 (Bergen—Impaired).

**Classification:**  Class 6 consists of all Claims of Bergen, and any affiliates or successors thereto, secured by that certain Security Agreement dated March 29, 2001 between Bergen and Summit Care Pharmacy, Inc.

**Treatment**:  The holder of the Class 6 Claims shall receive (i) cash in an amount equal to forty percent of (a) $1,710,562.10 plus interest thereon from the Petition Date to the Effective Date at the rate of 9½% per annum, and (b) Bergen's reasonable, actual attorneys' fees and expenses incurred in connection with the Reorganization Cases not to exceed $40,000; and (ii) the Bergen Note issued to (a) Bergen (or, if applicable, any transferee of Bergen holding the Class 6 Claim), (b) by Reorganized Summit Care Pharmacy, (c) in a principal amount equal to sixty percent of (x) $1,710,562.10 plus interest thereon from the Petition Date to the Effective Date at the rate of 9½% per annum, and (y) Bergen's reasonable, actual attorneys' fees and expenses incurred in connection with the Reorganization Cases not to exceed $40,000, (d) bearing interest from and after the Effective Date at the rate of 9½% per annum, (e) with interest only being payable in arrears for the first six monthly payments following the Effective Date, and, thereafter, with principal and interest being payable monthly in arrears and fully amortizing over the following eighteen months, and (f) with a final maturity date of the second anniversary of the Effective Date;

KLEE, TUCHIN, BOGDANOFF & STEIN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   provided, however, that the Bergen Note may be prepaid in part or in whole at any time

2   without penalty or premium.

3          The Bergen Note shall be secured by a lien in all property of Reorganized

4   Summit Care Pharmacy of the same nature and type as that previously securing the Class 6

5   Claim other than the accounts receivable of Reorganized Summit Care Pharmacy which

6   accounts shall not be subject to any lien securing the obligations under the Bergen Note.  The

7   liens securing the Bergen Note shall be (i) expressly subordinated to the Exit Facility on

8   terms reasonably acceptable to the Exit Facility lenders; and (ii) senior to all other liens in

9   the property of Reorganized Summit Care Pharmacy subject to the liens securing the Bergen

10  Note, including the liens securing the New Public Notes, the Class 10 Deferred Obligation,

11  the Continuing Creditor Deferred Obligation, and the Vendors' Lien.

12          **7.       Class 7 (Other Secured Claims Including Personal Property**

13                  **Lessors—Unimpaired).**

14          **Classification:**   Class 7 consists of all Other Secured Claims including the

15  Claims of personal property lessors.

16          **Treatment:**  Unless the holder of the Class 7 Claim agrees to other treatment,

17  on or as soon as reasonably practicable after the Effective Date, the Reorganized Enterprise

18  shall at its option either (i) pay to such holder cash in the allowed amount of such holder's

19  Allowed Class 7 Claim plus interest calculated at 2.49%[1] per annum from the Petition Date

20  through the date of payment on the later of (a) as soon as reasonably practicable after the

21  Effective Date, or (b) 30 days after the date on which the Other Secured Claim becomes an

22  Allowed Other Secured Claim; (ii) abandon the collateral securing such Class 7 Claim; or

23  (iii) (a) cure any default, other than a default of a kind specified in Bankruptcy Code section

24  365(b)(2), with respect to such holder's Allowed Class 7 Claim, without recognition of any

25  default rate of interest or similar penalty or charge, and upon such cure, no default shall

26  exist, (b) reinstate the maturity of such Allowed Class 7 Claim as the maturity existed before

27

28  [1]  2.49% is the federal judgment rate of interest as of October 2, 2001, the Petition Date for Fountain View, Inc. and 19 of
its direct and indirect subsidiaries.

KLEE, TUCHIN, BOGDANOFF & STEIN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

1   any default, without recognition of any default rate of interest or similar penalty or charge,

2   and (c) leave unaltered all other legal, equitable, and contractual rights of such holder with

3   respect to such Allowed Class 7 Claim.  Any defenses, counterclaims, rights of offset, or

4   recoupment of the Debtors, the Estates, or the Reorganized Enterprise with respect to such

5   Claims shall vest in and inure to the benefit of the Reorganized Enterprise.

6          **8.**    **Class 8 (Agent and Lenders—Unimpaired).**

7          **Classification:**  Class 8 consists of the Secured Claims of the Agent and the

8   Lenders.

9          **Treatment:**  The Disbursing Agent (i) shall pay to the Agent cash in an

10   amount equal to the aggregate amount of all Class 8 Allowed Claims on the Effective Date

11   (which shall include outstanding principal as of the Petition Date, plus interest as determined

12   under the terms of the Prepetition Credit Agreement, plus all fees and expenses and costs of

13   the Agent pursuant to the terms of the Prepetition Credit Agreement, less all adequate

14   protection payments, all supplemental adequate protection payments, and all expense

15   reimbursements pursuant to cash collateral orders); and (ii) shall, with respect to each

16   outstanding letter of credit issued by any of the Lenders for the account of any of the

17   Debtors, at the Debtors' option, either (a) cause such letter of credit to be released undrawn

18   by the beneficiary thereof, or (b) cash collateralize the reimbursement obligation under such

19   letter of credit in an amount equal to 110% of the then outstanding contingent obligation

20   under such letter of credit.

21          All Claims, liens, and security interests of the Agent and the Lenders under the

22   Prepetition Credit Agreement, as well as any rights held by the Agent and the Lenders

23   pursuant to any subordination agreement, including, without limitation, the subordination

24   provisions of the Indenture, shall be extinguished upon the satisfaction in full of the Class 8

25   Allowed Claims as set forth in this Section II.C.8.

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1 DOC

**D.    Classification and Treatment of Unsecured Claims (Classes 9, 10, 11, & 12).**

    **1.    Class 9 (11¼% Notes—Impaired).**

    <u>Classification</u>:  Class 9 consists of the 11¼% Notes.

    <u>Treatment</u>:  All Class 9 Claims shall be satisfied by the distribution as soon as reasonably practicable after the Effective Date, but in no event later than 10 days after the Effective Date, to the Indenture Trustee, who shall act as the Disbursing Agent for Class 9 and shall distribute to the holders of the 11¼% Notes, as of the Record Date, Pro Rata:

        a. The Initial Cash Payment;

        b. The Noteholders' Stock Distribution; and

        c. The New Public Notes.

    Upon completion of all of its obligations as the Class 9 Disbursing Agent under the Plan, the Indenture Trustee shall be irrevocably released from all of its obligations under that certain indenture dated April 16, 1998 between the Indenture Trustee and Fountain View, Inc.  On the Effective Date, such indenture shall be deemed terminated, and the liens granted to secure the obligations under such indenture shall be deemed to be discharged.

    The Confirmation Order shall provide that each record holder of Noteholders' Stock shall be entitled to all the rights and shall be subject to all the obligations otherwise applicable under the Stockholders' Agreement to "Qualified Stockholders" as such term is defined therein.  Fractional shares of New Class A Common Stock will not be issued. Holders of Class 9 Allowed Claims entitled to a fractional share distribution of New Class A Common Stock out of the Noteholders' Stock Distribution equal to or greater than one-half of a share of New Class A Common Stock shall receive one whole share of New Class A Common Stock.  No distribution shall be made on account of fractional entitlements of less than one-half of a share of New Class A Common Stock.

    The New Public Notes shall be issued pursuant to a qualified trust indenture, in the form submitted by the Debtors in the Plan Supplement, in an aggregate principal amount equal to (i) $133,012,500, plus (ii) postpetition interest on $133,012,500 from the Petition

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

Date to the Effective Date of the Plan at the rate of 9½% per annum, less (iii) the Initial Cash Payment.  The Debtors will use reasonable best efforts to have the New Public Notes rated by Standard & Poors Corp. and Moody's Investors Service as soon as reasonably practicable, but, in any event, within three months of the Effective Date.  The indenture governing the New Public Notes shall include provisions incorporating the following terms and conditions:

Maturity Date:  A maturity date one Business Day after the date on which the final principal payment on the Exit Facility is due, but in no event beyond the sixth anniversary of the Effective Date.

Lien:  A junior lien to secure the New Public Notes in (i) the Debtors' real property leases, and (ii) the Business Assets of the Reorganized Enterprise's pharmacy and therapy businesses, in all cases limited to the extent required by the Exit Facility, such liens to be expressly subordinate to the Exit Facility, subject to any prior valid and enforceable liens in such assets including those liens securing the Bergen Note and of equal rank with the liens securing the Class 10 Deferred Obligation, the Continuing Creditor Deferred Obligation, and the Vendors' Lien; provided, however, that the New Public Notes shall contain "basket" and release provisions[2] in connection with such liens as may be customary in high-yield public trust indentures and to be negotiated in good faith and reasonably acceptable to the Debtors and the Noteholders' Committee.

Covenants: The indenture shall contain such covenants as are customary in high-yield public trust indentures and agreed upon in good faith by the Debtors and the Noteholders' Committee; provided, however, that the indenture will contain: (i) limitations on restricted payments (including a prohibition on dividends and distributions to shareholders, management fees (other than reimbursement of actual out of pocket expenses and, to the extent consistent with past practice, allocated expenses, which have historically averaged approximately $200,000 per year), stock repurchases, non-mandatory payments on

---

[2] "Basket and release provisions" permit limited substitution of collateral and sales free and clear of liens with respect to property pledged as a pool to support a secured obligation.  Such provisions are customary in secured public trust indentures given the difficulty of obtaining transaction specific lien releases from the dispersed holders of public debt.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

account of debt subordinated to the New Public Notes, and investments other than investments permitted by the terms of the indenture governing the New Public Notes); and (ii) restrictive covenants regarding (a) debt incurrence (subject to tests and exceptions contained in the indenture), and (b) use of asset sale proceeds; provided, further, however, that any covenants in the indenture may be waived, amended, or modified with the consent of the holders of 60% in interest of the New Public Notes.  So long as any New Public Notes remain outstanding, Reorganized Fountain View will furnish to the indenture trustee for distribution to the holders of the New Public Notes, and file with the SEC (unless such filing will not be accepted) and otherwise make such information available to securities analysts and prospective investors upon request, within the time periods specified by the rules and regulations of the SEC (whether or not Reorganized Fountain View is required by such rules or regulations to do so):  (i) all quarterly and annual financial information that would be required to be contained in a filing with the SEC on Forms 10-Q and 10-K if Reorganized Fountain View were required to file such forms, including a Management's Discussion and Analysis of Financial Condition and Results of Operations and, with respect to the annual financial information only, a report on the annual financial statements by an independent certified public accounting firm; and (ii) all current reports that would be required to be filed on Form 8-K if Reorganized Fountain View were required to file such reports.  So long as any New Public Notes remain outstanding, Reorganized Fountain View shall comply with section 314(a) of the Trust Indenture Act and shall furnish the information required to be delivered pursuant to Rule 144(d)(4) under the Securities Act of 1933 upon the request of any holder of the New Public Notes, securities analysts, or prospective investors.

Interest:  Interest will be payable semi-annually in arrears, at the rate of 9¼% per annum until the first anniversary of the Effective Date, 11¼% per annum between the first and second anniversaries of the Effective Date, 13¼% per annum between the second and third anniversaries of the Effective Date, and 15% per annum thereafter until maturity.

Call:  The New Public Notes shall be callable at par plus accrued interest through the applicable record date, in whole or in part, at any time.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

**Mandatory Prepayment**: To the extent permitted by the Exit Facility, Reorganized Fountain View shall prepay the New Public Notes in an amount equal to 80% of Excess Cash Flow.

## 2. Class 10 (General Unsecured Claims—Impaired).

**Classification:** Class 10 consists of all Unsecured Claims other than (i) Claims in Classes 9, 11, 12, and 13, and (ii) Claims held by one of the Debtors extinguished pursuant to Section IV.A of the Plan. Claims that would otherwise be Class 10 Claims will be classified and treated as Class 11 Claims, if the holder makes the Convenience Class Election; provided, however, that any holder that makes the Convenience Class Election but holds aggregate Allowed Class 10 Claims in excess of $1,250 will be classified and treated in Class 10 under payment option 10A as voting to accept the Plan and will receive cash equal to 80% of such holder's Allowed Claims without postpetition interest.

**Treatment:** Holders of Class 10 Claims must elect in writing payment option 10A or 10B on or before the last date fixed by the Court for the timely submission of Ballots; provided, however, that a holder of a Disputed Claim in Class 10 must make its election before the later of the deadline to submit Ballots and 14 days after the date upon which its Claim becomes an Allowed Claim. Holders who fail to make a timely and valid election in writing shall be afforded treatment under payment option 10B. The Disbursing Agent will make distributions to the holder of each Class 10 Allowed Claim, in accordance with such holder's applicable payment option on the latest of (i) as soon as reasonably practicable after the Effective Date; (ii) 30 days after the date on which the Claim becomes an Allowed Claim; or (iii) the date such Claim becomes due and payable in accordance with its terms.

*Payment Option 10A* is cash equal to 80% of the Allowed Claim without postpetition interest.

*Payment Option 10B* is:

(i) for all holders other than Continuing Creditors,

   (a) cash equal to the sum of:

      (y) 40% of the Allowed Claim, and

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

(z) postpetition interest calculated at the rate of 9½% per annum on the full amount of the Allowed Claim from the Petition Date through the date of payment (provided, however, that notwithstanding anything to the contrary herein no prejudgment interest shall accrue or be paid with respect to any unliquidated Class 10 Claim prior to its liquidation except as provided by otherwise applicable non-bankruptcy law); and

(b) a Class 10 Deferred Obligation in a principal amount equal to 60% of the Allowed Claim; or

(ii) for Continuing Creditors,

(a) cash equal to the sum of:

(y) 65% of the Allowed Claim, and

(z) postpetition interest calculated at the rate of 9½% per annum on the full amount of the Allowed Claim from the Petition Date through the date of payment; and

(b) a Continuing Creditor Deferred Obligation in a principal amount equal to 35% of the Allowed Claim.

The Class 10 Deferred Obligation and the Continuing Creditor Deferred Obligation will be obligations of Reorganized Fountain View guaranteed by Reorganized Summit Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective Date Subsidiaries (except for any special purposes entities formed for insurance coverage purposes) to the extent permitted by the Exit Facility. The Class 10 Deferred Obligation and the Continuing Creditor Deferred Obligation will bear interest payable in arrears from and after the date of the initial cash payment under payment option 10B in respect of such Class 10 Claim at the rate of 9½% per annum; provided, however, that after maturity (whether by acceleration or otherwise) interest shall accrue at the rate of 11½% per annum. The Class 10 Deferred Obligation will be payable in five semiannual installments each of which shall consist of principal installments equal to one-fifth its original principal amount together with accrued interest on the remaining unpaid principal balance and the Continuing Creditor

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

1   Obligation will be payable in three semiannual installments each of which shall consist of

2   principal installments equal to one-third its original principal amount together with accrued

3   interest on the remaining unpaid principal balance, such installments to commence on the

4   first Business Day that is at least 180 days after the Effective Date; provided, however, that,

5   should the Noteholder Prepayment Percentage exceed 50%, Reorganized Fountain View

6   shall prepay the Class 10 Deferred Obligation and the Continuing Creditor Deferred

7   Obligation Pro Rata (to be credited against scheduled amortization payments relating to such

8   Class 10 Deferred Obligation or Continuing Creditor Deferred Obligation in reverse order of

9   maturity) in an amount equal to the initial amount of such Class 10 Deferred Obligation or

10   the Continuing Creditor Deferred Obligation multiplied by the Noteholder Prepayment

11   Percentage less all prior principal payments on account of such Class 10 Deferred Obligation

12   or Continuing Creditor Deferred Obligation.   The Class 10 Deferred Obligation and the

13   Continuing Creditor Deferred Obligation will be secured by liens (which shall be expressly

14   subordinated to those securing the Exit Facility on terms reasonably acceptable to the Exit

15   Facility lenders as well as any prior perfected and valid liens retained under the Plan) against

16   (a) the Debtors' real property leases, and (b) the Business Assets of the Reorganized

17   Enterprise's pharmacy and therapy businesses, such liens to be of equal rank and otherwise

18   subject to the same limitations as the liens securing the New Public Notes and the Vendors'

19   Lien.   The lien securing the Class 10 Deferred Obligation and the Continuing Creditor

20   Deferred Obligation shall be subject to the same "basket" and release provisions as the lien

21   securing the New Public Notes.[3]  The lien securing the Class 10 Deferred Obligation and the

22   Continuing Creditor Deferred Obligation shall be administered by the Claims Agent under a

23   collateral trust agreement or similar agreement, which agreement (together with such

24   ancillary documents as may be reasonably necessary to implement its terms) shall be in the

25   form submitted by the Debtors in the Plan Supplement and shall provide for acceleration of

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

---

[3] "Basket and release provisions" permit limited substitution of collateral and sales free and clear of liens with respect to property pledged as a pool to support a secured obligation.  Such provisions are customary in secured public trust indentures given the difficulty of obtaining transaction specific lien releases from the dispersed holders of public debt.

60419_1.DOC

the Class 10 Deferred Obligation and the Continuing Creditor Deferred Obligation and enforcement of the lien by the Claims Agent in the event of (i) a payment default on the Class 10 Deferred Obligation and Continuing Creditor Deferred Obligation (in either case, following five business days written notice and failure to cure); (ii) upon the acceleration or any exercise of remedies by any party of the New Public Notes, the Exit Facility, or any comparable obligation following a default under such agreement; (iii) or the filing of a bankruptcy case by Reorganized Fountain View.

For the avoidance of doubt, the amount of any mandatory prepayment under the Noteholder Prepayment Percentage shall be calculated in accordance with the following:

Example 1:  Class 10 Deferred Obligation:

Assume the Noteholder Prepayment Percentage is 60% on the date eight months following the Effective Date and the regularly scheduled amortization payment in an amount equal to 20% of the initial amount of the Class 10 Deferred Obligation has been made, such that its principal amount has been reduced from $1500 to $1200.  A mandatory prepayment would then be due in the amount of $600 in order to further reduce the then outstanding principal balance to $600.  This mandatory prepayment would be credited against the final two amortization payments.  Assuming no further increase in the Noteholder Prepayment Percentage, the regularly scheduled amortization payment on the first anniversary of the Effective Date would, therefore, remain $300, and the third regularly scheduled amortization payment due one year after the first Business Day following 180 days after the Effective Date would extinguish the Class 10 Deferred Obligation.

Example 2:  Continuing Creditor Deferred Obligation:

Assume the Noteholder Prepayment Percentage is 60% on the date eight months following the Effective Date and the regularly scheduled amortization payment in an amount equal to 33.33% of the initial amount of the Continuing Creditor Deferred Obligation has been made, such that its initial principal amount has been reduced from $1500 to $1000.  A mandatory prepayment would then be due in the amount of $400 in order to further reduce the then outstanding principal balance to $600.  This mandatory prepayment would be

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    credited against the final amortization payment.    Assuming no further increase in the

2    Noteholder Prepayment Percentage, the regularly scheduled amortization payment on the

3    first anniversary of the Effective Date would, therefore, remain $500, and upon final

4    maturity the then remaining balance of $100 would be due.

5                    **3.    Class 11 (Convenience Claims—Unimpaired).**

6            **Classification:**  Class 11 consists of Convenience Claims.

7            **Treatment:**  The legal, equitable and contractual rights of the holders of Class

8    11 Claim are unaltered under the Plan.    The Disbursing Agent will distribute to holders of

9    Class 11 Allowed Claims cash equal to the allowed amount of the Convenience Claim plus

10   interest calculated at 2.49%[4] per annum from the Petition Date through the date of payment

11   on the latest of (i) as soon as reasonably practicable after the Effective Date; (ii) 30 days

12   after the date on which the Convenience Claim becomes an Allowed Claim; or (iii) the date

13   such Convenience Claim becomes due and payable in accordance with its terms.

14           Holders of Class 10 Claims validly making the Convenience Class Election

15   will be treated as follows:  (i) if the aggregate amount of their Allowed Class 10 Claims is

16   equal to or less than $1,250, they will be treated in Class 11, deemed to accept the Plan, and

17   will receive $1,000 in full and final satisfaction of all of their Allowed Class 10 Claims; **or**

18   (ii) if the aggregate amount of their Allowed Class 10 Claims is in excess of $1,250, they

19   will be treated in Class 10 under payment option 10A, deemed to accept the Plan, and will

20   receive cash equal to 80% of such holder's Allowed Class 10 Claims without postpetition

21   interest.

22                   **4.    Class 12 (Insured Professional Liability Claims—Impaired).**

23           **Classification:**  Class 12 consists of Claims that are insured pursuant to the

24   Debtors' Prepetition Professional Liability Policies.

25           **Treatment:**  Upon the later of (i) as soon as reasonably practicable after the

26   Effective Date, and (ii) 30 days after the date upon which the Class 12 Claim (as liquidated

27

28   _____
     [4] 2.49% is the federal judgment rate of interest as of October 2, 2001, the Petition Date for Fountain View, Inc. and 19 of its direct and indirect subsidiaries.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   through settlements, the ADR Procedures, Article IV.H of the Plan to the extent permitted by

2   applicable law, or litigation) becomes an Allowed Claim, the applicable Class 12 Allowed

3   Claim will be paid in full in cash exclusively from the applicable Prepetition Professional

4   Liability Policy, except to the extent of any unexhausted self-insured retention thereunder.

5   The uninsured portion of any Class 12 Allowed Claim, if any, shall, to that extent, be

6   reclassified as a Class 10 Allowed Claim; provided, however, that the uninsured punitive

7   damages portion of any Class 12 Allowed Claim shall be reclassified as a Class 13 Allowed

8   Claim.    The 14 day period to elect between payment option 10A or 10B under Class 10

9   treatment shall commence on the date the uninsured portion of any Class 12 Allowed Claim

10  is reclassified as a Class 10 Claim.

11          **5.      Class 13 (Other Subordinated Claims—Impaired).**

12          **Classification:**  Class 13 consists of Other Subordinated Claims.

13          **Treatment:**  When and if any Class 13 Claim becomes an Allowed Claim, the

14  holder thereof will receive a promissory note in the form set forth in the Plan Supplement in

15  the principal amount of such holder's Allowed Claim issued by Reorganized Fountain View.

16  The promissory note will accrue interest from the date the Class 13 Claim becomes an

17  Allowed Claim at the current federal judgment rate in effect on the date the Class 13 Claim

18  becomes an Allowed Claim and shall be subordinated in right of payment to the New Public

19  Notes, the Vendors' Lien, and the liens securing the Continuing Creditor Deferred Obligation

20  and the Class 10 Deferred Obligation and the Exit Facility and mature on the eleventh

21  anniversary of the Effective Date.

22          **E.      Treatment of Interests (Classes 14, 15, 16, 17, 18, & 19).**

23                  **1.      Class 14 (Existing Preferred Stock—Impaired).**

24          **Classification:**  Class 14 consists of the Existing Preferred Stock.

25          **Treatment:**    The Existing Preferred Stock shall be cancelled and on the

26  Distribution Date the holders thereof shall receive in exchange for each share of Existing

27  Preferred Stock one share of New Preferred Stock; provided, however, no such holder shall

28  receive any New Preferred Stock unless and until such holder agrees in writing to be bound

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

by the Stockholders' Agreement.  The New Preferred Stock to be issued and reserved under the Plan shall have the same attributes as the Existing Preferred Stock except that Reorganized Fountain View's articles of incorporation will be amended in the form provided in the Plan Supplement, and pursuant to those amended and restated articles of incorporation the holders of New Preferred Stock shall have one-tenth of a vote per share of New Preferred Stock on all matters requiring a shareholder vote.  The New Preferred Stock shall not be convertible into New Class A Common Stock.

2.    **Class 15 (Existing Class A Common Stock—Impaired).**

**Classification:**  Class 15 consists of the Existing Class A Common Stock and, pursuant to Code section 510(b), any Claims for rescission or damages related thereto.

**Treatment:**    The Existing Class A Common Stock and any Claims for rescission or damages related thereto shall be cancelled and on the Distribution Date the holders thereof will receive in exchange for each share of Existing Class A Common Stock 1.1142 shares of New Class A Common Stock of Reorganized Fountain View; provided, however, that no such holder shall receive any New Class A Common Stock unless and until such holder agrees in writing to be bound by the Stockholders' Agreement.  The Class 15 Allowed Interests shall be diluted by the Noteholders' Stock Distribution.  Fractional shares of New Class A Common Stock will not be issued.  Holders of Existing Class A Common Stock that would otherwise be entitled to a fractional share distribution of New Class A Common Stock equal to or greater than one-half of a share of New Class A Common Stock shall receive one whole share of New Class A Common Stock.  No distribution shall be made on account of fractional entitlements of less than one-half of a share of New Class A Common Stock.  The New Class A Common Stock to be issued and reserved under the Plan shall have the following attributes:

a.    **Authorization and Issuance.**  Reorganized Fountain View's articles of incorporation will authorize the issuance of 1,500,000 shares of New Class A Common Stock (subject to further amendment after the Effective Date), of which approximately 1,193,586 shares will be outstanding as of the Effective Date.

60419_1.DOC

b.   Par Value.  The New Class A Common Stock shall have a par value of $.01 per share.

c.   Rights.  The New Class A Common Stock shall have such rights with respect to dividends, liquidations, voting, and other matters as are set forth in Fountain View, Inc.'s articles of incorporation, as amended and restated and filed with the Court in the Plan Supplement, and as otherwise provided by applicable law.

**3.   Class 16 (Existing Class B Common Stock—Impaired).**

**Classification:**  Class 16 consists of the Existing Class B Common Stock and, pursuant to Code section 510(b), any Claims for rescission or damages related thereto.

**Treatment:**  Class 16 Allowed Interests and any Claims for rescission or damages related thereto will be cancelled and the holders of Class 16 Allowed Interests will neither receive nor retain any property on account of the Plan.

**4.   Class 17 (Existing Class C Common Stock—Impaired).**

**Classification:**  Class 17 consists of the Existing Class C Common Stock and, pursuant to Code section 510(b), any Claims for rescission or damages related thereto.

**Treatment:**  Class 17 Allowed Interests and any Claims for rescission or damages related thereto will be cancelled and the holders of Class 17 Allowed Interests shall receive on the Distribution Date the number of New Class A Common Stock in Reorganized Fountain View equal to the number of cancelled shares of Existing Class C Common Stock held by such entity; provided, however, that no holder of any Class 17 Interests shall receive any New Class A Common Stock unless and until such holder agrees in writing to be bound by the Stockholders' Agreement.  The Class 17 Allowed Interests shall be diluted by the Noteholders' Stock Distribution.

**5.   Class 18 (Existing Warrants—Impaired).**

**Classification:**  Class 18 consists of the Existing Warrants and, pursuant to Code section 510(b), any Claims for rescission or damages related thereto.

**Treatment:**  Class 18 Allowed Interests and any Claims for rescission or damages related thereto will be cancelled.  On the Distribution Date, the holders of Class 18

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

Allowed Interests shall be issued new warrants, with substantially the same terms and conditions as the Existing Warrants and in the form provided in the Plan Supplement, for the number of shares of New Class A Common Stock in Reorganized Fountain View equal to the number of cancelled shares of Existing Class C Stock subject to issuance to that holder on account of the Existing Warrants; _provided_, _however_, that no holder of any Class 18 Interests shall receive any New Class A Common Stock unless and until such holder agrees in writing to be bound by the Stockholders' Agreement.

      6.    **Class 19 (Existing Management Incentives and Other Existing Interests—Impaired).**

      **Classification:**  Class 19 consists of the Existing Management Incentives and Other Existing Interests and, pursuant to Code section 510(b), any Claims for rescission or damages related thereto.

      **Treatment:**  Class 19 Allowed Interests and any Claims for rescission or damages related thereto will be cancelled and the holders of Class 19 Allowed Interests will neither receive nor retain any property on account of the Plan.

**III.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

    A.    **Assumption and Assignment of Contracts and Leases.**

      1.    **Schedule of Assumed or Assigned Agreements.**

      On the Effective Date, the Debtors will assume (i) the Resident Agreements (including any general agreements of indemnity related to Resident Agreements) and (ii) the executory contracts and unexpired leases—except for any agreements that were previously assumed or rejected by Final Order or under Bankruptcy Code section 365—that are identified on the Schedule of Assumed or Assigned Agreements, and will assign those executory contracts and unexpired leases as further provided herein.

      By the first business day that is at least twenty (20) days prior to the Confirmation Hearing Date, the Debtors will file an amended Schedule of Assumed or Assigned Agreements, and will serve the amended schedules on the non-debtor parties to the

43

1  executory and unexpired leases whose treatment differs from that provided in the Exhibits
2  attached to the Disclosure Statement.  The Debtors reserve the right to amend the Schedule
3  of Assumed or Assigned Agreements at any time before the Confirmation Date to:  (i) delete
4  any executory contract or unexpired lease and provide for its rejection under Section III.B
5  below; or (ii) add any executory contract or unexpired lease and provide for its assumption
6  or assignment under this Section.  The Debtors will provide notice of any amendment to the
7  Schedule of Assumed or Assigned Agreements to the party or parties to the agreement
8  affected by the amendment and counsel to the Committees.

9        The Confirmation Order will constitute a Court order approving the
10  assumption, and, as applicable, assignment, on the Effective Date, of the Resident
11  Agreements and the executory contracts and unexpired leases then identified on the Schedule
12  of Assumed or Assigned Agreements.

13        **2.    Cure Payments.**

14        The Schedule of Assumed or Assigned Agreements also identifies any amounts
15  that the Debtors believe Bankruptcy Code sections 365(b)(1)(A) or (B) require be paid in
16  order to cure defaults under the executory contracts and unexpired leases to be assumed or
17  assigned under the Plan.  The Debtors will file an amended Schedule of Assumed or
18  Assigned Agreements not later than 20 days before the Confirmation Hearing Date, setting
19  forth any cure amounts under the executory contracts and unexpired leases to be assumed or
20  assigned under Section III.A.1, above.  The Debtors reserve the right to further amend the
21  Schedule of Assumed or Assigned Agreements, including modifying the cure amounts, up to
22  the Confirmation Date.  There are no cure payments to be made with respect to the Resident
23  Agreements.

24        As required by Code section 365(b)(1), any and all monetary defaults under
25  each executory contract and unexpired lease to be assumed or assigned under this Plan will
26  be satisfied in one of the following three ways:  (i) the Disbursing Agent will pay to the non-
27  debtor party to the executory contract or unexpired lease the Cure Payments, as set forth on
28  the Schedule of Assumed or Assigned Agreements (as it may be amended), in cash within 10

1   days after the Effective Date; (ii) the Disbursing Agent will satisfy any other terms that are

2   agreed to by both the Debtors and the non-debtor party to an executory contract or unexpired

3   lease that will be assumed or assigned, including, with respect to the applicable Medicare

4   provider agreements, the terms of the CMS Stipulation and the TDHS Settlement; or (iii) if a

5   dispute arises regarding (a) the amount of any proposed Cure Payments, (b) whether the

6   Debtors have provided adequate assurance of future performance under an executory

7   contract or unexpired lease to be assumed or assigned, or (c) any other matter pertaining to a

8   proposed assumption or assignment, the proposed Cure Payments will be made within 30

9   days after entry of a Final Order resolving the dispute and approving the assumption or

10  assignment.

11          3.      **Objections to Assumption or Assignment or Proposed Cure**

12                  **Payments.**

13          Any party to an executory contract or unexpired lease that will be assumed or

14  assigned under the Plan who either contends that the proposed Cure Payment specified on

15  the Schedule of Assumed or Assigned Agreements is incorrect or otherwise objects to the

16  contemplated assumption or assignment <u>must</u> File with the Court and serve upon the

17  Debtors, Debtors' Counsel, and counsel to the Committees, a written statement and

18  supporting declaration stating the basis for its objection. This statement and declaration must

19  be Filed and served by the later of: (i) twenty (20) days before the Confirmation Hearing

20  Date; or (ii) with respect to objections relating to an executory contract or unexpired lease

21  added to the Schedule of Assumed or Assigned Agreements by an amendment, or with

22  respect to any changed cure amount, ten (10) days after the Debtors file and serve any

23  amendments to the Schedule of Assumed or Assigned Agreements   Any entity that fails to

24  timely File and serve such a statement and declaration will be deemed to waive any and all

25  objections to the proposed assumption or assignment and the proposed Cure Payments.

26          4.      **Liens with Respect to Assumed Contracts and Leases Pursuant to**

27                  **the Exit Facility and Plan.**

28          As of the Effective Date, the Reorganized Enterprise is authorized to grant

KLEE, TUCHIN, BOGDANOFF & STEIN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    liens to secure the Exit Facility, the New Public Notes, the Class 10 Deferred Obligation, the

2    Continuing Creditor Deferred Obligation, and the Vendors' Lien, in accordance with the

3    terms of the Exit Facility Closing Documents, the indenture pursuant to which the New

4    Public Notes are to be issued, and the agreement between the Claims Agent and Reorganized

5    Fountain View, in the Debtors' interests in all unexpired real property leases (and, as

6    applicable, executory contracts) included on the Schedule of Assumed or Assigned

7    Agreements, notwithstanding anything to the contrary in otherwise applicable law or in any

8    such lease.   The Debtors and the Reorganized Enterprise are authorized to execute such

9    documents and memoranda and record such instruments as may be appropriate to perfect

10   such liens under otherwise applicable law.

11         **B.**      **Rejection of Contracts and Leases.**

12              **1.**      **Schedule of Rejected Agreements.**

13              On the Effective Date, the Debtors will reject all executory contracts and

14   unexpired leases on the Schedule of Rejected Agreements—except for any agreements that

15   were previously assumed or rejected by Final Order or under Bankruptcy Code section 365

16   or that will be assumed under Section III.A of the Plan—but only to the extent that these

17   agreements constitute executory contracts or unexpired leases under Bankruptcy Code

18   section 365.   (Listing an agreement on the Schedule of Rejected Agreements is not an

19   admission that the agreement is an executory contract or unexpired lease or that the Debtors

20   have any liability under the agreement.)

21              The Debtors reserve the right to amend the Schedule of Rejected Agreements

22   at any time before the Confirmation Date to:  (i) delete any executory contract or unexpired

23   lease and provide for its assumption or assignment under Section III.A, above; or (ii) add any

24   executory contract or unexpired lease and provide for its rejection under this Section III.B.

25   The Debtors will provide notice of any amendment to the Schedule of Rejected Agreements

26   to the party or parties to the executory contracts or unexpired leases affected by the

27   amendment and counsel to the Committees.

28              The Confirmation Order will constitute a Court order approving the rejection,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  on the Effective Date, of any and all of the agreements that the Debtors executed before the

2  Petition Date—except for any agreements that were previously assumed or rejected either by

3  a Final Order or under Bankruptcy Code section 365 or that will be assumed under Section

4  III.A—including without limitation the executory contracts or unexpired leases identified on

5  the Schedule of Rejected Agreements.

6          **2.**     **Bar Date for Rejection Damage Claims.**

7         Any Rejection Damage Claim or other Claim for damages arising from the

8  rejection under the Plan of an executory contract or unexpired lease must be filed with the

9  Court and served upon the Debtors' Counsel and the Reorganized Enterprise within 30 days

10  after the mailing of notice of entry of the Confirmation Order at which time the holder of the

11  Claim may elect between payment option 10A or 10B, if applicable, by delivering to the

12  Debtors' counsel and the Reorganized Enterprise a written notice of election of option 10A

13  or 10B.  Holders of Class 10 Claims failing to make a timely election between payment

14  option 10A or 10B shall be deemed to elect payment option 10B.  Any such damage Claims

15  that are not timely Filed and served will be forever barred and unenforceable against the

16  Debtors, the Estates, the Reorganized Enterprise, and their respective property; and Entities

17  holding these Claims will be barred from receiving any distributions under the Plan on

18  account of their Rejection Damage Claims or other damage Claims.  Nothing herein extends

19  the bar date applicable to any contract or lease rejected otherwise than under the Plan or for

20  any Claim other than one arising directly as a result of the rejection of a contract or lease

21  under the Plan.

22  **C.**    **Postpetition Contracts and Leases.**

23         Except as expressly provided in the Plan or the Confirmation Order, each

24  contract, lease, or other agreement that any of the Debtors entered into after the Petition Date

25  will either revest in Reorganized Fountain View, Reorganized Summit Care Pharmacy or the

26  Other Reorganized Debtors, or be assigned to a Post-Effective Date Subsidiary pursuant to

27  the terms of the Corporate Restructuring Closing Documents.  These agreements will then

28  become obligations solely of the entities so designated in the Corporate Restructuring

1  Closing Documents and will remain in full force and effect after the Confirmation Date and

2  the Effective Date.  The CMS Stipulation and the TDHS Settlement will be binding on the

3  Reorganized Enterprise in accordance with their terms notwithstanding anything else to the

4  contrary in the Plan.

### IV.

### MEANS OF EXECUTION AND IMPLEMENTATION
### OF THE PLAN AND OTHER PROVISIONS

8  Except as otherwise specifically provided herein, Fountain View, Inc., and,

9  after the Effective Date, Reorganized Fountain View, shall serve as the duly authorized agent

10  of the Debtors, the Estates, and the Reorganized Enterprise for the purposes of performing

11  and consummating the Plan pursuant to the Bankruptcy Code.

12  **A.    Substantive Consolidation.**

13  As of the Effective Date, solely for the purposes of the Plan, the assets, claims,

14  and affairs of the Debtors and the Estates shall be substantively consolidated pursuant to

15  Bankruptcy Code section 105(a).  As a result of the substantive consolidation, on the

16  Effective Date, all property, rights, and claims of the Debtors and the Estates, and all Claims

17  against the Debtors and the Estates shall be deemed pooled for purposes of allowance,

18  treatment, and distributions under the Plan and multiple proofs of Claim on account of any

19  Claim upon which any of the Debtors are co-obligors or guarantors or otherwise may be

20  contingently liable shall without necessity of objection by any party be deemed to constitute

21  a single proof of Claim entitled to a single satisfaction from the substantively consolidated

22  Estates in accordance with the terms of the Plan; the duplicative Claims being otherwise

23  deemed disallowed.  Further, as a result of this substantive consolidation, all Claims between

24  and among the Debtors and the Estates shall be cancelled without being entitled to any

25  distribution under the Plan.

26  **B.    Corporate Restructuring Plan.**

27  On the Effective Date, the Debtors will consummate the transactions

28  contemplated in the Corporate Restructuring Plan.  Upon consummation of the Corporate

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   Restructuring Plan, all of the Business Assets, free and clear of all liens, Claims,

2   encumbrances, and Interests, except as otherwise provided in the Plan, shall be held by

3   Reorganized Summit Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective

4   Date Subsidiaries in accordance with the Corporate Restructuring Plan.   Reorganized

5   Fountain View will own directly or indirectly 100% of the equity interests in Reorganized

6   Summit Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective Date

7   Subsidiaries.  The Debtors (other than Fountain View, Inc., Summit Care Pharmacy, Inc.,

8   and the Other Reorganized Debtors) will, following consummation of the Corporate

9   Restructuring Plan, cease their independent existence through dissolution or merger.

10      **C.      Exit Facility.**

11              On the Effective Date, the Debtors will consummate the transactions

12   contemplated in the Exit Facility Commitment Letters.  The Disbursing Agent shall use the

13   proceeds of the Exit Facility together with the Bank Midwest Advance and the Debtors' cash

14   and cash equivalents on hand to fund payments under the Plan as follows:

15   • Payments in satisfaction of Allowed Administrative Claims, Allowed Priority

16     Claims, and Allowed Priority Tax Claims and any required cure payments with

17     respect to unimpaired Claims;

18   • Payments in satisfaction of Allowed Claims in Classes 3, 5, 7, 8, and 11;

19   • Payments in partial satisfaction of Allowed Claims in Class 6;

20   • Payments in satisfaction of Allowed Claims in Class 10 electing payment

21     option 10A;

22   • Payments in partial satisfaction of Allowed Claims in Class 10 electing (or

23     deemed to elect) payment option 10B;

24   • Payment of the Initial Cash Payment in partial satisfaction of Allowed Claims

25     in Class 9; and

26   • Retention of sufficient funds to meet the Reorganized Enterprise's working

27     capital needs after the Effective Date.

28              The closings of the Exit Facility and the Corporate Restructuring Plan are

1 | integral and necessary conditions and terms of the Plan.

2 | **D.  Amendment to Articles of Incorporation.**

3 | Reorganized Fountain View's articles of incorporation will be amended in the
4 | form provided in the Plan Supplement to eliminate Class B Common Stock and Class C
5 | Common Stock and prohibit the issuance of nonvoting equity securities.  Reorganized
6 | Summit Care Pharmacy's and the Other Reorganized Debtors' articles of incorporation will
7 | be amended in the form Filed with the Plan Supplement to, inter alia, prohibit the issuance of
8 | nonvoting equity securities.

9 | **E.  The Claims Agent.**

10 | **1.  Designation of the Claims Agent.**

11 | The Claims Agent shall be designated by the Creditors' Committee with the
12 | prior consent of the Debtors, which consent shall not be unreasonably withheld, pursuant to
13 | the terms and conditions of the General Claim Holder Agency Agreement submitted by the
14 | Debtors in the Plan Supplement.  The General Claim Holder Agency Agreement shall
15 | provide that financial and business information concerning Reorganized Fountain View
16 | provided to the indenture trustee for the New Public Notes that is not otherwise publicly
17 | available shall be concurrently provided to the Claims Agent so long as any Class 10
18 | Deferred Obligation remains outstanding.

19 | **2.  Powers and Duties.**

20 | The Claims Agent shall have the following rights, powers and duties under the
21 | General Claim Holder Agency Agreement pursuant to which it serves:

22 | a.  The Claims Agent may employ counsel reasonably acceptable to
23 | the Debtors.  The reasonable costs, fees, and expenses of counsel
24 | for the Claims Agent shall be paid by Reorganized Fountain
25 | View;

26 | b.  The Claims Agent may exercise rights and remedies in
27 | accordance with the terms of the General Claim Holder Agency
28 | Agreement upon (i) default by Reorganized Fountain View in the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  payment of the Class 10 Deferred Obligation, the Continuing

2  Creditor Deferred Obligation or the obligations secured by the

3  Vendors' Lien (in any case, following five (5) business days

4  written notice and failure to cure); (ii) acceleration or any

5  exercise of remedies by any party under the Exit Facility, the

6  New Public Notes, or any comparable obligation following a

7  default under such agreement; or (iii) the filing of a bankruptcy

8  case by Reorganized Fountain View; and

9  c.    The Claims Agent may file suit or any appropriate motion for

10  relief in the Court or in any other court of competent jurisdiction

11  to exercise his rights, powers, or duties, or to receive

12  compensation or its counsel's compensation under the General

13  Claim Holder Agency Agreement.

14  All functions and procedures applicable to the Claims Agent and the power and

15  duties of the Claims Agent not expressly set forth in the Plan shall be governed by the

16  provisions of the General Claim Holder Agency Agreement.

17  **F.    Revesting of Assets.**

18  Except as otherwise provided in the Plan, the Corporate Restructuring Closing

19  Documents, the Exit Facility Closing Documents, or in any other agreements contemplated

20  under the Plan, on the Effective Date, all property of the Estates shall vest in the Reorganized

21  Enterprise, free and clear of all Claims, liens, encumbrances, and other Interests.  From and

22  after the Effective Date, the Reorganized Enterprise may operate the businesses and use,

23  acquire, and dispose of property without supervision by the Court and free of any restrictions

24  of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed

25  by the Plan and the Confirmation Order.

26  **G.    Preservation of Causes of Action.**

27  Except as expressly released pursuant to the Plan, pursuant to section 1123(b)

28  of the Bankruptcy Code, the Reorganized Enterprise shall be vested with and shall retain and

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

may enforce any claims, rights, and causes of action that the Debtors or the Estates may hold or have against any entity, including without limitation, the Avoidance Actions.

Any such rights shall be retained by the Reorganized Enterprise free and clear of all Claims and Interests, and the Reorganized Enterprise may pursue the Avoidance Actions or any other such claims, rights, and causes of action that Debtors or the Estates may hold or have against any entity, in accordance with its best interests.

## H.    Objections to Claims and Interests.

Except as otherwise provided in Section II.B, above (regarding allowance of Administrative Claims), objections to any Claims or Interests shall be filed and served upon the holder of such Claim or Interest no later than the date that is the later of (i) nine months after the Effective Date, unless extended by the Court; or (ii) nine months after the date on which a proof of Claim or Interest has been filed, unless extended by the Court. After the Effective Date, only the Reorganized Enterprise shall have the authority to file, settle, compromise, withdraw, or litigate to judgment objections to Claims and Interests. The Reorganized Enterprise may file, settle, compromise, withdraw, or litigate to judgment such objections without further order of the Court.

Holders of debts that arise prior to the Confirmation Date involving personal injury or wrongful death shall be enjoined by the injunction established by the Confirmation Order from commencing or continuing any action to collect such Claim except in conformity with the ADR Procedures applicable after the Effective Date (or, as applicable, the Code's claim adjudication procedures).

In voting on the Plan, creditors may not rely on the absence of an objection to their proofs of Claim as any indication that the Debtors, the Committees or other parties in interest, ultimately will not object to the amount, priority, security or allowability of their Claims. Moreover, except as otherwise expressly provided in the Plan or by written stipulation Filed with the Court, the Debtors reserve, and intend that the Reorganized Enterprise shall prosecute, claims of the Debtors and the Estates (including rights to affirmative recovery, rights to subordinate claims, and rights to avoid transfers). In

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  particular, creditors should anticipate that the Reorganized Enterprise may object to any

2  Claim asserted in an amount greater than the amount set forth in the Schedules.

3  Notwithstanding anything else to the contrary herein, with respect to Class 10 Claims and

4  Class 11 Claims, the Debtors and the Reorganized Enterprise may only object to a Claim if it

5  is (i) listed on Exhibit 8 (Schedule of Disputed Claims) to the Disclosure Statement (as such

6  exhibit may be subsequently amended through the date the Debtors serve the Disclosure

7  Statement upon creditors and interest holders), (ii) not timely Filed, or (iii) duplicative of

8  another Claim that is not objected to.

9          **I.      Distribution of Property Under the Plan.**

10         The following procedures set forth in this Section IV.I shall apply to

11  distributions made pursuant to this Plan by the Disbursing Agent, and, where applicable, any

12  such agents as they may appoint to effectuate such distributions.

13         **1.      Manner of Cash Payments Under The Plan.**

14         Payments to domestic entities holding Allowed Claims will be tendered in U.S.

15  Dollars and will be made by checks drawn on a domestic bank selected by the party making

16  such distribution or, at its option, by wire transfer from a domestic bank.  Payments made to

17  foreign creditors holding Allowed Claims may be paid, at the option of the Disbursing

18  Agent, as set forth in the preceding sentence or in such funds and by such means as are

19  necessary or customary in the particular foreign jurisdiction.

20         **2.      No *De Minimis* Distributions.**

21         Notwithstanding anything to the contrary in this Plan, no cash payment of less

22  than $25 will be made by the Disbursing Agent to any entity holding an Allowed Claim.  No

23  consideration will be provided in lieu of the de minimis distributions that are not made under

24  this Section.

25         **3.      No Distribution with Respect to Disputed Claims**

26         Notwithstanding any other provisions of the Plan, no payments of cash or

27  distributions of other property or other consideration of any kind shall be made on account of

28  any Disputed Claim unless and until such Claim becomes an Allowed Claim or is deemed to

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

1  be such for purposes of distribution, and then only to the extent that the Claim becomes, or is

2  deemed to be for distribution purposes, an Allowed Claim.   The presence of a Disputed

3  Claim in any Class will not be a cause to delay distribution to Allowed Claims in that Class

4  or in other Classes. Any holder of a Claim that becomes an Allowed Claim after the

5  Effective Date will receive its distribution (including, as applicable, interest from the

6  Effective Date through the date of payment) within 30 days from the date that such Claim

7  becomes an Allowed Claim.

8          **4.**        **Delivery of Distributions and Undeliverable or Unclaimed**

9                  **Distributions.**

10            **a.**       **Delivery of Distributions in General.**

11          The Disbursing Agent shall make distributions to each holder of an Allowed

12  Claim as follows:  (i) by mail at the addresses set forth on the respective proof of Claim filed

13  by such holder of an Allowed Claim; (ii) by mail at the address set forth in any written notice

14  of address change delivered to the Disbursing Agent after the date of any related proof of

15  Claim; (iii) by mail at the address reflected in the Schedules if no proof of Claim is filed and

16  the Disbursing Agent has not received a written notice of a change of address; (iv) with

17  respect to the holders of Class 8 Allowed Claims to the Agent in such manner as the Agent

18  may reasonably instruct the Disbursing Agent in writing; and (v) with respect to holders of

19  Class 9 Allowed Claims, at the last known address of record holders of such Allowed Claims

20  as of the close of business on the Effective Date, as determined by the Indenture Trustee or

21  applicable transfer agent.

22          As set forth in Section IV.I.1 above, the Disbursing Agent may, at its option

23  make a distribution to a holder of an Allowed Claim by wire transfer pursuant to the wire

24  transfer instructions provided by the holder of such Allowed Claim.

25            **b.**       **Delivery of 11¼% Noteholder Distributions.**

26          As soon as reasonably practicable after the Effective Date, but in no event later

27  than 10 days after the Effective Date, Reorganized Fountain View shall make the

28  distributions called for in Part II.D.1 of the Plan on account of the Claims for principal and

interest arising under the 11¼% Notes to the Indenture Trustee.  The Indenture Trustee will receive such cash and securities for the benefit of the record holders, as of the Record Date, of the Claims for principal and interest arising under the 11¼ Notes and will deliver, as soon as reasonably practicable after the Effective Date, such cash and securities to each record holder, as of the Record Date, of a Claim for principal and interest arising under the 11¼ Notes in accordance with the Indenture, or applicable law, and the Plan.  The reasonable fees and expenses of the Indenture Trustee for making distributions under the Plan shall be paid by Reorganized Fountain View.

As a condition to the receipt of any Pro Rata share of the Noteholders' Stock Distribution, a holder of a Claim for principal and interest arising under the 11¼% Notes shall agree in writing to be bound by the Stockholders' Agreement.  As a further condition to participation under the Plan, a holder of a Claim for principal and interest arising under the 11¼% Notes that desires to receive property to be distributed on account of such Claim shall surrender the security representing such Claim to the Indenture Trustee in accordance with the procedures set forth in the Indenture, to the extent applicable, or in accordance with such other procedures as shall be established by the Indenture Trustee as may be reasonably acceptable to Reorganized Fountain View.  Following confirmation of the Plan, record holders of such securities shall receive specific instructions regarding the time and manner in which the 11¼% Notes are to be surrendered, which instructions shall be given by Reorganized Fountain View, the Disbursing Agent, or the Indenture Trustee to such record holders as soon practicable after the Effective Date.  Pending such surrender, such securities shall be cancelled and represent only the right to receive the distributions to which the holder is entitled under the Plan.

Any Claims for principal and interest arising under the 11¼% Notes represented by a security which is lost, stolen, mutilated, or destroyed shall be deemed surrendered when the holder of the Claim based thereon delivers to the Indenture Trustee (i) evidence satisfactory to the Indenture Trustee of the loss, theft, mutilation, or destruction of

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

such instrument, and (ii) such security or indemnity as may be required by the Indenture Trustee to hold it harmless with respect thereto.

**c.    Distribution to Interest Holders Under the Plan.**

As soon as reasonably practicable after the Effective Date, Reorganized Fountain View shall make the distributions called for in Part II.E of the Plan on account of the Class 14, Class 15, Class 17, and Class 18 Interests to the record holders of those respective Interests, in accordance with applicable law and the Plan.

As a condition to participation under the Plan, a holder of an Interest entitled to distributions of New Class A Common Stock, New Warrants, or New Preferred Stock under the Plan that desires to receive property to be distributed on account of such Interest shall agree in writing to be bound by the Stockholders' Agreement and shall surrender the security representing such Interest to Reorganized Fountain View or its designee in accordance with procedures as shall be established by Reorganized Fountain View.  Record holders of such Interests shall receive specific instructions regarding the time and manner in which the securities representing such Interests are to be surrendered, which instructions shall be given by Reorganized Fountain View to such record holders as soon as practicable after the Effective Date.  Pending such surrender, such securities shall be cancelled and represent only the right to receive the distributions to which the holder is entitled under the Plan.

Any Interests represented by a security which is lost, stolen, mutilated, or destroyed shall be deemed surrendered when the holder of the Interest based thereon delivers to Reorganized Fountain View (i) evidence satisfactory to Reorganized Fountain View of the loss, theft, mutilation, or destruction of such instrument, and (ii) such security or indemnity as may be required by Reorganized Fountain View to hold it harmless with respect thereto. All equity securities issued under the Plan shall be deemed to be issued subject to the Stockholders' Agreement notwithstanding the failure of any holder thereof to have agreed in writing to be bound by the terms of the Stockholders' Agreement and the securities issued shall be legended with a notation to the effect that such securities are issued subject to the terms and restrictions, including restrictions on transfer, set forth in the Stockholders'

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

Agreement as well as any restrictions on transfer imposed by applicable securities law.

Securities issued in accordance with the Plan will not be registered pursuant to the Securities Act of 1933. Such securities are issued pursuant to the exemption from the registration requirements of the Securities Act of 1933 under Code section 1145.

### d.   Undeliverable and Unclaimed Distributions.

If the distribution to the holder of any Allowed Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Disbursing Agent pursuant to this Section until such time as a distribution becomes deliverable. The Disbursing Agent will hold undeliverable cash distributions in an unsegregated, interest-bearing bank account for the benefit of the entities entitled to the distributions. These entities will be entitled to any interest actually earned on account of the undeliverable distributions. The bank account will be maintained in the name of the Disbursing Agent, but it will be accounted for separately.

Notwithstanding any otherwise applicable laws regarding unclaimed distributions including the law of escheat, any holder of an Allowed Claim who does not assert a claim in writing for an undeliverable distribution held by the Disbursing Agent within one year after the Effective Date shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan, or from asserting a Claim against the Debtors, the Estates, the Reorganized Enterprise, the Claims Agent, the Indenture Trustee or their respective property, and the Claim giving rise to the undeliverable distribution will be discharged.

Any undeliverable distributions that are not claimed under this Section will be retained by or returned to Reorganized Fountain View, free from any restrictions thereon. Nothing contained in the Plan shall require the Debtors, the Estates, the Disbursing Agent, the Reorganized Enterprise, the Claims Agent, or the Indenture Trustee, as the case may be, to attempt to locate any holder of an Allowed Claim.

1    This section V.H.4.d shall not apply to the Class 8 Claims, the distributions on

2  account of which shall be made in their entirety to the Agent upon the Effective Date or the

3  date upon which the Class 8 Claims shall become Allowed Claims.

4    **J.    Cancellation of Interests.**

5    On the Effective Date, all Interests in the Debtors other than Fountain View,

6  Inc., Summit Care Pharmacy, Inc., and the Other Reorganized Debtors will be deemed

7  cancelled or extinguished pursuant to Section IV.A hereof.

8    **K.    Full Satisfaction.**

9    The Disbursing Agent shall make, and each holder of a Claim shall receive, the

10  distributions provided for in the Plan in full satisfaction and discharge of such Claim.

11    **L.    Compliance With Tax Requirements.**

12    The Disbursing Agent shall comply with all withholding and reporting

13  requirements imposed on it by governmental units, and all distributions pursuant to the Plan

14  shall be subject to such withholding and reporting requirements, if any.

15    **M.    Setoff, Recoupment and Other Rights.**

16    Notwithstanding anything to the contrary contained in the Plan, the

17  Reorganized Enterprise may, but shall not be required to, setoff, recoup, assert

18  counterclaims, or withhold against the distributions to be made pursuant to this Plan on

19  account of any Allowed Claim, any claims that the Debtors, the Estates, and the Reorganized

20  Enterprise may have against the entity holding the Allowed Claim; provided, however, that

21  neither the failure to effect such a setoff or recoupment, nor the allowance of any Claim

22  against the Debtors, the Estates, and the Reorganized Enterprise, nor any partial or full

23  payment during the Reorganization Cases or after the Effective Date in respect of any

24  Allowed Claim, shall constitute a waiver or release by Debtors, the Estates, and the

25  Reorganized Enterprise of any claim that they may possess against such holder.

26    **N.    Dissolution of the Debtors other than Fountain View, Inc., Summit Care**

27    **Pharmacy, Inc., and the Other Reorganized Debtors.**

28    As of the Effective Date, the Debtors other than Fountain View, Inc., Summit

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   Care Pharmacy, Inc., and the Other Reorganized Debtors (i) will be dissolved or merged; (ii)

2   their assets distributed to the Reorganized Enterprise as provided for in this Plan and the

3   Corporate Restructuring Plan; and (iii) their liabilities will be discharged except as otherwise

4   provided for in this Plan.  The Reorganized Enterprise is authorized to file all documents and

5   instruments necessary to effectuate dissolution of any of the Debtors in accordance with

6   otherwise applicable law.

7        **O.**    **Conditions to Effectiveness of the Plan.**

8           **1.**    **Conditions.**

9        The Plan shall not become binding unless and until the Effective Date occurs.

10  The Effective Date is the first Business Day that, as determined by Debtors in their

11  reasonable discretion, is a Business Day (i) that is at least eleven days after the Confirmation

12  Date; (ii) on which no stay of the Confirmation Order is in effect; and (iii) on which all of

13  the following conditions have been satisfied or waived by Debtors in writing:

14       a.    The Confirmation Order shall be entered in a form reasonably

15  acceptable to the Debtors and the lenders providing the Exit Facility;

16       b.    All the conditions to the execution and enforceability of the Exit Facility

17  Closing Documents and the Corporate Restructuring Closing Documents shall have been

18  satisfied or waived and the Exit Facility lenders shall have funded the Exit Facility;

19       c.    The Claims Agent shall have been duly appointed and qualified to serve

20  and all the conditions to the execution and enforceability of the General Claim Holder

21  Agency Agreement (which shall be in a form reasonably acceptable to the Debtors and the

22  Creditors' Committee) have been satisfied or waived; and

23       d.    The indenture trustee for the New Public Notes shall have been duly

24  appointed and qualified to serve under the indenture governing the New Public Notes (which

25  shall be in a form reasonably acceptable to the Debtors and the Noteholders' Committee).

26          **2.**    **Waiver of Conditions.**

27       The requirement that the conditions to the occurrence of the Effective Date, as

28  specified in Section IV.O.1, above, be satisfied may be waived in whole or in part, and the

*KLEE, TUCHIN, BOGDANOFF & STERN LLP*
*2121 AVENUE OF THE STARS, 33RD FLOOR*
*LOS ANGELES, CALIFORNIA 90067-5061*
*(310) 407-4000*

1    time within which any such conditions must be satisfied may be extended, in writing by the

2    Debtors or, in the case of Section IV.O.1.c and IV.O.1.d above, with the consent of the

3    Creditors' Committee and the Noteholders' Committee, respectively.  To be effective, such

4    written waiver or extension must be filed with the Court.  The failure to satisfy or waive any

5    of such conditions may be asserted by the Debtors regardless of the circumstances giving rise

6    to the failure of such condition to be satisfied, including any action or inaction by the

7    Debtors.  The failure of the Debtors to exercise any of the foregoing rights shall not be

8    deemed a waiver of any other rights and each such right shall be deemed ongoing and

9    assertable at any time.

## V.

## MISCELLANEOUS PROVISIONS

### A.    Limitations of Liability.

#### 1.    For Solicitation or Participation.

Pursuant to section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

#### 2.    For Actions in Connection with Plan and Related Matters.

To the maximum extent permitted by law, none of the Debtors, the Estates, the Reorganized Enterprise, the Committees, or any of their employees, officers, directors, attorneys, agents, members, or representatives, or professional advisors employed or retained by any of them, whether or not pursuant to a Final Order of the Court, shall have or incur any liability to any entity for any act taken or omission made in good faith in connection with or related to formulating, implementing, or confirming the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

60419_1 DOC

60

the Plan.

### 3. No Admissions.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will:  (i) be deemed to be an admission by any Debtor with respect to any matter set forth in the Plan, including, without limitation, liability on any Claim or the propriety of any Claim's classification; (ii) constitute a waiver, acknowledgment, or release of any Claims by or against, or any Interests in, any Debtor; or (iii) prejudice in any manner the rights of the Debtors, the Estates, or any creditors in any further proceedings.

### B. Dissolution of Committees.

On the Effective Date, the Committees and any other committee appointed pursuant to Bankruptcy Code section 1102 shall be released and discharged from the rights and duties arising from or related to the Reorganization Cases, except with respect to final applications for professionals' compensation and objections thereto.   The professionals retained by the Committees and any other committee appointed pursuant to Bankruptcy Code section 1102 and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date, except for services rendered and expenses incurred in connection with any applications by such professionals or committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in the Plan and objections thereto, as approved by the Court.

### C. Exemption from Certain Transfer Taxes.

In accordance with Bankruptcy Code section 1146(c), neither the issuance, transfer, exchange of a security, nor the delivery of an instrument of transfer under this Plan or the Corporate Restructuring Plan shall be taxed under any law imposing a stamp or similar tax.  The Confirmation Order shall direct all governmental officials and agents to forego the assessment and collection of any such tax or governmental assessment and to accept for

1  filing and recordation any of the foregoing instruments or other documents without payment

2  of such tax or other governmental assessment.

3  **D.    Modifications of the Plan.**

4  Subject to the conditions and terms of the Exit Facility Closing Documents and

5  restrictions set forth in Code section 1127, the Debtors and Reorganized Fountain View

6  reserve the right to alter, amend, or modify the Plan before its substantial consummation.

7  **E.    Revocation of the Plan.**

8  The Debtors reserve the right to revoke or withdraw the Plan prior to the

9  Confirmation Date.  If the Plan is not confirmed or the Effective Date does not occur—either

10 because the Debtors revoked or withdrew the Plan or for any other reason—the Plan will be

11 null and void, and nothing contained in the Plan or the Disclosure Statement will:  (i) waive

12 or release any Claims by or against, or any Interests in, the Debtors; or (ii) prejudice in any

13 manner any rights that the Debtors, the Estates, or any creditors or equity security holders

14 have in any further proceedings.

15 **F.    Post-Effective Date Effect of Evidences of Claims or Interests.**

16 Except as otherwise provided in the Plan, commencing on the Effective Date,

17 notes, stock certificates, warrants, and other evidences of Claims against, or Interests in, a

18 Debtor will represent only the right to receive the distributions contemplated under the Plan.

19 **G.    Nonapplicability of Local Rule 3020-1(2).**

20 Neither the Debtors nor the Reorganized Enterprise will be required to comply

21 with Local Bankruptcy Rule 3020-1(2), which otherwise requires the filing of certain status

22 reports after the Confirmation Date, or otherwise file reports after the Confirmation Date

23 with the Court, except as expressly provided in the Confirmation Order.

24 **H.    Successors and Assigns.**

25 The rights, benefits, and obligations of any entity named or referred to in this

26 Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator,

27 successor, or assign of such entity.

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

**I.    Saturday, Sunday, or Legal Holiday.**

If any payment or act under the Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**J.    Governing Law.**

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

**K.    Severability of Plan Provisions.**

If, before confirmation, the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

**L.    Application of Code Section 1145.**

The exemption from the requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and any state or local law requiring registration or qualification for the offer or sale of a security, provided under Bankruptcy Code section 1145, shall apply to the securities distributed under the Plan.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

# VI.

## EFFECT OF CONFIRMATION OF THE PLAN

### A.    Discharge and Injunction.

The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Reorganized Enterprise, and any of their property; and holders of Claims or Interests are not allowed to enforce their rights with respect to prepetition Claims or Interests outside the terms of the Plan.  Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date:  (i) the Debtors, the Estates, the Reorganized Enterprise, and their property shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Code from all Claims and Interests, including, demands, liabilities, Claims, and Interests that arose before the Confirmation Date and all debts of the kind specified in Code sections 502(g), 502(h), or 502(i), regardless of whether or not (a) a proof of Claim or Interest based on such debt or Interest is filed or deemed filed; (b) a Claim or Interest based on such debt or Interest is allowed pursuant to section 502 of the Code; or (c) the holder of a Claim or Interest based on such debt or Interest has or has not accepted the Plan; and (ii) all entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Enterprise, and their property any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date.

Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against and all debts and liabilities of the Debtors, as provided in sections 524 and 1141 of the Code, and such discharge shall void any judgment against any of the Debtors obtained at any time to the extent that such judgment is a determination of the personal liability of any of the Debtors.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all entities who have held, currently hold, or may hold a debt,

1  Claim, or Interest discharged pursuant to the terms of the Plan are permanently enjoined
2  from taking any of the following actions on account of any such discharged debt, Claim, or
3  Interest: (i) commencing or continuing in any manner any action or other proceeding against
4  the Debtors, the Estates, the Reorganized Enterprise, or their property in any manner, in any
5  place that does not comply with or is inconsistent with the provisions of the Plan, the ADR
6  Procedures, or the Confirmation Order; (ii) enforcing, attaching, collecting, or recovering in
7  any manner any judgment, award, decree, or order against the Debtors, the Estates, the
8  Reorganized Enterprise, or their property; (iii) creating, perfecting, or enforcing any lien or
9  encumbrance against the Debtors, the Estates, the Reorganized Enterprise, or their property
10 to enforce a claim that arose preconfirmation; (iv) terminating or canceling any Resident
11 Agreement on account of its assumption or assignment hereunder; (v) asserting any setoff,
12 right of subrogation, or recoupment of any kind (other than as expressly provided by the Plan
13 with respect to claims of setoff preserved pursuant to section 553 of the Code) against any
14 obligation due to the Debtors, the Estates, the Reorganized Enterprise, or their property; (vi)
15 enforcing any contractual or legal right of subordination inconsistent with the terms of the
16 Plan; and (vii) commencing or continuing any action, in any manner, in any place that does
17 not comply with or is inconsistent with the provisions of the Plan, the ADR Procedures,
18 or the Confirmation Order.  Any entity injured by any willful violation of such injunction
19 shall recover actual damages, including costs and attorneys' fees, and, in appropriate
20 circumstances, may recover punitive damages, from the willful violator.

21 **B.    Payment of Statutory Fees.**

22     The Disbursing Agent shall pay all fees due under 28 U.S.C. § 1930 in
23 accordance with Section II.B.1 of the Plan.

24 **C.    Retention of Jurisdiction.**

25     Notwithstanding the entry of the Confirmation Order or the occurrence of the
26 Effective Date, the Court shall retain jurisdiction over the Reorganization Cases after the
27 Effective Date to the fullest extent provided by law, including the jurisdiction to:

28     1.    Allow, disallow, determine, liquidate, classify, establish the priority or

65

secured or unsecured status of, estimate, or limit any Claim, Interest, or Administrative Claim, and with respect to Claims based on personal injury or wrongful death, continue to enforce the ADR Procedures;

2.    Rule on applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Code or the Plan, for periods ending on or before the Effective Date;

3.    Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any executory contract or unexpired lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

4.    Ensure that distributions to holders of Allowed Claims, Administrative Claims, and Interests are accomplished pursuant to the provisions of the Plan;

5.    Resolve any and all applications, motions, adversary proceedings, and other matters involving the Debtors that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Plan;

6.    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Plan;

7.    Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any person's rights or obligations in connection with the Plan;

8.    Modify the Plan before or after the Effective Date pursuant to Code section 1127, or modify the Disclosure Statement or any contract, instrument, release, or other agreement created in connection with the Plan or Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any order of the Court, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan or Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Code;

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

9.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to enforce the Plan or restrain interference by any entity with consummation or enforcement of the Plan;

10.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Avoiding Actions or any contract, instrument, release, or other agreement or document created in connection with the Plan, Plan Supplement or the Disclosure Statement or approved by the Court; and

12.     Enter an order closing the Reorganization Cases.

If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter, this Section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

KLEE, TUCHIN, BOGDANOFF & STEIN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

60419_1 DOC

# VII.

## RECOMMENDATION AND CONCLUSION

The Debtors believe that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will maximize the value of the Estates. Creditors will receive payment in full of their Allowed Claims and preferred and common shareholders in Classes 14, 15, 17, and 18 will receive equity interests in Reorganized Fountain View in exchange for their Interests.

Dated: June 30, 2003

FOUNTAIN VIEW, INC. and its 22
CHAPTER 11 AFFILIATES

By: BOYD HENDRICKSON
Title: Chief Executive Officer

SUBMITTED BY:

DANIEL J. BUSSEL, ESQ.,
MICHAEL L. TUCHIN, ESQ., and
BRENDT C. BUTLER, ESQ., Attorneys with
KLEE, TUCHIN, BOGDANOFF & STERN LLP
Reorganization Counsel for Debtors and Debtors in Possession

68

## PROOF OF SERVICE

I am over eighteen years of age, and I am not a party to this action.  I am employed by Klee, Tuchin, Bogdanoff & Stern LLP, and my business address is: Fox Plaza, 2121 Avenue of the Stars, Thirty-Third Floor, Los Angeles, CA 90067-5061.  Klee, Tuchin, Bogdanoff & Stern LLP employs a member of the bar of the State of California at whose direction this service was made.

On June 30, 2003, I served the following pleading:

**DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIATION DATED APRIL 22, 2003**

on the interested parties in this action by placing true and correct copies of the pleading with the United States Postal Service, enclosed in sealed envelopes, with postage fully paid, addressed as indicated on the attached list.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED on June 30, 2003, at Los Angeles, California.

_____

Yvonne Alamillo, Declarant

Debtors
Fountain View, Inc.
Attn: Roland Rapp
27442 Portola Parkway, Suite 200
Foothill Ranch, CA 92610

U.S. Trustee
Office of the United States Trustee
Attn: Joseph Caceres, Esq.
Ernst & Young Plaza
725 South Figueroa Street, 26th Floor
Los Angeles, CA 90017

Counsel/Creditors Committee–via FED EX
Carole Neville, Esq.
Sonnenschein Nath & Rosenthal
1221 Avenue of the Americas
New York, NY 10020-1089

Counsel to Creditors' Committee
Michael Lubic/Christopher Prince
Sonnenschein Nath & Rosenthal
601 S. Figueroa St, Suite 1500
Los Angeles, CA 90017-5704

Counsel to Bondholders–via FED EX
Akin Gump Strauss Hauer & Feld LLP
Attn M. Stamer/J. Savin
590 Madison Avenue
New York, NY 10022

Counsel to Bondholders
Akin, Gump, Strauss, Hauer & Feld, LLP
Attn: Robert M. Aronson, Esq.
2029 Century Park East #2600
Los Angeles, CA 90067

Secured Lender
Bank of Montreal
Mark F. Spencer, Managing Dir.
601 South Figueroa Street, Suite 4900
Los Angeles, CA 90017

Counsel for the Secured Lenders
Chapman and Cutler
James E. Spiotto/Ann Acker
111 West Monroe Street
Chicago, IL 60603

Counsel for Bank Midwest, N.A.
Bryan Cave LLP
Sheldon Eisenberg, Esq.
120 Broadway, Suite 300
Santa Monica, CA 90401

Atty/Bank of Montreal
Pillsbury Winthrop LLP
Attn: Kenneth Russak, Esq.
725 S. Figueroa St, #2800
Los Angeles, CA 90017-5406

Indenture Trustee/20 Largest
State St Bank & Trust Co of CA N.A.
Attn. Corporate Trust Dept
633 W. Fifth St, 12th Fl
Los Angeles, CA 90071

Counsel for Indenture Trustee
Brown, Rudnick, Freed & Gesmer
Attn. Kevin Mallery, Esq.
City Place I, 185 Asylum St
Hartford, Ct. 06103

Attys to Heritage Partners LP
Choate, Hall & Stewart
Stephen Cohen/Charles Glerum
Exchange Place
53 State Street
Boston, MA 02109-2891

Counsel for Margaret Muccianti, et al.
Stephen M. Garcia, Esq.
Wilkes & McHugh
222 W. Sixth St, #780
San Pedro, CA 90731

Internal Revenue Service
Special Procedures Function
Collection Division
Rm 4062 Federal Bldg. (Stop 5022)
300 N. Los Angeles St
Los Angeles, CA 90012

UCC Party
Union Bank of CA, N.A.
As Admin & Syndication Agent
445 S.Figueroa St, 16th Fl
Los Angeles, CA 90017

UCC Party
Union Bank of California, N.A.
18300 Von Karman Ave, #200
Irvine, CA 92612

UCC Party
Bank of Montreal, As Agent
115 South LaSalle St
Chicago, IL 60603

UCC Party
Robert & Sheila Snukal
8489 W. 3rd Street #101
Los Angeles, CA 90048

UCC Party
Robert & Sheila Snukal
Locomotion Therapy, Inc.
10284 Century Woods Dr
Los Angeles, CA 90067

UCC Party
Consolacion Padama
8489 W. 3rd Street, #1001
Los Angeles, CA 90048

UCC Party
Manuel Padama
8489 W. 3rd Street #1001
Los Angeles, CA 90048

UCC Party
HLFC Group
35 S. Raymond Ave., Ste. 206
Pasadena, CA 91105

UCC Party
Cal Fed Credit
25 E. Anapamu St., 3rd Flr.
Santa Barbara, CA 93101-2704

UCC Party
Calif Thrift & Loan
P. O. Box 1199
Santa Barbara, CA 93102-1199

UCC Party
Garnet & Co.
P.O. Box 92165
Pasadena, CA 91109-2165

UCC Party
Garnett & Co.
35 S. Raymond Ave., #206
Pasadena, CA 91105-1931

UCC Party
Western Bank
1251 Westwood Blvd.
Los Angeles, CA 90024-4811

UCC Party
Bank of the West
1450 Treat Blvd.
Walnut Creek, CA 94596

UCC Party
Shackelford Incorporated
10900 Northwest Fwy., Ste. 103
Houston, TX 77092

UCC Party
Safeco Credit Co. Inc.
dba Safeline Leasing
10915 Willows Rd. NE
Redmond, WA 98052

UCC Party
Harris Trust & Savings Bank, Coll Agent
Attn: Indenture Trust Admin
311 W. Monroe St, 12th Fl
Chicago, IL 60606

UCC Party
FUL Incorporated
100 Corporate North
Bannockburn, IL 60015

UCC Party
Board of Equalization
P.O. Box 942879
Sacramento, CA 94279-0001

UCC Party
IRS – Los Angeles
300 N. Los Angeles St., Rm 1216
Los Angeles, CA 90012

UCC Party
Hans Henry Helley, Jr., As Trustee
300 S, Grand Ave., 4th Fl
Los Angeles, CA 90071

UCC Party
AmerisourceBergen Drup Corp.
Financial Services Dept.
POB 5910
Orange, CA 93813-5910

Member of Unsecured Creditors' Committee
Twin Med, Inc.
Steve Rechnitz, President/CEO
4646 Hampton Street
Vernon, CA 90058

Member Unsec Creditors' Committee
Service Employees Int'l Union, AFL-CIO
Andrew L. Stern, Int'l. President
1313 L Street, N.W.
Washington, D.C. 20005

20 Largest
Intelistaf Healthcare
1900 Spring Rd #515
Oak Brook, IL 60523

UCC Party
Norwest Financial Leasing, Inc.
1700 Iowa Ave., Ste. 240
Riverside, CA 92507

UCC Party
Minolta Business Systems Inc.
POB 728
Park Ridge, NJ 07656

UCC Party
Standard Restaurant Equip
2922 East McDowell Road
Phoenix, AZ 85008

UCC Party
Employment Develop Dept
P.O. Box 826880
Sacramento, CA 94280-0001

UCC Party
Master Lease Corp.
One Presidential Blvd.
Bala Cynwyd, PA 19004-1017

UCC Party
Delight Gunnarsson
Locomotion Therapy, Inc.
10284 Century Woods Drive
Los Angeles, CA 90067

UCC Party
Wallace Moir Co.
130 El Camino
Beverly Hills, CA 90212-2705

Member of Unsecured Creditors' Committee
Pharmacy Support Services
Attn  Andrew F. Torok, Esq.
27071 Aliso Creek Road, Suite 100
Aliso Viejo, CA 92656

Member Unsec Creditors Committee
SEIU Local 399, AFL-CIO
Atn Jorge Rodriguez, Ex Sec
1247 W. 7th St
Los Angeles, CA 90017

20 Largest
Aseterth Medical Services
Attn Teresa Taylor
1224 E. Green St 2nd Fl
Pasadena, CA 91106

UCC Party
First Nat'l Bank of Chicago/Agent
1 First National Plaza, 8th Flr., #0091
Chicago, IL 60670

UCC Party
Fleet Leasing Corp
P.O. Box 7023
Troy, MI 48007

UCC Party
Ikon Office Solutions
2090 Woodward
Austin, TX 78744

UCC Party
Mellon First United Leasing
100 Corporate North
Bannockburn, IL 60015

UCC Party
Chemical Trust Co. of CA
Attn  Corporate Trust Depart
300 South Grand Ave., 4th Floor
Los Angeles, CA 90071

UCC Party
Gundi Gunnarsson
Locomotion Therapy, Inc.
10284 Century Woods Drive
Los Angeles, CA 90067

UCC Party
The Great West Life Assurance Co.
60 Osborne St. North
Winnipeg, Manitoba
Canada R3C 1V3

Member of Unsecured Creditors' Committee
U.S. Food Service
Attn  Mark H. Speiser
9755 Patuxent Woods Drive
Columbia, MD 21046

20 Largest
Intercare Insurance Services
Attn  Mike Silcox
3010 Lava Ridge Court #200
Roseville, CA 95661

20 Largest
Symphony Mobilex
Attn Mary Johnson
920 Ridgebrook Rd
Sparks, MD 21152

20 Largest
Jackson Walker LLP
100 Congress Ave, Ste 1100
Austin, TX 78701-9722

20 Largest
US Foodservice, Inc.
Attn Linda Fitzgerald
80 International Dr., Ste. 200
Greenville, SC 29615

20 Largest
Sysco Food Services
Attn: Jim Peightal
20701 E. Currier Road
Walnut, CA 91789

20 Largest
Starmed Staffing Group
Attn: Brandi Hubert
7737 Forsyth Blvd #1700
Clayton, MO 63105

20 Largest
Healthcare Design & Supply
6217 Rimbank Ave
Pico Rivera, CA 90660

Request for Special Notice
Attys/Jackson Walker LLP
Jackson Walker LLP
Attn: C. Wade Cooper
100 Congress Ave, #1100
Austin, TX 78701

Request for Special Notice
Attys/Floor Covering Design
Attn: Steven L. Bergh
Prenovost Normandin Bergh & Dawe
2122 N. Broadway, #200
Santa Ana, CA 92706-2614

Request for Special Notice
Attys/Brenda Low/Harlan Estate
Floyd, Isgur, Rios & Wahrlich
Marvin Isgur/Patrick Griffin
700 Louisiana, Suite 4600
Houston, TX 77002-2732

Request for Special Notice
Attys/Twin Med
Alan J. Stomel, Esq.
369 S. Doheny Dr #374
Beverly Hills, CA 90211

Atty/New Braunfels ISD/Bexar Cty
Linebarger Goggan Blair
Pena & Sampson LLP
711 Navarro #300
San Antonio, TX 78205

20 Largest
Vencare Ancillary Services
680 S 4th Ave 5th Fl
Louisville, KY 40202

Member of Unsecured Creditors' Committee
Mediq
Attn Alan Einhorn, Esq.
1 Mediq Plaza
Pennsauken, NJ 08110

20 Largest/Member of Unsecured Creditors'
Committee
Ancillary Provider Service
Attn: Cora
5416 Jillson Street
Commerce, CA 90040

20 Largest
Diagnostic Laboratories
Attn: Don Goldberg
1111 S. Central Ave
Glendale, CA 91204

Global Crossing
PO Box 741276
Cincinnati, OH 45274-1276

Request For Special Notice
Amelia Tovar
Wise Senior Serv Ombudsman
255 S. Hill St, Rm 406
Los Angeles, CA 90012

Request for Special Notice
Atty/Ancillary Provider Services
Law Office of Baruch C. Cohen
4929 Wilshire Blvd, #940
Los Angeles, CA 90010

Request for Special Notice
Radcliff Frandsen Dongell & Lawrence
Jules G. Radcliff, Jr.
707 Wilshire Blvd, 45th Fl
Los Angeles, CA 90017

Req Spec Not/Atty-Arkansas /Round Rock ISD/
McMallenCity/Lavaca Cty/Live Oak/New
Braunfels
Lori Robertson/David G. Aelvoet,
Linebarger Goggan Blair Pena & Sampson
1949 South IH 35
Austin, TX 78741

Request for Special Notice
Mark Schreiber, Esq.
16501 Ventura Blvd, #401
Encino, CA 91436-2068

20 Largest
Foley & Lardner
Jonathon E. Cohn, Esq.
2029 Century Pk East, 35th Fl
Los Angeles, Ca 90067-3000

20 Largest/Member of Unsecured Creditors'
Committee
Culver Dairy, Inc., dba Dairy King
Attn Allan Dalfen, President/CEO
815 Thompson Avenue
Glendale, CA 91201

20 Largest
Floor Covering Design Specialists
13006 E Philadelphia, # 509
Whittier, CA 90601

20 Largest
Nestle USA
Attn William T. Ferioli, Esq.
800 N. Brand Blvd
Glendale, CA 91203

Request for Special Notice
Atty to State St Bank & Trust
Buchalter, Nemer, Fields & Younger
Attn: R. Soref/ B. Seigel
601 S. Figueroa St, #2400
Los Angeles, CA 90017-5704

Request for Special Notice/Member of
Unsecured Creditors' Committee
Waltz Medical Specialties, Inc.
Attn: Phyllis Waltz
4520 E. Eisenhower Circle
Anaheim, CA 92807

Request for Special Notice
Attys/AmerisourceBergen Drip Corp.
Henrichs Law Firm
Attn: Alan W. Forsley, Esq.
835 Wilshire Blvd #300
Los Angeles, CA 90017

Request for Special Notice
Attys/Tranquilino & Raynaldo Mendoza
and Brenda Low/Harlan Estate
David Marks/The Marks Firm
10000 Memorial Dr, #760
Houston, TX 77024

Atty to Jefferson County
Linebarger Goggan Blair Pena & Sampson
Attn Clayton Mayfield, Esq.
1148 Park Street
Beaumont, TX 77701-3614

Request for Special Notice
Atty/State St Bank
Steven B. Levin, Esq.
Brown Rudnick Freed & Gesmer
One Financial Center
Boston, MA 02111

Request for Special Notice
State St Bank Trust Co/Global Inv Serv
Corp Trust
Robert C. Butzier
2 Ave de Lafayette, 6th Fl
Boston, MA  02102-0778

Request for Special Notice
Jonathan Mitchell, President
2828 Roanoke Lane
Tyler, TX  75701

Request for Special Notice
Holly E. Kendig, Esq.
O'Melveny & Myers LLP
400 South Hope St
Los Angeles, CA  90071-2899

Req Spec Not/Atty  County of Comal
Michael Reed, Esq.
McCreary Veselka Bragg & Allen PC
Post Office Box 26990
Austin, TX 78755

Req for Spec Not/IOS Capital,Inc.
Rosa Dominy, Bankruptcy Admin
IOS Capital, Inc.
1738 Bass Road
Post Office Box 13708
Macon, GA  31208-3708

Req for Spec Not
Atty/Meridian/Lloyd's/Great Lakes
Musick Peeler & Garrett LLP
Attn:  Richard S. Conn
624 S. Grand Ave #2000
Los Angeles, CA 90017

Req for Spec Notice
Co- Def Atty to Nandlal Patel MD
Wright & Kidwell PC
Attn: Matt Catalano
505 N. Big Spring #300
Midland, TX 79701

Req Spec Not/Atty for McIlroy Estate
Gray.Hart LLP
Attn: Jay K. Gray
2419 Highway 121
Bedford, TX 76021

Req Spec Not/Atty HPH Associates
Hardy & Atherton, P.C.
Attn Jerry L. Atherton
909 ESE Loop 323, Suite 750
Tyler, TX 75701

Req Spec Not
AT&T Corp
Attn: Judith Archer, Esq.
295 N. Maple Ave, Rm 1128M1
Basking Ridge, NJ 07920

Request for Special Notice
Attys/Robert & Sheila Snukal
Milbank Tweed Hadley & McCloy LLP
Attn  G.Bray/F. Neufeld
601 S. Figueroa St, 30th Fl
Los Angeles, CA 90017

Req Spec Not/US Dept of Health &
Human Svcs. Ctrs  Medicare/Medicaid Svcs.
Assistant U.S. Attorney
J.Gordon/L.Weidman/C.Bauer
300 N. Los Angeles St #7516
Los Angeles, CA  90012-9834

Request for Special Notice
Atty/Fayette County Appraisal Dist
John T. Banks, Esq.
Perdue, Brandon, Fielder, Collins & Mott
6300 La Calma, Suite 450
Austin, TX  78752

Req Spec Not Atty/Eleanor Fleming
Houck & Balisok
Attn:  Russell S. Balisok, Esq.
PO  Drawer 8170
Universal City, CA 91618-8170

Req for Spec Not/Atty for
Superior Nat'l Ins Co In Liquidation
Carole Runcie Sherman, Esq.
26541 Agoura Road
Calabasas, CA  91302

Req for Spec Notice
Dennis Simon
Crossroads LLC
9 Executive Circle, Suite 190
Irvine, CA  92614

Req for Spec Not/John Przybyla
Provost Umphrey Law Firm
Attn: J. Fisher/M.Sparks
490 Park Street
Beaumont, TX 77704

Req Spec Not/Atty for Covenant Care
Pharmacy Support Services
c/o Andrew Torok, Gen Counsel
27071 Aliso Creek Rd #100
Aliso Viejo, CA  92656

Req Spec Not/Atty Osburn Estate
Noteboom & Parker
Attn: Dina K. Madison
669 Airport Freeway, #100
Hurst, TX  76053

Req Spec Not
Sun Healthcare Group, Inc.
Alicy Nystel Page, Esq.
101 Sun Ave NE
Albuquerque, NM  87109

Request for Special Notice
Attys/Sysco Foodservice/Citicorp Vendo
Financer
Hemar Rousso & Heald LLP
Attn: Kenneth G. Lau
15910 Ventura Blvd, 12th Fl
Encino, CA  91436-2829

Req Spec Not/US Dept of Health &
Human Svcs. Ctrs  Medicare/Medicaid
Suzanne K. Yurk
Ass't Regional Counsel
Health Care Financing Admin
50 United Nations Plaza #420
San Francisco, CA 94102

Request for Special Notice
Todd Andrews
3924 Park Place No. 20
Montrose, CA  91020

Req Spec Not
Bill Angelowitz
Daily Insights
225 West 34th St #403
New York, NY  10122

Req for Special Notice
L.Degroat/C.Geller/Heirs DeGroat Estate
The Williams Firm
Attn: Stephen N. Williams
2467 Calder Ave
Beaumont, TX  77702

Req for Spec Notice
Atty/Asereth Medical Services Inc.
Paul B. Nesbitt, Esq.
Nesbitt & Associates
9601 Wilshire Blvd, #828
Los Angeles, CA 90210

Req Spec Not/Atty for Mildred Gaines
Bain, Files, Jarrett & Bain
109 West Ferguson
PO Box 2013
Tyler, TX  75710

Req Spec Not/Atty M. Muccianti
Rein Evans & Sestanovich LLP
Attn: Byron Z. Moldo/Patrick Fraioli
1925 Century Park East, 16th Fl
Los Angeles, CA 90067

Req Spec Not/Atty to Comal and
Taylor Counties/Abilene
Attn Michael Reed, Esq.
McCreary Veselka Bragg & Allen
PO Box 26990
Austin, TX  78755-0990

Spec Not Req/Atty for O'Quinn
Charles Soechting
O'Quinn, Laminack & Pirtle
400 West Hopkins, Suite 101
San Marcos, TX  78666

Spec Not Req/Atty for Quinn
Gerald Treece
South Texas College of Law
1303 San Jacinto
Houston, TX 77002

Spec Not Req/Atty to Shepard Estate
Perkins Coie LLP
Attn: Steven G.F. Polard
1620 26th St, 6th Fl
Santa Monica, CA 90404

Spec Not Req/Atty to So Desert Clinic Pharm e
tal
Irell & Manella
Jeffrey Reisner/Ravi Flanagan
840 Newport Center Dr, #400
Newport Beach, CA 92660-6324

Spec Not Req/O'Burton Estate
Law Office Jeffrey H. Rasansky
Attn Davette J. Speer, Paralegal
3811 Turtle Creek Blvd #1640
Dallas, TX 75219

Spec Not Req/Atty Lloyds, et al
Kristi Weiler Dean, Esq.
Law Office Kristi Weiler Dean
6345 Balboa Blvd
Office Park II Suite 230
Encino, CA 91316-1525

Spec Not Req/Atty to Riverside Cty
Paul McDonnell – Treasurer/Tax Collector
Attn Maria O'Neil
County of Riverside
P.O. Box 12005
Riverside, CA 92502-2205

Spec Not Req/Regan Capital I, Inc.
Regal Capital I, Inc.
Attn Elliot H. Herskowitz
PO Box 626 Planetarium Station
New York, NY 10024-0540

Spec Not Req/Atty to May
Sorrell Anderson Lehrman Maixner Ridulfo
711 N. Carancahua, #1200
Corpus Christi, TX 78475

Spec Not Request
Tyler & Wilson
Attn Francesca Brotman-Orner
6500 Wilshire Blvd #125
Los Angeles, CA 90048

Attorney for Medicom, Inc.
Vincent M. Lentini, Esq.
600 Old County Road, Suite 202
Garden City, NY 11530

Spec Not Req/Atty for the Bradys
Nunley Davis Jolley & Hill LLP
Attn: William A. Brant, Esq.
1580 S. Main St, Suite 200
Boerne, TX 78006

Spec Not Req/Atty Gates McDonald Gibbons
#120515 Gates McDonald fka Gibbons Co
Seals & Tenenbaum, APC
Attn: Jay M. Tenenbaum, Esq.
2323 W. Lincoln Ave, #127
Anaheim, CA 92801

Spec Not Req
Southern Desert Clinic Pharmacy
27071 Aliso Creek Road
Aliso Viejo, CA 92656

Spec Not Req/Atty to Andrews-Beseda
Law Offices of Dean W. Greer
2929 Mossrock, Suite 105
San Antonio, TX 78230

Spec Not Req/Atty TX Human Resources
Flora A. Fearon, Asst Atty Gen of TX
Bankruptcy & Collections Div
P.O. Box 12548
Austin, TX 78711-2548

Spec Not Req/Atty to Amer Express
SVCS Co Inc Corp Card
c/o Becket & Lee LLP
PO Box 3001 Dept. AC
Malvern, PA 19355-0701

Spec Not Req/TX Comptroller
John Mark Stern
Ass't Atty General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Spec Not Request
Leonard & Catherine May
7433 FM 70
Bishop, TX 78343

Atty to AIES Ins Co
Brad Reager, Claims Analyst
A.I.G.T.S
Healthcare Claims Department
2 Rincon Center
121 Spear Street, 6th Floor
San Francisco, CA 94105

Attorneys for Ken Kerr
Robert Brumfield, Esq.
Price & Brumfield
841 Mohawk Street, Suite 200
Bakersfield, CA 93309

Spec Not Req/Atty for Anna Louis Daniels
Clarkson, Gore & Marsella
Attn:  Scott C. Clarkson, Esq.
3424 Carson Street, Suite 350
Torrance, CA 90503

Spec Not Req/Atty for Summit Care TX
Leonard A. Goldman, Esq.
Law Office of Leonard A. Goldman
1900 Ave of the Stars, #1800
Los Angeles, CA 90067

Spec Not Req/Atty to GE Cap
Glass & Goldberg
Attn Marshall F. Goldberg
21700 Oxnard St, #430
Woodland Hills, CA 91367-3665

Spec Not Req/Atty Lloyds, London et al
J. Sheldon Capeloto
McKinley & Capeloto
225 South Lake Avenue, Suite 300
Pasadena, California 91101

Spec Not Req/Atty to Susan Fleishman
Law Office of Marc Lieberman
Attn Marc Lieberman/Karie Kaiser
1875 Century Park East, #2200
Los Angeles, CA 90067-2523

Spec Not Req/Atty to G. Scurlock
Attn J. Wayne Little
Riley Dornburg Little & Wham
220 W. Davis
Conroe, TX 77301

Spec Not Req/Atty to E. Zolla
Good Wildman Hegness & Walley
Attn John A. Stillman, Esq.
5000 Campus Drive
Newport Beach, CA 92660

Spec Not RequestAtty to Baylor Health
Haynes & Boone LLP
900 Main St, Suite 3100
Dallas, TX 75202

Spec Not Request
Atty to Calwest Industrial Properties
Glen Dresser, Esq.
12650 Riverside Dr #100
North Hollywood, CA 91607

Kaye Scholer LLP
Ronald L. Leibow
1999 Avenue of the Stars, Ste. 1600
Los Angeles, CA 90067

Madison Liquidity Investors
4210 Shawnee Mission Parkway, Suite
310A
Fairway, KS 66205
Attn: Antonia Roberson

Scott Krochek
Argo Partners
12 W 37th Street, 9th Floor
New York, NY 10018

Spec Not Request
Attys. For Cedar-Sinai Med. Ctr.
Lance N. Jurich, Esq.
Loeb & Loeb LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA  90067-4164

Spec Not Request
Neil H. Herskowitz
ReGen Capital I, Inc.
PO Box 626, Planetarium Station
New York, NY 10024-0540