

FILED
JUL 10 2003
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

ENTERED
JUL 10 2003
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

DANIEL J. BUSSEL (State Bar No. 121939),
MICHAEL L. TUCHIN (State Bar No. 150375), and
BRENDT C. BUTLER (State Bar No. 211273), Attorneys with
KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 Avenue of the Stars, 33rd Floor
Los Angeles, California 90067-5061
Telephone:  (310) 407-4000
Facsimile:   (310) 407-9090

Reorganization Counsel for
Debtors and Debtors in Possession

<u>Debtors' Mailing Address</u>
27442 Portola Parkway, Suite 200
Foothill Ranch, CA 92610

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>**FOUNTAIN VIEW, INC.**, a Delaware corporation, et al.<br><br>Debtors. | Case No.:  LA 01-39678 BB through<br>LA 01-39697 BB<br><br>And       LA 01-45516 BB;<br>LA 01-45520 BB; and<br>LA 01-45525 BB<br><br>(Jointly Administered under Case No. LA 01-39678 BB)<br><br>Chapter 11<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION DATED APRIL 22, 2003 AND AUTHORIZING SUBSTANTIVE CONSOLIDATION**<br><br><u>Hearing Held:</u><br><br>Date:    July 10, 2003<br>Time:    11:00 a.m.<br>Place:   Courtroom 1475<br>         Roybal Federal Building<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

60379_4.DOC

**IN THIS DISTRICT, AT LOS ANGELES, CALIFORNIA:**

On July 10, 2003, this Court held a hearing regarding confirmation of the *Debtors' Third Amended Joint Plan of Reorganization Dated April 22, 2003* (the "Plan"),[1] which was jointly filed by Fountain View, Inc. and its 22 chapter 11 affiliates, the debtors and debtors in possession in the above-captioned, jointly administered chapter 11 cases (collectively, the "Debtors"). The record of the hearing reflects all appearances that were made by counsel or parties in interest.

The Court has reviewed and considered:

- The Plan;
- The Modification of the Plan (the "Modification") filed concurrently with the lodging of this Order;
- The Disclosure Statement accompanying the Plan and the Declaration of Boyd Hendrickson filed in support of approval of the Disclosure Statement;
- The submissions of proof of service of solicitation materials and various other declarations of service that relate to the Debtors' service of the Plan, the Disclosure Statement, and other Court-approved solicitation materials and that the Debtors filed with the Court between April 30, 2003 and July 10, 2003;
- The *Memorandum In Support Of Confirmation Of Debtors' Amended Joint Plan Of Reorganization Dated April 22, 2003* and the accompanying Declarations by John F. Gibson, William C. Scott and Keith Williams;
- The supplemental Declaration of Keith Williams;
- The Plan Ballot Summary and the *Declaration Of Shanda D. Ellingwood Regarding Analysis And Tabulation of Ballots And In Support Of Confirmation Of Debtors' Joint Plan Of Reorganization*

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

1

1       *Dated April 22, 2003*;

2 •     The Plan Supplement;

3 •     The *Motion For Order Authorizing Substantive Consolidation of Debtors and Memorandum in Support Thereof* (the "Substantive Consolidation Motion");

6 •     The revised Schedules of Assumed and Assigned Agreements;

7 •     The revised Schedule of Pending Prepetition Litigation;

8 •     The written consents executed by the holders of Interests in Class 17 and Class 18 accepting the modifications to the Plan as set forth in the *Debtors' Second Amended Joint Plan Of Reorganization Dated April 22, 2003*;

12 •     The objection to Plan confirmation filed by County of Comal, County of Guadalupe, City of Seguin, Seguin Independent School District, County of Taylor, City of Abilene, and Abilene Independent School District;

15 •     The limited objection to Plan confirmation filed by the Official Creditors' Committee;

17 •     All other pleadings and evidence that were submitted before or at the Confirmation Hearing;

19 •     The record in these cases; and

20 •     The arguments and representations of counsel at the Confirmation Hearing.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based on its review and consideration of the materials listed above, the Court makes the findings of fact and conclusions of law enumerated below. This Order constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rules 7052 and 9014. Any finding of fact constitutes a finding of fact even if it is stated as a conclusion of law; and any conclusion of law constitutes a conclusion of law even if it is stated as a finding of fact.

A.  This matter is a core proceeding over which the Court has jurisdiction under 28 U.S.C. §§ 157(b) and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.  The Debtors provided notice of the Confirmation Hearing, as continued, and of the time fixed for filing objections to Plan confirmation to all entities entitled to receive that notice, including all of the Debtors' known creditors and interest holders and the non-debtor parties to executory contracts, assumed, assigned or rejected pursuant to the Plan. The notice of the originally scheduled hearing (the "Original Notice") fully and adequately described the requested relief; was reasonable and appropriate; and complied in all regards with due process. Supplemental notice concerning continuation of the Confirmation Hearing was made in accordance with applicable law and orders of the Court. The notice of the Confirmation Hearing complied with the applicable provisions of:

1.  The Bankruptcy Code;

2.  The Bankruptcy Rules, including Bankruptcy Rules 2002, 3017, 3018, and 3019;

3.  The Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California; and

4.  All relevant Orders of the Court, including this Court's *Order Authorizing And Approving: (A) Adequacy Of Debtors' Disclosure Statement; (B) Form, Scope, And Nature Of Solicitation, Balloting, Tabulation, And Notices With Respect Thereto; And (C) Related Confirmation Procedures, Deadlines, And Notices* (the "Solicitation Procedures Order");

C.  The Debtors conducted their solicitation of acceptances or rejections of the Plan and its related distribution and tabulation of ballots with respect to that solicitation in good faith. In addition, the solicitation, distribution and tabulation complied with the Solicitation Procedures Order; all applicable provisions of the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018); all applicable provisions of the Bankruptcy Code (including sections 1125 and 1126); and all other applicable laws, rules and regulations. Among other things, the Debtors transmitted the Plan and Disclosure Statement to all known

parties who hold Claims and Interests that are impaired under the Plan and who are therefore entitled to vote on the Plan and all parties who have requested special notice in these Reorganization Cases.

        D.    The Plan satisfies all of the requirements of Bankruptcy Code sections 1129(a) and (b), including sections 1122 and 1123.

        1.    <u>11 U.S.C. § 1122</u>: Administrative Claims and Priority Claims are classified and are treated separately under the Plan in compliance with the applicable provisions of the Bankruptcy Code. The Plan classifies all other Claims and Interests in 19 Classes. Classes 1-8 are all secured classes properly classified separately because the holders in each class hold liens against distinct pools of collateral (or to the extent there are multiple liens against the same collateral, liens of distinct priority). The Plan also properly classifies Unsecured Claims into five separate classes of distinct character. Equity Interests are also properly divided into six separate classes each class consisting entirely of one of the six types of prepetition issued and outstanding equity Interests of Fountain View, Inc. Each of the Claims or Interests in each particular Class under the Plan is substantially similar to the other Claims or Interests in such Class; thus, satisfying the requirement under Bankruptcy Code section 1122(a) that each claim or interest in a class be substantially similar to other claims or interests in that class.

        2.    <u>11 U.S.C. § 1123(a)(1)</u>: The Plan complies with section 1123(a) by expressly classifying all Claims and Interests, other than Administrative Claims and Priority Tax Claims.

        3.    <u>11 U.S.C. § 1123(a)(2)</u>: The Plan complies with section 1123(a)(2) by specifying that Classes 3, 4, 5, 7, 8 and 11 are not impaired.

        4.    <u>11 U.S.C. § 1123(a)(3)</u>: The Plan complies with section 1123(a)(2) by specifying that Classes 1, 2, 6, 9, 10, 12, 13, 14, 15, 16, 17, 18

and 19 are impaired, and by specifying the treatment of the Claims and Interests in each of those Classes.

5. <u>11 U.S.C. § 1123(a)(4)</u>: The Plan complies with section 1123(a)(4) by providing the same treatment to each Claim or Interest that is classified in each particular class established under the Plan except to the extent that the claimants have agreed to a less favorable treatment. While the Plan offers choices to entities holding Claims classified in Class 10 (<u>e.g.</u>, the Convenience Class Election, and the election between payment option 10A and 10B), these choices are offered without discrimination. This treatment satisfies the requirements of Bankruptcy Code section 1123(a)(4).

6. <u>11 U.S.C. § 1123(a)(5)</u>: The Plan complies with Bankruptcy Code section 1123(a)(5) by setting forth specific means for the implementation of the Plan, including among other things:

- Assuming, assigning, or rejecting executory contracts and leases;
- Establishing procedures for making the distributions under the Plan;
- Preserving rights of action and establishing procedures for handling any unresolved objections to Claims;
- Creating adequate funding for distributions and obligations under the Plan;
- Authorizing the sale of the property securing the Class 4 Claim pursuant to Bankruptcy Code sections 363, 1123 and 1129;
- Authorizing the implementation of a captive insurer program in order to mitigate prospective professional liability expense;
- Issuing the New Public Notes, New Preferred Stock, New Class A Common Stock and New Warrants;
- Substantive consolidation of the Debtors;
- Obtaining the Exit Facility;

- Assigning the Debtors' leaseholds for security in accordance with the terms of the Plan and the Exit Facility Closing Documents;
- Amending the Stockholders' Agreement and the Articles of Incorporation;
- Implementing the Corporate Restructuring Plan whereby all of the Debtors' Business Assets will be held by the Reorganized Enterprise and all of the Debtors—other than Fountain View, Inc., Summit Care Pharmacy, Inc. and the Other Reorganized Debtors—will dissolve or be merged out of existence;
- Dissolving the Creditors' Committee and the Noteholders' Committee;
- Designating Officers and Directors for the Reorganized Enterprise; and
- Canceling Interests in Class 16 and Class 19.

7. <u>11 U.S.C. § 1123(a)(6)</u>: The provisions of the Plan, Articles of Incorporation and the Amended Stockholders' Agreement relating to voting and corporate governance comply fully with section 1123(a)(6).

8. <u>11 U.S.C. § 1123(a)(7)</u>: The Debtors have complied with section 1123(a)(7) by identifying in the Disclosure Statement the persons expected to serve as the initial members of the Board of Directors of Reorganized Fountain View and as the principal officers, and by indicating that the membership of the Board of Directors shall be subject to election at an annual meeting of Reorganized Fountain View subject to the procedures set forth in the Amended Stockholders' Agreement and that officers shall serve at the direction of the Board.

9. <u>11 U.S.C. § 1129(a)(2)</u>: The Debtors, as the proponents of the Plan, have complied with all of the Bankruptcy Code's applicable provisions.

10. <u>11 U.S.C. § 1129(a)(3)</u>: The Debtors have proposed the Plan in good faith and not by any means forbidden by law.

11. <u>11 U.S.C. § 1129(a)(4)</u>: The Plan provides that the Reorganized Enterprise will not pay Non-Ordinary Course Administrative Claims or Professional Fee Claims unless and until the Court allows such claims.

12. <u>11 U.S.C. § 1129(a)(5)</u>: The Disclosure Statement adequately describes the persons expected to serve as the initial members of the Board of Directors for Reorganized Fountain View, and the expected retention of Boyd Hendrickson as Chief Executive Officer and the other principal officers of the Reorganized Enterprise. The continuance in office of such officers and directors is in the best interests of creditors and shareholders and consistent with public policy.

13. <u>11 U.S.C. § 1129(a)(6)</u>: The requirements of Bankruptcy Code section 1129(a)(6) are not applicable to the Plan.

14. <u>11 U.S.C. § 1129(a)(7)</u>: Each party who holds a Claim or Interest in a Class that is impaired under the Plan either (a) has accepted the Plan or (b) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than that party would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Classes 3, 4, 5, 7, 8 and 11 are all unimpaired, rendering the requirements of section 1129(a)(7) inapplicable to those Classes. All holders in impaired Classes 1, 2, and 6 have accepted the Plan, satisfying section 1129(a)(7)(A)(i). As to Classes 9, 10, 12, and 13, all of which are provided for in full under the Plan, the preponderance of the evidence before the Court establishes that all holders of unsecured claims in Classes 9, 10, and 12 would receive between zero and 34 cents on the dollar in the event that the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code (except to the extent of available insurance for Class 12, which insurance will remain available to those creditors under the

Plan). The preponderance of the evidence before the Court establishes that all holders of unsecured claims in Class 13 and the holders of all Allowed Interests would neither receive nor retain any property in a Chapter 7 liquidation. In contrast, under the Plan entities holding Allowed Claims will receive payment in full with postpetition interest, and entities holding Interests in Classes 14, 15, 17 and 18 will retain their Interests or obtain other securities with a value equal to the reorganization value of such holders' respective Interests. Accordingly, the treatment under the Plan of the nonaccepting members of all impaired classes is in no case less than that which the holders of such Claims and Interests would otherwise be entitled to in chapter 7, and the requirements of section 1129(a)(7) are therefore satisfied.

15. 11 U.S.C. § 1129(a)(8): Classes 3, 4, 5, 7, 8 and 11 are all unimpaired and therefore are deemed to accept the Plan. As set forth in the Ballot Tabulation and summarized in Section I of the Memorandum, Classes 1, 2, 6, 9, 10, 14, 15 and 18 are impaired under the Plan and have voted in requisite amounts and numbers to accept the Plan. Classes 16 and 19 are deemed to reject the Plan pursuant to Bankruptcy Code section 1126(g). The Plan nevertheless may be confirmed on the basis that the Plan is fair and equitable and not unfairly discriminatory with respect to such Classes. With respect to Class 12, Class 13, and Class 17, no eligible Ballots having been cast in such Classes and no timely objection to the Plan having been made by any holder in such Class. Class 12, Class 13 and Class 17 are, therefore, deemed to not accept the Plan. The Plan nevertheless may be confirmed on the basis that the Plan is fair and equitable and not unfairly discriminatory with respect to such Classes.

16. 11 U.S.C. § 1129(a)(9): The Plan complies with the requirements of Bankruptcy Code section 1129(a)(9) with regard to the treatment of Administrative Claims, Priority Claims and Priority Tax Claims.

17. <u>11 U.S.C. § 1129(a)(10)</u>: Classes 1, 2, 6, 9, 10, and 12 are all impaired classes of Claims that have accepted the Plan by the requisite majorities without regard to any Ballots cast by insiders as defined in section 101 of the Bankruptcy Code.

18. <u>11 U.S.C. § 1129(a)(11)</u>: The preponderance of the evidence before the Court establishes that the assumptions and financial projections made in connection with the Debtors' five-year business plan are reasonable and that, following the Effective Date, the Reorganized Enterprise should be able to meet its obligations and make the payments required under the Plan. The Plan is feasible and Plan confirmation is not likely to be followed by either the liquidation or the further financial reorganization of the Reorganized Enterprise.

19. <u>11 U.S.C. § 1129(a)(12)</u>: The Plan provides for payment in full of Allowed Administrative Claims including U.S. Trustee fees arising under 28 U.S.C. § 1930. Thus, the Plan satisfies the requirements of section 1129(a)(12).

20. <u>11 U.S.C. §1129(a)(13)</u>: The requirements of Bankruptcy Code section 1129(a)(13) are not applicable to the Plan.

21. <u>11 U.S.C. § 1129(b)</u>: The Plan may be confirmed with regard to Classes 12, 13, 16, 17 and 19 under the "cramdown" provisions of section 1129(b). Class 16 is junior to Class 15 due to the liquidation preference in the Stockholders' Agreement and is valueless at present. Class 16 Interests are therefore junior for the purpose of a "cramdown" analysis to the Class 15 Interests and the Class 17 Interests, as the Class 17 Interests are *pari passu* with the Class 15 Interests. As the Existing Warrants included in Class 18 give the holders the ability to obtain Existing Class A Common Stock for a nominal price, they have rights that are senior to the Class 16 Interests as well. The Class 19 interests are being eliminated. Thus, no class junior to the Class 16

Interests will be receiving anything under the Plan. As the Plan does not discriminate unfairly with regard to these interests, the Plan may be confirmed over the deemed objection of Class 16. With respect to Class 19, this Class consists of a Class of Interests that is the junior-most Class under the Plan. As the Plan does not discriminate unfairly with regard to this Class, the Plan may be confirmed over the deemed objection of Class 19. With respect to Classes 12 and 13, these Classes consist of Unsecured Claims. The separate classification and treatment of these Claims is appropriate and supported by legitimate business justifications. Thus, the Plan does not discriminate unfairly with regard to these Classes. Further, as the Claims within these Classes are to be paid in full according to the terms of the Plan, the Plan may be confirmed with the consent of these Classes under section 1129(b)(2)(B)(i). Finally, with respect to Class 17, the Plan does not discriminate unfairly with regard to this Class in that the holders of Class 17 Interests are to be issued New Class A Common Stock, as are the holders of Class 15 Interests, whose rights are comparable. As the holders of Class 17 Interests are receiving the value of their Interests and no member of a junior class is receiving anything under the Plan, the Plan may be confirmed without the consent of this Class under section 1129(b)(2)(C)(i).

E. All releases, settlements and compromises (including the TDHS Settlement, the Stipulation Regarding Medicare Provider Agreements and the CMS Stipulation) provided for in the Plan were negotiated at arm's length and in good faith and are fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and all creditors and shareholders.

F. The modifications to the Plan in the amended, second amended and third amended Plans and the Modification were reasonable and appropriate and did not adversely change the treatment under the Plan of the Claim of any creditor or the Interest of any shareholder that did not accept in writing these modifications. Accordingly, the

modifications complied in all respects with section 1127(a) as well as all other applicable provisions of the Bankruptcy Code, and under Bankruptcy Rule 3019, the modifications are deemed accepted by all creditors and shareholders who previously voted to accept the Plan. Notice of the amendments to the Plan was appropriate and adequate under the circumstances.

G. Under Section III.A of the Plan, except for any agreements that were previously assumed or rejected by Final Order under Bankruptcy Code section 365, the Debtors have elected to assume (through the Reorganized Enterprise) each of the contracts and leases identified on the Schedule of Assumed Agreements that was filed in accordance with the Plan (as revised, the "Assumed Agreements"). No objections have been filed either to the Debtors' determination to assume any of these Assumed Agreements or to the proposed cure amounts (the "Cure Payments") that are set forth on the Schedule of Assumed Agreements, as revised. The Debtors have, within the meaning of Bankruptcy Code section 365(b)(1)(C), established adequate assurance of future performance of the Assumed Agreements. Furthermore, the identified Cure Payments, if any, for each of the Assumed Agreements are the only amounts necessary to cure any existing defaults under the Assumed Agreements in accordance with Bankruptcy Code sections 365(b)(1)(A) and (B). Notwithstanding the preceding sentence, any accrued but unbilled charges due under one or more of the Assumed Agreements after confirmation of the Plan for certain charges, including, but not limited to, common area maintenance, insurance and tax reconciliations or year-end adjustments shall be billed and paid by the Reorganized Enterprise in compliance with the terms of that particular agreement.

H. The Debtors gave due and proper notice of the assumption or assignment and proposed Cure Payment of each Assumed Agreement to each landlord or other non-debtor party under each Assumed Agreement.

I. Pursuant to the Plan, the Debtors have elected to reject each of their remaining executory contracts and unexpired leases (collectively, the "Rejected Agreements") that are not assumed under Section III.A of the Plan, including those agreements identified on the Schedule of Rejected Agreements that was filed in accordance

with the Plan, as revised. Nothing in this Order is a waiver of any defenses, claims, or counterclaims that the Debtors may have against any party to Rejected Agreements.

J. The Disclosure Statement expressly provided that no party should vote to accept or reject the Plan in the expectation that the Debtors may refrain from: (a) pursuing any cause of action or asserting any defenses or counterclaims, whether or not that action was commenced before the Petition Date and regardless of the nature of the matter, or (b) objecting to any proof of Claim or Interest filed by a party against one or more of the Debtors. Notwithstanding anything else to the contrary herein, with respect to Class 10 Claims and Class 11 Claims, under the terms of the Plan the Debtors and the Reorganized Enterprise may only object to a Claim if it is (a) listed on Exhibit 8 (Schedule of Disputed Claims) to the Disclosure Statement (as such exhibit was amended through the date the Debtors served the Disclosure Statement upon creditors and interest holder), (b) not timely Filed, or (c) duplicative of another Claim that is not objected to. Accordingly, except as provided in the Plan with respect to matters expressly released under the Plan, no party reasonably voted to accept or reject the Plan in the expectation that the Debtors may refrain from: (a) pursuing any cause of action or asserting any defenses or counterclaims, whether or not that action was commenced before the Petition Date and regardless of the nature of the matter, or (b) objecting to any proof of Claim or Interest filed by a party against one or more of the Debtors.

K. The ADR Procedures established previously by this Court have proven to be efficient and effective in leading to the resolution of professional liability claims. Given that the responsibility for final allowance or disallowance of all pre-confirmation debts properly lies within the jurisdiction of the Bankruptcy Court (subject to preservation of jury trial rights to the extent required by applicable law), and the fact that the Plan does not limit or channel resolved claims to a particular fund, but rather treats them as Class 10, Class 12 or Class 13 Claims all of which are provided for in full, the continuation of these proven procedures post-confirmation is well within the authority of the Bankruptcy Court and should be continued post-confirmation as an appropriate provision of the Plan under Bankruptcy

1  Code section 1123(b) and in furtherance of the discharge provisions of Bankruptcy Code
2  section 1141(d).

3     L.     The substantive consolidation of the Debtors and the Estates is
4  appropriate in connection with the Plan, will benefit all creditors and will facilitate the
5  orderly, efficient and economical administration of the Estates pursuant to the Plan. As a
6  result of the Plan, the time and expense necessary to attempt to unscramble the affairs of the
7  Debtors and the Estates and determine with precision the proper allocation of each of their
8  assets and liabilities would impose an unnecessary and substantial administrative expense on
9  the Estates. Entry of this Order shall constitute the approval, pursuant to Bankruptcy Code
10 section 105(a) and 1123(a)(5)(C), effective as of the Effective Date, of the substantive
11 consolidation of the Debtors and the Estates for all purposes as set forth in the Plan and the
12 Substantive Consolidation Motion. Notwithstanding the foregoing, if the Effective Date does
13 not occur, the Debtors shall not be substantively consolidated and this Order shall have no
14 precedent or effect with respect to any future request by a party seeking to substantively
15 consolidate the Debtors.

16     M.     It was not improper for the Debtors to require holders of Claims and
17 Interests to vote in substantively consolidated Classes based on the specific facts of the
18 Reorganization Cases. Voting in this manner does not appear to have been used for the
19 purpose of gerrymandering votes and did not have the effect of permitting the Debtors to
20 confirm an otherwise unconfirmable Plan. Even if votes had been tabulated on an Estate-by-
21 Estate basis, holders of Claims and Interests would have voted in favor of confirmation of the
22 Plan by the majorities required by section 1126.

23     N.     The Exit Facility is an essential element of the Plan and entry into the
24 Exit Facility is in the best interests of the Debtors, the Estates, the Reorganized Enterprise
25 and their creditors. The Debtors have exercised reasonable business judgment in determining
26 to enter into the Exit Facility Closing Documents, including, without limitation, those set
27 forth in the Plan Supplement, or in a form substantially similar thereto. The Debtors have
28 provided sufficient and adequate notice of the Exit Facility, including any material

modifications to the Exit Facility or to the Exit Facility Commitment Letters, to all parties-in-interest. All documents necessary to implement the Plan including, without limitation, the Exit Facility Closing Documents, shall, upon execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law. The Exit Facility is supported by reasonably equivalent value and is not given on account of any antecedent debt.

O. In accordance with Bankruptcy Code sections 365(f) and 1123(b)(2), the provisions in the Plan properly authorize assignment of the Debtors' leasehold interests as security for the Exit Facility, the New Public Notes, the Class 10 Deferred Obligation, the Continuing Creditor Deferred Obligation and the Vendors' Lien, in the order of priority set forth in the Plan, pursuant to the leasehold deeds of trust and related documents included in the Plan Supplement, notwithstanding any restrictions on transfer or assignment under the leases or otherwise applicable law, and the Debtors, in their capacity as holders of leasehold interests, are properly granted a power of attorney for the landlords of the Debtors' leases with full power to act in the place and stead of the landlords for the limited purpose of consummating and perfecting the liens under the Exit Facility, the New Public Notes, the Class 10 Deferred Obligation, the Continuing Creditor Deferred Obligation and the Vendors' Lien, including the right to make, execute and delivery any and all documents (including memoranda of leases and leasehold deeds of trust) and present and file such documents in any public office.

P. As set forth in more detail below, each of the documents in the Plan Supplement, including but not limited to, the Exit Facility Closing Documents, the Stockholders' Agreement, the Indenture for the New Public Notes, the Claims Agency Agreement, the Collateral Agency Agreement, the Woodlands Place loan documents, the Bank Midwest loan documents, the Guaranty and other documents in the Plan Supplement, are approved as fair, equitable, reasonable and in the best interests of the Debtors, the Estates and the Reorganized Enterprise, and were negotiated at arms' length and in good faith by and among the parties to such agreements and are entitled to the protections of Bankruptcy Code section 364(e).

1      Q.     The transactions contemplated under the Plan, including the Exit
2  Facility and the Corporate Restructuring Plan, are for fair consideration, were entered into in
3  good faith within the meaning of Bankruptcy Code section 363(m) and 1129, and are in the
4  "best interests" of creditors, interest holders and the Estates within the meaning of
5  Bankruptcy Code sections 363, 365 and 1129 and decisional law.

9    DATED: 7/10/03

THE HONORABLE SHERI BLUEBOND
UNITED STATES BANKRUPTCY JUDGE

Presented By:

DANIEL J. BUSSEL, a Member of
KLEE, TUCHIN, BOGDANOFF & STERN LLP
Reorganization Counsel for Debtors and
Debtors in Possession

15

| In re:<br><br>**FOUNTAIN VIEW, INC. et al.,**<br><br>Debtor. | **CASE NO.: LA 01-39678 BB**<br><br>CHAPTER 11 |
|---|---|

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO:

Mr. Roland Rapp, Fountain View, Inc. et al.,
27442 Portola Parkway, Suite 200, Foothill Ranch, CA 92610

Daniel J. Bussel, Esq., Klee, Tuchin, Bogdanoff & Stern LLP,
2121 Avenue of the Stars, 33rd Floor, Los Angeles, CA 90067-5061

Joseph Caceres, Esq., Office of the U.S. Trustee
Ernst & Young Plaza, 725 S. Figueroa Street, 26th Fl, Los Angeles, CA 90017

Counsel for the Bondholders/Robert Aronson, Esq., Akin, Gump, Strauss, Hauer & Feld, LLP
2029 Century Park East, Suite 2600, Los Angeles, CA 90067

Counsel for the Bondholders/James R. Savin, Esq. and Michael S. Stamer, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP, 590 Madison Ave, 20th Fl., New York, NY 10022

Counsel/Unsecured Creditors Committee/Carole Neville, Esq., Sonnenschein Nath & Rosenthal
1221 Avenue of the Americas, New York, NY 10020-1089

Counse/Unsecured Creditors Committee/Michael Lubic, Esq., Sonnenschein Nath & Rosenthal
601 South Figueroa Street, Suite 1500, Los Angeles CA 90017-5704

Counsel for the Secured Lenders/James E. Spiotto, Esq., Chapman and Cutler
111 West Monroe Street, Chicago, IL 60603

1.  You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(1)(a)(v), that a judgment or order entitled (specify) **FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION DATED APRIL 22, 2003 AND AUTHORIZING SUBSTANTIVE CONSOLIDATION** was entered on (specify date): JUL 10 2003

2.  I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on (specify date): JUL 10 2003
    JUL 10 2003

Dated: _____      **JON D. CERETTO**
                            Clerk of the Bankruptcy Court
                            By: _____
                            Deputy Clerk

---

*Rev. 6/95*  This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.