ORIGINAL

1  DANIEL J. BUSSEL (State Bar No. 121939),
MICHAEL L. TUCHIN (State Bar No. 150375), and
BRENDT C. BUTLER (State Bar No. 211273), Attorneys with
KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 Avenue of the Stars, 33rd Floor
Los Angeles, California 90067-5061
Telephone:   (310) 407-4000
Facsimile:   (310) 407-9090

Reorganization Counsel for
Debtors and Debtors in Possession

7  Debtors' Mailing Address
27442 Portola Parkway, Suite 200
8  Foothill Ranch, CA 92610



**FILED**

JUL 10 2003

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

**ENTERED**

JUL 10 2003

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

9

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.:   LA 01-39678 BB through<br>LA 01-39697 BB |
| **FOUNTAIN VIEW, INC.**, a Delaware<br>corporation, et al. | And   LA 01-45516 BB;<br>LA 01-45520 BB; and<br>LA 01-45525 BB |
| Debtors. | (Jointly Administered under Case No.<br>LA 01-39678 BB) |
| | Chapter 11 |
| | **ORDER CONFIRMING DEBTORS'<br>THIRD AMENDED JOINT PLAN<br>OF REORGANIZATION DATED<br>APRIL 22, 2003 AND<br>AUTHORIZING SUBSTANTIVE<br>CONSOLIDATION** |
| | <u>**Hearing Held:**</u> |
| | **Date:**   July 10, 2003<br>**Time:**   11:00 a.m.<br>**Place:**   Courtroom 1475<br>Roybal Federal Building<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60668_2.DOC

1  **IN THIS DISTRICT, AT LOS ANGELES, CALIFORNIA:**

2         On July 10, 2003, this Court held a hearing regarding confirmation of the

3  *Debtors' Third Amended Joint Plan of Reorganization Dated April 22, 2003* (the "Plan"),[1]

4  which was jointly filed by Fountain View, Inc. and its 22 chapter 11 affiliates, the debtors

5  and debtors in possession in the above-captioned, jointly administered chapter 11 cases

6  (collectively, the "Debtors"). The Court has entered its *Findings Of Fact And Conclusions*

7  *Of Law Regarding Debtors' Third Amended Joint Plan Of Reorganization Dated April 22,*

8  *2003* concurrently herewith.

9         The Court having found after hearing on notice that the requirements for

10  confirmation set forth in Bankruptcy Code section 1129(a) have been satisfied:

11         **IT HEREBY IS ORDERED THAT:**

12         1.    The Plan, in the form attached hereto as <u>Exhibit 1</u>, subject to the

13  Modification attached hereto as <u>Exhibit 2</u>, is **CONFIRMED.** The previously filed Exhibits
       *(other than Exhibit "O")*

14  to the Plan, including the Plan Supplement, shall be deemed a part of the Plan and are

15  incorporated herein by this reference. The failure to reference or discuss any particular

16  provision of the Plan in this Order shall have no effect on this Court's approval and

17  authorization of, or the validity, binding effect and enforceability of, such provision; and

18  each provision of the Plan is authorized and approved and shall have the same validity,

19  binding effect and enforceability as every other provision of the Plan, whether or not

20  mentioned in this Order.

21         2.    The provisions of the Plan and this Order will bind the Debtors, the

22  Reorganized Enterprise, and all creditors and equity holders of the Debtors, whether or not

23  the Claims or Interests of these entities are impaired under the Plan, whether or not these

24  entities have voted to accept or reject the Plan, and whether or not these entities have filed

25  proofs of Claim or Interest or are deemed to have filed proofs of Claim or Interest in the

26  Reorganization Cases.

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1880 CENTURY PARK EAST, SUITE 200
LOS ANGELES, CALIFORNIA 90067-1698
(310) 407-4000

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

1    3.    On the Effective Date, all Interests in Fountain View, Inc. will be

2    cancelled, annulled, and extinguished, and will be deemed to have no further force or effect

3    without any further action by any party. Entities holding such Interests in Classes 14, 15, 17

4    18 will receive new equity interests under the Plan. Entities holding Interests in Classes 16

5    and 19 will retain no rights and receive no consideration on account of these Interests.

6    4.    The consummation of the Corporate Restructuring Plan will occur on

7    the Effective Date, and upon consummation of the Corporate Restructuring Plan, all of the

8    Debtors except Fountain View, Inc., Reorganized Summit Care Pharmacy and the Other

9    Reorganized Debtors will cease their independent existence through dissolution or merger.

10    The Corporate Restructuring Plan is approved as fair, equitable, reasonable and in the best

11    interests of the Debtors, the Estates and the Reorganized Enterprise.

12    5.    The Exit Facility and the Exit Facility Closing Documents as set forth in

13    the Plan Supplement[2] are approved as fair, equitable, reasonable and in the best interests of

14    the Debtors, the Estates and the Reorganized Enterprise and the Debtors and their affiliates

15    and the Reorganized Enterprise are authorized to enter into the Exit Facility Closing

16    Documents substantially in the forms submitted with the Plan Supplement and such other

17    documents as may be necessary to fully and finally consummate the transactions

18    contemplated therein upon the occurrence of the Effective Date and to perform their

19    obligations thereunder. The Debtors and the Reorganized Enterprise are authorized without

20    further order of the Court to execute such Exit Facility Closing Documents as modified on or

21    prior to the Effective Date, together with such other documents as any of the applicable

22    lenders under the Exit Facility (the "Exit Lenders") may reasonably require in order to

23    effectuate the Exit Facility. All such actions taken or caused to be taken shall be deemed to

24    have been authorized and approved by this Court and shall be deemed effective ~~pursuant to~~

25    ~~applicable non-bankruptcy corporate law and without further corporate act or action under~~

26

27

28

---

[2] The Plan Supplement was originally filed on June 30, 2003, a supplement to the Plan Supplement was filed on July 1, 2003 and a revised Plan Supplement with modified documents was filed on July 9, 2003. Collectively, these filings are referred to as the Plan Supplement with the understanding that later filed documents supersede earlier filed drafts and forms of such documents.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60668_2.DOC

1  applicable law and without any requirement of further action by the stockholders or directors

2  of the Debtors to the extent not otherwise inconsistent with the terms of this Confirmation

3  Order and the Plan. Each of such documents, instruments, and agreement will, upon

4  execution, be valid, binding and enforceable against the Debtors and any other person who is

5  a party thereto, and is entered into for good and valuable consideration, including the benefits

6  of the Plan. The validity of any debt incurred under the Exit Facility Closing Documents,

7  and the validity, perfection and priority of any lien granted thereunder, shall not be subject to

8  reversal or modification upon appeal of this Confirmation Order unless a stay thereof is

9  obtained prior to the occurrence of the Effective Date.

10          6.      The documents in the Plan Supplement relating to Class 1, 2, 4, 6, 9,

11  and 10 (Exhibits A, B, C, D, E, F, G, I, J, and K) are approved as fair, equitable, reasonable

12  and in the best interests of the Debtors, the Estates and the Reorganized Enterprise and the

13  Debtors and the Reorganized Enterprise are authorized to enter into such documents in

14  substantially the form submitted with the Plan Supplement and, subject to the reasonable

15  approval of the Exit Lenders in accordance with the Exit Facility Closing Documents, such

16  other documents as may be necessary to fully and finally consummate the transactions

17  contemplated therein upon the occurrence of the Effective Date. The Debtors are authorized

18  without further order of the Court to make such further non-material modifications to the

19  forms of the documents in the Plan Supplement relating to Class 1, 2, 4, 6, 9, and 10

20  (Exhibits A, B, C, D, E, F, G, I, J, and K) as may be agreed among the parties to such

21  agreements and to the extent not otherwise inconsistent with the terms of this Confirmation

22  Order and the Plan. The validity of any debt incurred under the documents in the Plan

23  Supplement relating to Class 1, 2, 4, 6, 9, and 10 (Exhibits A, B, C, D, E, F, G, I, J, and K),

24  and the validity, perfection and priority of any lien granted thereunder, shall not be subject to

25  reversal or modification upon appeal of this Confirmation Order unless a stay thereof is

26  obtained prior to the occurrence of the Effective Date.

27          7.      The form of the Class 13 (Uninsured Punitive Damage Claims and

28  Other Subordinated Liabilities) Promissory Note attached as Exhibit H to the Plan

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

60668_2.DOC

1 │ Supplement is approved as fair, equitable, reasonable and in the best interests of the Debtors,

2 │ the Estates and the Reorganized Enterprise.

3 │         8.      The documents in the Plan Supplement relating to the Corporate

4 │ Restructuring Plan (Exhibits L, M, N, *and* O) are approved as fair, equitable, reasonable and

5 │ in the best interests of the Debtors, the Estates and the Reorganized Enterprise and the

6 │ Debtors and their affiliates and the Reorganized Enterprise are authorized to enter into such

7 │ documents in substantially the form submitted with the Plan Supplement and, subject to the

8 │ reasonable approval of the Exit Lenders in accordance with the Exit Facility Closing

9 │ Documents, such other documents as may be necessary to fully and finally consummate the

10 │ transactions contemplated therein upon the occurrence of the Effective Date and to perform

11 │ their obligations thereunder. The Debtors are authorized without further order of the Court,

12 │ subject to the reasonable approval of the Exit Facility Lenders in accordance with the Exit

13 │ Facility Closing Documents, to make such further modifications to the forms of the

14 │ documents in the Plan Supplement relating to the Corporate Restructuring Plan (Exhibits L,

15 │ M, N, *and* O) as may be agreed among the parties to such agreements and to the extent not

16 │ otherwise inconsistent with the terms of this Confirmation Order and the Plan.

17 │         9.      Pursuant to the Corporate Restructuring Plan, the Debtors are authorized

18 │ to transfer all of their fee owned properties to the respective Post-Effective Date Subsidiaries

19 │ borrowing under the Exit Facility, and such properties shall be transferred and vested in the

20 │ respective Post-Effective Date Subsidiaries free and clear of all claims, liens, encumbrances

21 │ and other interests of any kind except for liens of real property taxes not yet due and payable.

22 │        10.     The Debtors and the Reorganized Enterprise are authorized to assign

23 │ their leasehold interests as security for the Exit Facility, the New Public Notes, the Class 10

24 │ Deferred Obligation, the Continuing Creditor Deferred Obligation and the Vendors' Lien,

25 │ pursuant to the leasehold deeds of trust and related documents included in the Plan

26 │ Supplement, notwithstanding any restrictions on transfer or assignment under the leases or

27 │ otherwise applicable law, and the Debtors, in their capacity as holders of leasehold interests,

28 │ are granted a power of attorney for the landlords of the Debtors' leases with full power to act

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

4

1  in the place and stead of the landlords for the limited purpose of consummating and

2  perfecting the liens under the Exit Facility, the New Public Notes, the Class 10 Deferred

3  Obligation, the Continuing Creditor Deferred Obligation and the Vendors' Lien, including

4  the right to make, execute and delivery any and all documents (including memoranda of

5  leases and leasehold deeds of trust) and present and file such documents in any public office.

6      11.    On the Effective Date, the security interests and liens granted pursuant

7  to, or in connection with, the Exit Facility Closing Documents, including, without limitation,

8  those set forth in the Plan Supplement and all documents, instruments and agreements related

9  thereto and annexes, exhibits and schedules appended thereto that are executed in connection

10  with the Exit Facility pursuant to the authority granted herein, shall constitute, as of the

11  Effective Date, legal, valid and duly perfected first priority security interests and liens in and

12  to the collateral specified therein, subject only, where applicable, to the pre-existing liens and

13  security interests expressly specified or permitted in the Exit Facility Closing Documents and

14  the Plan.  All of the security interests and liens to be created under, or in connection with, the

15  Exit Facility Closing Documents shall be deemed created and shall be valid and perfected as

16  of the Effective Date, if the financing statements, mortgages or other evidence of such

17  security interests and liens are properly filed, recorded and perfected within twenty (20) days

18  following the Effective Date.  The Debtors and the Reorganized Enterprise and any other

19  persons granting such security interests and liens are authorized to make all filings and

20  recordings necessary to establish and perfect such security interests and liens under the

21  provisions of state, provincial, federal, or other law (whether foreign or domestic), and will

22  thereafter cooperate to make all other filings and recordings that otherwise would be

23  necessary under applicable law to give notice of such security interests and liens to third

24  parties.

25      12.    On the Effective Date, the lien of the Renewal, Modification, Extension

26  and Supplemental Deed of Trust dated December 1, 1993, recorded on January 27, 1994

27  in/under County Clerk's File No. 9404872 of the Real Property Records of Montgomery

28  County ("Original Deed of Trust"), as modified by that modification to deed of trust dated

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    on or about the Effective Date, in favor of Bank Midwest, N.A., and pursuant to the

2    documents to be executed pursuant to this Order (including but not limited to an amendment

3    to deed of trust note; a promissory note; a deed of trust; and a security agreement) shall be

4    valid, enforceable, and perfected pursuant to the terms of such agreements, and such Original

5    Deed of Trust, as modified, shall be and remain a first priority lien, subject only to those

6    exceptions reflected in that Lawyers Title Insurance Corporation Mortgagee Policy No. 91-

7    00-454362 issued by Lawyers Title Insurance on January 27, 1994 and not otherwise

8    removed or satisfied pursuant to the Plan.

9          13.     On the Effective Date, the lien under the Woodlands Place Note,

10   Woodlands Place Deed of Trust, and Woodlands Place Security Agreement shall be valid,

11   enforceable, and perfected pursuant to the terms of such agreements, subject to the first

12   priority mortgage of Bank Midwest, N.A. and tax liens and other statutory liens to the extent

13   such are of record or otherwise entitled to priority under applicable law.

14         14.     The lien of the Deed of Trust and Assignment of Rents made by

15   Summit Care Corporation, a California corporation, as Trustor, in favor of Union Bank (now

16   known as Union Bank of California), as Beneficiary, recorded on March 31, 1994 in the

17   Official Records of Los Angeles County as Instrument Number 94-638988, as thereafter

18   extended and modified from time to time, including without limitation as reflected in the

19   Memorandum of Extension and Modification Agreement and Modification of Deed of Trust

20   Dated April 1, 2001 and recorded on July 2, 2001 as Instrument No. 01-1123615 in the

21   Official Records of Los Angeles County, and pursuant to the documents to be executed

22   pursuant to this Order, shall be and remain a first priority lien, subject only to those

23   exceptions reflected in that certain title insurance policy #FTC167614  issued by Old

24   Republic Title Company on March 31, 1994.

25         15.     The Debtors and the Reorganized Enterprise are authorized to execute

26   and deliver any and all documents or instruments and take any and all actions necessary or

27   desirable to implement the Plan, this Order, the Exit Facility, the Corporate Restructuring

28   Plan, the issuance of new securities, the amended Stockholders' Agreement, and any other

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

1    transactions contemplated under those documents or the documents contained in the Plan

2    Supplement.  To effectuate these transactions and the Plan, the officers of the Debtors and

3    the Reorganized Enterprise are authorized—without further notice or application to or order

4    of this Court—to execute, deliver, file, or record any documents and to take any other actions

5    that those officers may determine to be necessary or desirable, regardless of whether such

6    actions or documents are specifically referred to in the Plan or this Order.  To the extent that,

7    under applicable non-bankruptcy law, any of these actions otherwise would require the

8    consent or approval of the shareholders of the Debtors or of the directors or officers of the

9    Debtors, this Order constitutes that consent and approval.

10        16.    As of the Effective Date and upon the payment of the Cure Amounts (if

11    applicable), pursuant to the Plan, each of the Assumed Agreements (and any other executory

12    contracts or unexpired leases not rejected under the Plan or otherwise, including any

13    agreements required under the Medicaid, Medicare or applicable Texas and California

14    licensure laws or regulations, including but not limited to hospital transfer agreements, etc.)

15    shall be deemed assumed by the Reorganized Enterprise and shall be in full force and effect,

16    except to the extent that they have been modified consensually with the agreement of the

17    parties thereto.  Such agreements may be assigned to the subsidiaries of Reorganized

18    Fountain View as contemplated.

19        17.    Notwithstanding anything to the contrary in the Plan or this

20    Confirmation Order, the Medicare Provider Agreements referenced in that certain *Stipulation*

21    *Between the Secretary of the United States Department of Health and Human Services and*

22    *the Debtors* filed with the Court on July 3, 2003 (the "Medicare Provider Agreements

23    Stipulation") shall be assumed and assigned in accordance with the terms of the Medicare

24    Provider Agreement Stipulation.

25        18.    To the extent that the non-debtor party to an Assumed Agreement has

26    filed a proof of Claim against the Debtors asserting prepetition arrearages under an Assumed

27    Agreement or asserting a Rejection Damage Claim, payment of the Cure Payment pursuant

28    to the Plan and this Confirmation Order shall be deemed to satisfy, in full, any prepetition

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

arrearage or Rejection Damage Claim, irrespective of whether the Cure Payment is less than the amount set forth in any such proof of Claim.

19.   As of the Effective Date, pursuant to Section III.B of the Plan, the Debtors will reject any and all agreements that they executed before the Petition Date—except for any agreements that were previously assumed or rejected either by Final Order or under Bankruptcy Code section 365 or that will be assumed pursuant to Paragraph 9 above—to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365.  The agreements to be rejected include all executory contracts and unexpired leases listed on the Schedule of Rejected Agreements (and any other executory contracts or unexpired leases not assumed under the Plan or otherwise).  The deadlines, procedures and sanctions set forth in Section III.B of the Plan regarding the assertion of Claims for damages arising from such rejection are approved and established. Nothing in this Order is a waiver of any defenses, claims, or counterclaims that the Debtors may have against an entity that is a party to any executory contracts or unexpired leases rejected under this Paragraph.

20.   Except as otherwise provided in the Plan, the Corporate Restructuring Plan, the Exit Facility Closing Documents, this Order, the Plan Supplement or the Exhibits accompanying the Plan, on the Effective Date all assets and property of the Estates, as defined in Bankruptcy Code section 541 and the Plan, including any form of insurance or bond, shall vest in the Reorganized Enterprise free and clear of all claims, liens, encumbrances, and other interests of any kind pursuant to Bankruptcy Code sections 363 and 1123(a)(5). From and after the Effective Date, the Reorganized Enterprise may operate its business and use, acquire and dispose of property and settle and compromise liabilities without supervision by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Order.

21.   Subject to the limitations and conditions imposed under Bankruptcy Code section 1125(e), entities who—in good faith and in compliance with applicable Bankruptcy Code provisions—solicited Plan acceptances or rejections will not be liable on

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60668_2.DOC

1  account of their solicitation or participation for violation of any applicable law, rule, or

2  regulation governing the solicitation of Plan acceptances or rejections.

3       22.    To the maximum extent permitted by law, none of the Debtors, the

4  Estates, the Reorganized Enterprise, the Agent, the Lenders, the Exit Lenders or their

5  predecessors in interest, the Creditors' Committee, the Noteholders' Committee or any of

6  their respective members, officers, directors, employees, advisors, professionals or agents

7  shall have or incur any liability to any holder of a Claim or Interest for any act or omission,

8  from the beginning of time up to the date of the entry of this Order in connection with,

9  related to, or arising out of the Reorganization Cases, the pursuit of confirmation of the Plan,

10  or the consummation of the Plan, except for willful misconduct or gross negligence, and in

11  all respects, the Debtors, the Estates, the Reorganized Enterprise, the Agent, the Lenders or

12  their predecessors in interest, the Creditors' Committee, the Noteholders' Committee, and

13  each of their respective members, officers, directors, employees, advisors, professionals or

14  agents shall be entitled to rely on the advice of their respective counsel with respect to their

15  duties and responsibilities under the Plan.

16       23.    Pursuant to Bankruptcy Code section 1146(c), the issuance, transfer, or

17  exchange of a security under the Plan, and the making or delivery of an instrument or transfer

18  under the Plan, including, without limitation, in each case, any transfer pursuant to any of the

19  Exit Facility Closing Documents, shall not be subject to any stamp tax or similar tax.  All

20  governmental officials and agents shall forego the assessment and collection of any such tax

21  or governmental assessment and accept for filing and recordation any of the foregoing

22  instruments or other documents without payment of such tax or other governmental

23  assessment.

24       24.    In accordance with Bankruptcy Code section 1145, the exemption from

25  the requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and any state or

26  local law requiring registration or qualification for the offer or sale of a security provided

27  under Bankruptcy Code section 1145 shall apply to the New Class A Common Stock, New

28  Preferred Stock and New Public Notes issued and distributed under the Plan.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

25.    Except as to the Indenture Trustee, whose fees and expenses will be allowed pursuant to the treatment of Allowed Non-Ordinary Course Administrative Claims under the Plan, any party wishing to assert a Professional Fee Claim against the Estates must, on or before the sixtieth day after the Effective Date, both file with the Court a final fee application or a motion requesting allowance of the fees and serve the application or motion on the Reorganized Enterprise's counsel, the Creditors' Committee's counsel, the Noteholders' Committee's counsel and the Office of the U.S. Trustee.

26.    Except as to the Indenture Trustee, any entity that wishes to assert a Non-Ordinary-Course Administrative Claim—other than a Professional Fee Claim—against an Estate must, on or before the sixtieth days after the Effective Date, both File a motion requesting that the Reorganized Enterprise pay the Non-Ordinary-Course Administrative Claim and serve this motion on the Reorganized Enterprise's counsel, the Creditors' Committee's counsel, the Noteholders' Committee's counsel and the Office of the U.S. Trustee.

27.    The rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Estates, the Reorganized Enterprise, or any of their property.  Except as otherwise provided in the Plan or this Confirmation Order, (a) on the Effective Date, the Debtors, the Estates, the Reorganized Enterprise and their property, shall be deemed discharged and released from all Claims and Interests, including demands, liabilities, Claims and Interests that arose before the Confirmation Date and all debts of the kind specified in Code sections 502(g), 502(h), or 502(i), regardless of whether or not (i) a proof of Claim or proof of Interest based on such debt or Interest is Filed or deemed Filed, (ii) a Claim or Interest based on such debt or Interest is allowed pursuant to Code section 502, or (iii) the holder of a Claim or Interest based on such debt or Interest has or has not accepted the Plan; and (b) all persons and entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Enterprise, and their property, any other

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  and further Claims or Interests based upon any act or omission, transaction, or other activity

2  of any kind or nature that occurred prior to the Confirmation Date.  Except as otherwise

3  provided in the Plan or the Confirmation Order, the Confirmation Order shall act as a

4  discharge of any and all Claims against and all debts and liabilities of the Debtors and such

5  discharge shall void any judgment against the Debtors obtained at any time to the extent that

6  it relates to a Claim discharged.

7         28.  Except as otherwise provided in the Plan or the Confirmation Order, on

8  and after the Effective Date, all persons and entities who have held, or currently hold, or may

9  hold a debt, Claim, or Interest discharged hereunder pursuant to the terms of the Plan are

10  permanently enjoined from taking any of the following actions on account of any such

11  discharged debt, Claim or Interest: (a) commencing or continuing in any manner any action

12  or proceeding against the Debtors, the Reorganized Enterprise, the Estates or their property;

13  (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree

14  or order against the Debtors, the Estates, the Reorganized Enterprise, or their properties; (c)

15  creating, perfecting or enforcing any lien or encumbrance against the Debtors, the Estates,

16  the Reorganized Enterprise, or their properties; (d) asserting any setoff, right of subrogation,

17  or recoupment of any kind against any debt, liability or obligation due to the Debtors, the

18  Estates, the Reorganized Enterprise, or their properties; and (e) commencing or continuing

19  any action, in any manner, in any place that does not comply with or is inconsistent with the

20  provisions of the Plan, or the Confirmation Order.  Any person or entity injured by any

21  willful violation of such injunction shall recover actual damages, including costs and

22  attorneys' fees and, in appropriate circumstances, may recover punitive damages, from the

23  willful violator.

24        29.  Pursuant to and in furtherance of the discharge provisions of section

25  1141(d) of the Bankruptcy Code and the Plan, the commencement or continuation of all

26  personal injury or wrongful death actions arising prior to the Confirmation Date are hereby

27  enjoined from proceeding except in conformity with the discharge provision of section

28  1141(d) of the Bankruptcy Code and the Plan through the ADR Procedures (or, as applicable,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  the Code's claim adjudication process).  Pursuant to the Plan and the Confirmation Order, the

2  ADR Procedures will apply to all personal injury or wrongful death actions that are based on

3  Claims that arose prior to the Confirmation Date.  Relief from the injunction implementing

4  the ADR Procedures and established by the Confirmation Order will not be granted unless (i)

5  both the entity seeking relief from the injunction and the Reorganized Enterprise certify in

6  writing that they have attempted to settle their dispute in good faith pursuant to the ADR

7  Procedures, and, notwithstanding the completion of the ADR Procedures, they have failed to

8  reach a settlement; or (ii) the entity seeking relief from the injunction established by the

9  Confirmation Order otherwise establishes good cause after notice and a hearing pursuant to a

10  motion filed with the Court and served on the Reorganized Fountain View on not less than 24

11  days notice, not to follow the ADR Procedures under the circumstances of the particular case.

12  The Court reserves jurisdiction to modify the ADR Procedures for cause after notice and a

13  hearing upon the motion of Reorganized Fountain View, such motion to be served on the

14  U.S. Trustee and the holders of known and disputed professional liability claims arising prior

15  to the Confirmation Date.

16          30.      The discharge and injunction provisions set forth in Section VII.A of the

17  Plan are approved and established as if fully set forth herein.

18          31.      This Court shall retain jurisdiction as provided in Section VII.C of the

19  Plan.

20          32.      The Reorganized Enterprise shall mail notice of entry of this Order, in

21  substantially the form of the Notice attached hereto as <u>Exhibit 3</u>, which form is hereby

22  approved, to all creditors and shareholders of record as of the date of entry of this

23  Confirmation Order.

24          33.      The Debtors will mail notice of the occurrence of the Effective Date, in

25  substantially the form of the Notice attached hereto as <u>Exhibit 4</u>, which form is hereby

26  approved, to the Office of the United States Trustee; the Creditors' Committee; the

27  Noteholders' Committee; the Agent and the Lenders; and any party entitled to special notice.

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

34.     The Reorganized Enterprise shall not be required to comply with Local Bankruptcy Rule 3020-1(b), which otherwise requires the filing of certain status reports after the Confirmation Date; provided, however, that Reorganized Fountain View shall submit an initial status report within 30 days after the Effective Date, but in any case within 120 days of the Confirmation Date, explaining the progress made toward consummation of the Plan, and including as an exhibit the most recent form 10-Q or 10-K filed by Reorganized Fountain View with the United States Securities and Exchange Commission.

35.     This Order shall constitute an order of the Court authorizing the sale of the property securing the Class 4 Claim free and clear of the liens of the holder of the Class 4 Claim in accordance with sections 363, 1123 and 1129 of the Bankruptcy Code, and all applicable Bankruptcy Rules; provided, however, that concurrently with any such sale the Class 4 Claim is satisfied by the payment from the proceeds of any such sale to the holder of the Class 4 Claim of cash in an amount equal to the Allowed Class 4 Claim. Notwithstanding anything else to the contrary herein or in Bankruptcy Rule 6004(g), such sale may be consummated at any time following entry of this Confirmation Order.

36.     As of the Effective Date, the Reorganized Enterprise shall be deemed to have assumed any obligations of the Debtors to indemnify the Debtors' directors and officers who held such positions immediately prior to the Effective Date; provided, however, that nothing contained in this paragraph or the Plan shall expand the scope of any such indemnification obligations or waive any defenses available to the Debtors with respect thereto.

37.     As of the Effective Date, the assets, claims, and affairs of the Debtors and the Estates shall be substantively consolidated. As a result of the substantive consolidation, on the Effective Date, all property, rights and claims of the Debtors and the Estates, and all Claims against the Debtors and the Estates shall be deemed pooled for purposes of allowance, treatment and distributions under the Plan. Further, as a result of this substantive consolidation, all claims between and among the Debtors and the Estates shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   such Claims, and any contingent or otherwise duplicative Claims against one or more Debtor

2   based upon claims for which one or more of the Debtors are also liable shall be disallowed.

3   The substantive consolidation pertains solely to the allowance and treatment of Claims and

4   the distribution of property under the Plan, and shall have no affect upon the corporate

5   structure of the Reorganized Enterprise.  Notwithstanding anything to the contrary contained

6   in this Order or the Plan, the entities comprising the Reorganized Enterprise shall constitute

7   separate entities on the Effective Date, and no such entity shall be liable for the obligations of

8   any other entity with respect to any obligation incurred following the Effective Date, unless

9   otherwise agreed to in writing by the particular entity.  The Debtors will not be substantively

10  consolidated unless and until the occurrence of the Effective Date.  If the Effective Date does

11  not occur, the Debtors shall not be substantively consolidated and this Order shall have no

12  precedent or effect with respect to any future request by a party seeking to substantively

13  consolidate the Debtors.

14          38.     Pursuant to Bankruptcy Code section 1123(b), the Reorganized

15  Enterprise shall be vested with and shall retain and enforce any claims, rights, powers, and

16  causes of action that the Debtors and the Estates may hold or have against any entity.  Any

17  such rights shall be retained and may be prosecuted, abandoned or settled by the Reorganized

18  Enterprise free and clear of all Claims and Interests.

19          39.     On the Effective Date, the Creditors' Committee and the Noteholders'

20  Committee shall be released and discharged from the rights and duties arising from or related

21  to the Reorganization Cases, except with respect to final applications for professional

22  compensation and objections thereto.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1         40.    Any and all objections to the Plan, or the confirmation of the Plan not

2   previously withdrawn are overruled.

4   DATED: _____

THE HONORABLE SHERI BLUEBOND
UNITED STATES BANKRUPTCY JUDGE

7   Presented By:

9   _____

DANIEL J. BUSSEL, a Member of
10  KLEE, TUCHIN, BOGDANOFF & STERN LLP
Reorganization Counsel for Debtors and
11  Debtors in Possession

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

DANIEL J. BUSSEL (State Bar No. 121939),
MICHAEL L. TUCHIN (State Bar No. 150375), and
BRENDT C. BUTLER (State Bar No. 211273), Attorneys with
KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 Avenue of the Stars, 33rd Floor
Los Angeles, California 90067-5061
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090

Reorganization Counsel for
Debtors and Debtors in Possession

Debtors' Mailing Address
27442 Portola Parkway, Suite 200
Foothill Ranch, CA 92610

FILED

JUN 10 2003

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>**FOUNTAIN VIEW, INC.**, a Delaware corporation, et al.<br><br>Debtors. | Case No.:    LA 01-39678 BB through<br>                    LA 01-39697 BB<br><br>And          LA 01-45516 BB;<br>                    LA 01-45520 BB; and<br>                    LA 01-45525 BB<br>(Jointly Administered under Case No. LA 01-39678 BB)<br><br>Chapter 11<br><br>**DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION DATED APRIL 22, 2003**<br><br>**Confirmation Hearing**<br><br>**Date:**    July 3, 2003<br>**Time:**    11:00 a.m.<br>**Place:**    Courtroom 1475<br>                    Roybal Federal Building<br>                    255 E. Temple Street<br>                    Los Angeles, CA 90012 |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

COPY

EXHIBIT ___1___ PAGE _16_

60419_1.DOC

# TABLE OF CONTENTS

I.    DEFINITIONS ....................................................................................... 1

    A.    Defined Terms. .......................................................................... 1

    B.    Rules of Construction. ............................................................. 20

II.   DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND
INTERESTS ........................................................................................ 21

    A.    Summary of Classification of Claims. ..................................... 21

    B.    Allowance and Treatment of Unclassified Claims (Administrative
Claims, Priority Tax Claims, and Priority Claims). ................ 23

        1.    Administrative Claims. .................................................. 23

        2.    Priority Claims. .............................................................. 26

    C.    Classification and Treatment of Secured Claims (Classes 1, 2, 3, 4, 5, 6,
7, & 8). ...................................................................................... 26

        1.    Class 1 (Bank Midwest—Impaired). .............................. 26

        2.    Class 2 (Woodlands Place Nursing Center, L.P.—Impaired) ................ 27

        3.    Class 3 (Secured Tax Claims—Unimpaired). ................ 28

        4.    Class 4 (Union Bank of California—Unimpaired). ................ 28

        5.    Class 5 (Leonard and Catherine May—Unimpaired). ............ 29

        6.    Class 6 (Bergen—Impaired). ......................................... 29

        7.    Class 7 (Other Secured Claims Including Personal Property
Lessors—Unimpaired). .................................................. 30

        8.    Class 8 (Agent and Lenders—Unimpaired). ................. 31

    D.    Classification and Treatment of Unsecured Claims (Classes 9, 10, 11, &
12). ........................................................................................... 32

        1.    Class 9 (11¼% Notes—Impaired). ............................... 32

        2.    Class 10 (General Unsecured Claims—Impaired). ................ 35

        3.    Class 11 (Convenience Claims—Unimpaired). ................ 39

        4.    Class 12 (Insured Professional Liability Claims—Impaired). ........ 39

        5.    Class 13 (Other Subordinated Claims—Impaired). ................ 40

    E.    Treatment of Interests (Classes 14, 15, 16, 17, 18, & 19). ................ 40

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT ___ PAGE 17

      1.    Class 14 (Existing Preferred Stock—Impaired)..........................40

      2.    Class 15 (Existing Class A Common Stock—Impaired). .........41

      3.    Class 16 (Existing Class B Common Stock—Impaired). .........42

      4.    Class 17 (Existing Class C Common Stock—Impaired). .........42

      5.    Class 18 (Existing Warrants—Impaired). ..............................42

      6.    Class 19 (Existing Management Incentives and Other Existing Interests—Impaired)......................................................43

III.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES......................................................................................43

   A.    Assumption and Assignment of Contracts and Leases. ...............43

      1.    Schedule of Assumed or Assigned Agreements. ....................43

      2.    Cure Payments..................................................................44

      3.    Objections to Assumption or Assignment or Proposed Cure Payments........................................................................45

      4.    Liens with Respect to Assumed Contracts and Leases Pursuant to the Exit Facility and Plan. ............................................45

   B.    Rejection of Contracts and Leases. ...........................................46

      1.    Schedule of Rejected Agreements......................................46

      2.    Bar Date for Rejection Damage Claims. ..............................47

   C.    Postpetition Contracts and Leases. ...........................................47

IV.   MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN AND OTHER PROVISIONS ...............................................................48

   A.    Substantive Consolidation. .......................................................48

   B.    Corporate Restructuring Plan. ..................................................48

   C.    Exit Facility. ...........................................................................49

   D.    Amendment to Articles of Incorporation. ..................................50

   E.    The Claims Agent......................................................................50

      1.    Designation of the Claims Agent. ......................................50

      2.    Powers and Duties. ..........................................................50

   F.    Revesting of Assets. .................................................................51

   G.    Preservation of Causes of Action. .............................................51

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

H.    Objections to Claims and Interests. .................................................................. 52

I.    Distribution of Property Under the Plan. ........................................................... 53

    1.    Manner of Cash Payments Under The Plan. ............................................. 53

    2.    No *De Minimis* Distributions. ................................................................. 53

    3.    No Distribution with Respect to Disputed Claims .................................... 53

    4.    Delivery of Distributions and Undeliverable or Unclaimed
        Distributions. ............................................................................................ 54

        a.    Delivery of Distributions in General. ............................................. 54

        b.    Delivery of 11¼% Noteholder Distributions. ................................. 54

        c.    Distribution to Interest Holders Under the Plan. ............................ 56

        d.    Undeliverable and Unclaimed Distributions. .................................. 57

J.    Cancellation of Interests. ................................................................................... 58

K.    Full Satisfaction. ................................................................................................ 58

L.    Compliance With Tax Requirements. ................................................................ 58

M.    Setoff, Recoupment and Other Rights. .............................................................. 58

N.    Dissolution of the Debtors other than Fountain View, Inc., Summit Care
Pharmacy, Inc., and the Other Reorganized Debtors. ....................................... 58

O.    Conditions to Effectiveness of the Plan. ........................................................... 59

    1.    Conditions. ................................................................................................ 59

    2.    Waiver of Conditions. .............................................................................. 59

V.    MISCELLANEOUS PROVISIONS ........................................................................... 60

A.    Limitations of Liability. ..................................................................................... 60

    1.    For Solicitation or Participation. .............................................................. 60

    2.    For Actions in Connection with Plan and Related Matters. ..................... 60

    3.    No Admissions. ......................................................................................... 61

B.    Dissolution of Committees. ............................................................................... 61

C.    Exemption from Certain Transfer Taxes. .......................................................... 61

D.    Modifications of the Plan. .................................................................................. 62

E.    Revocation of the Plan. ...................................................................................... 62

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT __1__ PAGE __19__

60419_1.DOC

F.    Post-Effective Date Effect of Evidences of Claims or Interests. ........................ 62

G.    Nonapplicability of Local Rule 3020-1(2). ..................................................... 62

H.    Successors and Assigns. .............................................................................. 62

I.    Saturday, Sunday, or Legal Holiday. ............................................................. 63

J.    Governing Law. .......................................................................................... 63

K.    Severability of Plan Provisions. .................................................................... 63

L.    Application of Code Section 1145. ................................................................. 63

VI.    EFFECT OF CONFIRMATION OF THE PLAN........................................................ 64

A.    Discharge and Injunction............................................................................. 64

B.    Payment of Statutory Fees. .......................................................................... 65

C.    Retention of Jurisdiction.............................................................................. 65

VII. RECOMMENDATION AND CONCLUSION ............................................................... 68

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1 DOC

EXHIBIT 1 PAGE 20

iv

Fountain View, Inc. and its 22 Chapter 11 affiliates, debtors and debtors in possession in the above-captioned jointly administered chapter 11 cases, hereby propose this *Debtors' Third Amended Joint Plan of Reorganization Dated April 22, 2003.*

## I.

## DEFINITIONS

**A.    Defined Terms.**

In addition to any other terms that are defined in the Plan, the following capitalized terms, when used in the Plan or the accompanying Disclosure Statement, have the meanings set forth below.

**"Administrative Claim"** means a Claim for administrative costs or expenses that are allowable under Code sections 503(b), 507(b), or 1114(e).  These costs or expenses may include: (i) Administrative Tax Claims; (ii) Ordinary Course Administrative Claims; or (iii) Non-Ordinary Course Administrative Claims.

**"Administrative Tax Claim"** means a Claim that is not an Allowed Secured Claim and that a government unit asserts against a Debtor either for taxes or for related interest or penalties for any period of time that—in whole or in part—falls after the commencement of the Reorganization Cases through and including the Effective Date.

**"ADR Procedures"** means those procedures (as they may be modified by the Plan and Confirmation Order) supplementing the Claims adjudication procedures set forth in the Code and the Bankruptcy Rules for the liquidation of professional liability Claims established by the *Order Establishing Alternative Dispute Resolution Procedures* (the "ADR Order") entered on the Court's official docket on June 17, 2002.  Pursuant to the ADR Procedures, all holders of prepetition personal injury or wrongful death claims and their attorneys, agents, employees, servants, and successors are stayed from proceeding against the Debtors and any successors (including the Estates and the Reorganized Enterprise), any other defendant or defendants with respect to such claims and their insurers.  The Debtors' primary and excess insurance carriers are also obligated to participate in good faith in the mediations provided for by the ADR Procedures.  Those parties that submit to the ADR

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT ___1___ PAGE 21

1

1    Procedures agree to participate in negotiations and mediate with the Debtors to attempt to

2    reach a settlement.  The Plan provides for the Court to enter an injunction pursuant to the

3    Confirmation Order, providing that the commencement or continuation of all personal injury

4    or wrongful death actions will be enjoined from proceeding except in conformity with the

5    ADR Procedures (or, as applicable, the Code's claim adjudication process).  Pursuant to the

6    Plan and the Confirmation Order, the ADR Procedures will apply to all personal injury or

7    wrongful death actions that are based on Claims that arose prior to the Confirmation Date.

8    Relief from the injunction implementing the ADR Procedures and established by the

9    Confirmation Order will not be granted unless (i) both the entity seeking relief from the

10   injunction and the Reorganized Enterprise certify in writing that they have attempted to settle

11   their dispute in good faith pursuant to the ADR Procedures, and, notwithstanding the

12   completion of the ADR Procedures, they have failed to reach a settlement; or (ii) the entity

13   seeking relief from the injunction established by the Confirmation Order otherwise

14   establishes good cause not to follow the ADR Procedures under the circumstances of the

15   particular case.

16         **"Agent"** means Bank of Montreal, and its successors and assigns, as Agent for

17   the Lenders pursuant to the Prepetition Credit Agreement.

18         **"Allowed Administrative Claim"** means an Administrative Claim that is

19   allowed as set forth in Section II.B.1.

20         **"Allowed Claim" or "Allowed Interest"** means with respect to any of the

21   Debtors, as the case may be, a Claim or Interest, other than an Administrative Claim, to the

22   extent that:

23         (i)     Either:  (a) a proof of Claim or proof of Interest was timely Filed; or (b)

24   a proof of Claim or proof of Interest is deemed timely Filed either under Bankruptcy Rule

25   3003(b)(1)-(2) or by a Final Order; and

26         (ii)    Either:  (a) the Claim or Interest is not a Disputed Claim or a Disputed

27   Interest; or (b) the Claim or Interest is allowed either by a Final Order or under the Plan.

28         Unless otherwise specified in the Plan, an Allowed Claim does not include

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT __21__ PAGE _22_

1    interest on the Claim accruing after the Petition Date.  Moreover, any portion of a Claim that

2    is satisfied or released during the Reorganization Cases is not an Allowed Claim.

3          **"Avoidance Actions"** means any causes of action held by any of the Debtors

4    or the Estates arising out of Code sections 542, 544, 545, 547, 548, 549, 550, 551, and 553.

5          **"Ballot"** means the form of ballot approved by the Court for parties in interest

6    in the Reorganization Cases to cast votes and make appropriate elections under the Plan.

7          **"Bank Midwest Advance"** means the advance to Reorganized Fountain View

8    in the amount of $630,000 from the holder of the Class 1 Claim to be made within five days

9    after the Effective Date on the terms set forth in the Bank Midwest Stipulation.

10          **"Bank Midwest Amended and Restated Note"** means the amended and

11    restated promissory note made by the New Woodlands Entity in a principal amount equal to

12    (i) $4,927,126 (ii) Bank Midwest's reasonable legal fees and expenses in an amount not to

13    exceed $75,000, (iii) $630,000, and (iv) $1,206.13; payable in equal monthly installments of

14    principal and interest at 6% based on a 300-month (25-year) amortization schedule (and

15    monthly tax and insurance payments as required by the Deed of Trust Note held by the

16    holder of the Class 1 Claim) commencing on the Effective Date, but maturing in full on the

17    seventh anniversary of the Effective Date, and prepayable without premium or penalty at any

18    time, and otherwise, except as may hereafter be expressly agreed by the Debtors and the

19    holder of the Class 1 Claim, on the same terms as those of that certain Deed of Trust Note

20    dated March 6, 1985 as subsequently renewed, modified, extended and consolidated pursuant

21    to that certain Allonge thereto dated December 1, 1993.

22          **"Bank Midwest Deed of Trust"** means that certain Deed of Trust dated

23    December 1, 1993 assigned to Bank Midwest by instrument dated July 17, 2001 recorded in

24    the real property records of Montgomery County, Texas and constituting a first priority lien

25    against the real property associated with the long-term care facility known as the

26    "Woodlands" located in such county and owned and operated by the Debtors.

27          **"Bank Midwest Security Agreement"** means a new security agreement

28    between the holder of the Class 1 Claim and the New Woodlands Entity that, except as may

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT _1_ PAGE 23

60419_1 DOC

be expressly agreed otherwise by the Debtors and the holder of the Class 1 Claim, shall be on the same terms as that certain Security Agreement dated December 1, 1993 between Bank Midwest's predecessor in interest, the Secretary of Housing and Urban Development, and Woodlands Place Nursing Center, Inc., and that, when properly perfected, will constitute a first priority lien against the property subject to the Bank Midwest Security Agreement.

"**Bank Midwest Stipulation**" means that certain *Stipulation Regarding Treatment Of Bank Midwest Claim Under Debtors' Amended Joint Plan Of Reorganization* dated April 14, 2003 between Bank Midwest, N.A. and the Debtors and approved by Order of the Court on April 15, 2003.

"**Bankruptcy Code**" or "**Code**" means title 11 of the United States Code, as applicable in the Reorganization Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as applicable in the Reorganization Cases.

"**Bar Date**" means August 30, 2002 or such later date as fixed by the Court, pursuant to the Court's *Order (1) Establishing Procedures And Deadlines For Filing Proofs Of Claim And Interest; (2) Establishing Ramifications For Failure To Comply Therewith; And (3) Approving Form And Scope Of Notice Thereof* entered on the Court's official docket on June 5, 2002.

"**Bergen**" means AmerisourceBergen Drug Corporation, formerly known as Bergen-Brunswig Drug Company, the holder of the Class 6 Claim.

"**Bergen Note**" means the secured promissory note in the form filed with the Court on or before the Exhibit Filing Date issued to Bergen (or, if applicable, any transferee of Bergen holding the Class 6 Claim) by Reorganized Summit Care Pharmacy.

"**Business Assets**" means the rights, titles, interests, licenses, permits, and property (constituting substantially all the assets related to the operations of the Debtors' businesses) transferred or assigned to the Post-Effective Date Subsidiaries pursuant to the Corporate Restructuring Plan or retained by Reorganized Summit Care Pharmacy or the Other Reorganized Debtors.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 1  PAGE 24
4

1      "**Business Day**" means a day that is not a Saturday, Sunday, or legal holiday

2  (as such term is defined in Bankruptcy Rule 9006(a)).

3      "**Check-the-Box Election**" means an election made under Section 301.7701-3

4  of the Tax Code.

5      "**Claim**" means a claim as defined in Code section 101(5) against any Debtor

6  or any Estate.

7      "**Class**" means a group of Claims or Interests as classified under the Plan.

8      "**Class 10 Deferred Obligation**" means the secured obligation of Reorganized

9  Fountain View under the Plan in the principal amount equal to 60% of the Allowed Claim of

10  each holder of a Class 10 Allowed Claim electing payment option 10B who is not a

11  Continuing Creditor.

12      "**CMS Stipulation**" means that certain stipulation, resolving certain alleged

13  deficiencies cited in prepetition surveys conducted by the Texas Department of Human

14  Services, between the Center for Medicare and Medicaid Services of the United States

15  Department of Health and Human Services and Summit Care Texas, L.P. dated as of

16  September 9, 2002 and approved by the Court by Order entered on its official docket

17  October 7, 2002.

18      "**General Claim Holder Agency Agreement**" means the agency agreement

19  between Reorganized Fountain View and the Claims Agent (and such related documents as

20  are necessary to evidence and perfect the liens created to secure the Class 10 Deferred

21  Obligation, the Continuing Creditor Deferred Obligation and the Vendors' Lien under

22  otherwise applicable non-bankruptcy law) pursuant to which the Claims Agent shall be

23  authorized to enforce the Class 10 Deferred Obligation, the Continuing Creditor Deferred

24  Obligation and the Vendors' Lien, all such documents in a form to be submitted by the

25  Debtors in the Plan Supplement and reasonably acceptable to the Creditors' Committee.

26      "**Claims Agent**" means the agent under the General Claim Holder Agency

27  Agreement.

28      "**Committees**" means the Creditors' Committee and the Noteholders'

EXHIBIT _1_ PAGE 25
5

60419_1.DOC

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    Committee.

2    **"Confirmation Date"** means the date on which the Confirmation Order is

3    entered on the Court's official docket.

4    **"Confirmation Hearing"** means the hearing regarding Plan confirmation held

5    pursuant to Bankruptcy Code section 1128.

6    **"Confirmation Hearing Date"** means the first date on which the Court holds

7    the Confirmation Hearing.

8    **"Confirmation Order"** means the Court order under Code section 1129

9    confirming this Plan as it may be subsequently amended or modified.

10    **"Continuing Creditor"** means those holder of a Class 10 Claim designated on

11    Exhibit 13 to the Disclosure Statement or as may otherwise be specifically designated in

12    writing by the Debtors that have agreed to extend new credit in connection with providing

13    goods or services to the Reorganized Enterprise in an amount and on terms no less favorable

14    than the terms extended by such holder to the Debtors prior to the Petition Date or in an

15    amount and on terms otherwise acceptable to the Reorganized Enterprise.

16    **"Continuing Creditor Deferred Obligation"** means the secured obligation of

17    Reorganized Fountain View under the Plan in the principal amount equal to 35% of the

18    Allowed Claim of each holder of a Class 10 Allowed Claim electing payment option 10B

19    that is a Continuing Creditor.

20    **"Convenience Claims"** means Allowed Unsecured Claims, other than Claims

21    for principal and interest arising under the 11¼% Notes, that are either:  (i) less than or equal

22    to $1,000; or (ii) voluntarily compromised by the holder pursuant to the Convenience Class

23    Election.

24    **"Convenience Class Election"** means the timely election by the holder of an

25    Allowed Unsecured Claim (other than Claims arising under the 11¼% Notes) in excess of

26    $1,000 to receive $1,000 in cash on the Effective Date on account of all such holder's Class

27    10 Allowed Claims, in lieu of the treatment otherwise afforded Class 10 Claims, and in full

28    satisfaction thereof.  Notwithstanding the foregoing, any holder that makes the Convenience

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    Class Election but holds aggregate Allowed Class 10 Claims in excess of $1,250 will be

2    treated in Class 10 under payment option 10A as voting in favor of the Plan and will receive

3    cash equal to 80% of such holder's Allowed Claims without postpetition interest.

4    **"Corporate Restructuring Plan"** means the transactions pursuant to which

5    the Business Assets of the Debtors (other than those retained by Reorganized Summit Care

6    Pharmacy or the Other Reorganized Debtors) will be transferred to the Post-Effective Date

7    Subsidiaries pursuant to the Plan and the Corporate Restructuring Closing Documents.

8    **"Corporate Restructuring Closing Documents"** means the final

9    documentation for the Corporate Restructuring Plan to be Filed by the Debtors as part of the

10    Plan Supplement.

11    **"Court"** means the United States Bankruptcy Court for the Central District of

12    California or any other court that properly exercises jurisdiction over the Reorganization

13    Cases.

14    **"Creditors' Committee"** means the official committee of creditors holding

15    unsecured Claims (other than Claims arising under the 11¼% Notes) that the U.S. Trustee

16    appointed, pursuant to Bankruptcy Code section 1102, in the Reorganization Cases.

17    **"Cure Payments"** means amounts that Bankruptcy Code section 365(b)(1)

18    requires be paid in order for the Debtors to cure defaults under the executory contracts and

19    unexpired leases listed on the Schedule of Assumed or Assigned Agreements that will be

20    assumed or assigned under the Plan.

21    **"Debtor"** means any of the Debtors, individually, as the case may be.

22    **"Debtors"** means, collectively, Fountain View, Inc., a Delaware corporation;

23    Fountain View Holdings, Inc., a Delaware corporation; Fountain View Management, Inc., a

24    California corporation; Summit Care Corporation, a California corporation; Summit Care

25    Pharmacy, Inc., a California corporation; Summit Care Management Texas, Inc., a Texas

26    corporation; Summit Care Texas, L.P., a Texas limited partnership; Summit Care Texas

27    Equity, Inc., a California corporation; Summit Care Texas No. 2, Inc., a Texas corporation;

28    Summit Care Texas No. 3, Inc., a Texas corporation; Summit Care California, Inc., a

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 1 PAGE 27

1    California corporation; Elmcrest Convalescent Hospital, a California corporation; BIA Hotel

2    Corp., a California corporation; AIB Corp., a California corporation; Fountainview

3    Convalescent Hospital, a California corporation; Alexandria Convalescent Hospital, Inc., a

4    California corporation; Rio Hondo Nursing Center, a California corporation; Sycamore Park

5    Convalescent Hospital, a California corporation; Brier Oak Convalescent, Inc., a California

6    corporation; I. 'n O., Inc., a California corporation; Locomotion Therapy, Inc., a Delaware

7    corporation; Locomotion Holdings, Inc., a Delaware corporation; and On-Track Therapy

8    Center, Inc., a California corporation.

9         **"Debtors' Counsel"** means Klee, Tuchin, Bogdanoff & Stern LLP.

10         **"Disbursing Agent"** means Reorganized Fountain View or any entity or

11    entities employed by Reorganized Fountain View, in its sole discretion, to make

12    disbursements in accordance with the Plan; provided, however, that, with respect to Claims

13    for principal and interest arising under the 11¼% Notes, the Disbursing Agent means the

14    Indenture Trustee.

15         **"Disclosure Statement"** means the *Debtors' Disclosure Statement Dated*

16    *April 22, 2003*, as it may be amended, Filed in connection with the Plan.

17         **"Disputed Claim or Disputed Interest"** means a Claim or Interest:

18         (i)    As to which a proof of Claim is Filed or is deemed Filed under

19    Bankruptcy Rule 3003(b)(1) or a proof of Interest is Filed or is deemed Filed under

20    Bankruptcy Rule 3003(b)(2); and

21         (ii)    As to which: (a) an objection has been timely Filed and has not been

22    overruled by a Final Order or withdrawn; or (b) a Debtor has listed such Claim or Interest on

23    its Schedules as disputed, contingent, or unliquidated.

24         **"Distribution Date"** means the date, occurring on or as soon as reasonably

25    practicable (and in no event more than 30 days) after the Effective Date, on which the

26    Disbursing Agent first makes distributions to holders of Allowed Claims and Allowed

27    Interests under the Plan.

28         **"Effective Date"** means the first day that is a Business Day (i) that is at least

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 1   PAGE 28

1    eleven days after the Confirmation Date, (ii) on which no stay of the Confirmation Order is

2    in effect, and (iii) on which all of the conditions set forth in Section IV.O. below, have been

3    satisfied or waived in accordance with the Plan.

4    **"11¼% Notes"** means the 11¼% Senior Subordinated Notes due 2008 issued

5    by Fountain View, Inc. pursuant to that certain trust indenture dated April 16, 1998 between

6    State Street Bank & Trust, N.A. and Fountain View, Inc.  Claims for principal and interest

7    arising under the 11¼% Notes shall be Allowed Claims in an aggregate amount equal to

8    $133,012,500.

9    **"Estates"** means the estates created in the Reorganization Cases under Code

10   section 541.

11   **"Excess Cash Flow"** means the amount (based on annual audited results, not

12   projected cash flows) by which Reorganized Fountain View and the Post-Effective Date

13   Subsidiaries, on a consolidated basis, generate cash in excess of their reasonable operating,

14   financing, and investing needs (including, without limitation, scheduled amortization and

15   mandatory prepayment of the Class 10 Deferred Obligation and the Continuing Creditor

16   Deferred Obligation) to be determined in accordance with the terms of the indenture

17   governing the New Public Notes in a manner reasonably acceptable to the Debtors, the

18   Noteholders' Committee, and the lenders under the Exit Facility.

19   **"Exhibit Filing Date"** means the date that is the last Business Day that is at

20   least ten days prior to the Confirmation Hearing Date.

21   **"Existing Class A Common Stock"** means the 1,000,000 shares of Class A

22   Common Stock of Fountain View, Inc. issued and outstanding immediately prior to the

23   Effective Date.

24   **"Existing Class B Common Stock"** means the 114,202 shares of Class B

25   common stock of Fountain View, Inc. issued and outstanding immediately prior to the

26   Effective Date.

27   **"Existing Class C Common Stock"** means the 20,742 shares of Class C

28   common stock of Fountain View, Inc. issued and outstanding immediately prior to the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  Effective Date.

2        **"Existing Management Incentives"** means the options to purchase 23,793

3  shares of Existing Class C Common Stock issued to present and former directors, officers

4  and employees.

5        **"Existing Preferred Stock"** means the 15,000 shares of preferred stock of

6  Fountain View, Inc. issued and outstanding immediately prior to the Effective Date.

7        **"Existing Warrants"** means the warrants issued and outstanding immediately

8  prior to the Effective Date to purchase 50,377 shares of Existing Class C Common Stock at a

9  price of $.01 per share.

10        **"Exit Facility"** means the term loans and revolving loans and commitments to

11  be made to the Reorganized Enterprise pursuant to the Exit Facility Closing Documents and

12  Section IV.C as a condition to the occurrence of the Effective Date.   The liens and security

13  interests securing the Exit Facility shall be subject to prior liens and security interests

14  retained by the holders of Class 1, Class 2, Class 3, Class 4 and Class 7 Claims pursuant to

15  the Plan and contractually senior to the liens securing the Bergen Note, the Class 10 Deferred

16  Obligation, the New Public Notes, the Continuing Creditor Deferred Obligation, and the

17  Vendors' Lien.

18        **"Exit Facility Closing Documents"** means the final documentation

19  contemplated by the Exit Facility Commitment Letters evidencing and establishing the Exit

20  Facility in the form to be submitted by the Debtors in the Plan Supplement.

21        **"Exit Facility Commitment Letters"** means that certain commitment letter

22  dated March 6, 2003, as it may thereafter be amended, between CapitalSource Finance LLC,

23  Highbridge/Zwirn Opportunity Fund LP and the Debtors; and that certain commitment letter

24  dated March 7, 2003, as it may thereafter be amended, between Column Financial, Inc. (an

25  affiliate of Credit Suisse First Boston) and the Debtors.   The Exit Facility Commitment

26  Letters are attached as exhibits to the Disclosure Statement.

27        **"Filed"** means filed with the Court and reflected on the Court's official docket.

28        **"Final Order"** means an order or judgment of the Court entered on the Court's

EXHIBIT 1    PAGE 30

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

official docket:

(i)    that has not been reversed, rescinded, or stayed;

(ii)    that is in full force and effect; and

(iii)    with respect to which:  (a) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (b) any such appeal or petition has been dismissed, withdrawn, or resolved by the highest court to which the order or judgment was timely appealed, or from which review, rehearing, remand, or a *writ of certiorari* was timely sought.

**"Indenture Trustee"** means US Bank, N.A., in its capacity as successor indenture trustee for the 11¼% Notes pursuant to that certain trust indenture dated April 16, 1998 between State Street Bank & Trust, N.A. and Fountain View, Inc.

**"Initial Cash Payment"** means $50 million dollars plus an amount equal to the amount (if any) by which the Debtors' cash, cash equivalents, and undrawn revolving commitments on the Effective Date exceed $30 million after giving effect to all payments required by the Plan.

**"Interest"** means the interest, whether or not asserted, of any holder of an equity security of the Debtors as defined in Code section 101(17), including the Existing Class A Common Stock, the Existing Class B Common Stock, the Existing Class C Common Stock, Existing Warrants, and Existing Management Incentives.

**"Lenders"** means the Agent, and those parties for whom the Agent acts, to wit, the Bank of Montreal, BNP Paribas, ING Capital Advisors LLC, PB Capital Corp., Heller Financial Corp., General Electric Capital Corp., Golden Tree High Yield Opportunity Fund I and II, Pilgrim America Prime Rate Trust, and Credit Suisse First Boston, and their respective successors and assigns, as lenders under the Prepetition Credit Agreement.

**"New Class A Common Stock"** means the Class A Common Stock of Reorganized Fountain View to be issued and outstanding as of the Effective Date.

**"New Preferred Stock"** means the preferred stock of Reorganized Fountain

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1 DOC

EXHIBIT 1 L PAGE 31

1    View to be issued and outstanding as of the Effective Date.

2        **"New Public Notes"** means notes issued under the Plan to holders of Class 9

3    Allowed Claims by Reorganized Fountain View and guaranteed by Reorganized Summit

4    Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective Date Subsidiaries

5    (except for any special purpose entities formed for insurance coverage purposes) to the

6    extent permitted by the Exit Facility.

7        **"New Woodlands Entity"** means the Post-Effective Date Subsidiaries to be

8    formed under the Plan to own and operate the long-term care facility owned by Summit Care

9    Texas, L.P., located in Montgomery County, Texas and known as the "Woodlands."

10        **"Non-Ordinary Course Administrative Claims"** means Administrative

11    Claims that are not Ordinary Course Administrative Claims and include: (i) Professional Fee

12    Claims; (ii) Cure Payments; (iii) U.S. Trustee fees under 28 U.S.C. § 1930; (iv) the

13    reasonable trustee fees and expenses, and the reasonable attorneys' fees and expenses, of the

14    Indenture Trustee in the aggregate approximate amount of $125,000; and (v) any other Claim

15    arising after the Petition Date and before the Effective Date that is not an Ordinary Course

16    Administrative Claim.

17        **"Noteholders' Committee"** means the official committee of holders of the

18    11¼% Notes that the U.S. Trustee appointed, pursuant to Code section 1102, in the

19    Reorganization Cases.

20        **"Noteholder Prepayment Percentage"** means the ratio (expressed as a

21    percentage) of the cumulative aggregate principal prepayments made on account of the New

22    Public Notes to the aggregate principal amount of New Public Notes issued on the Effective

23    Date.

24        **"Noteholders' Stock"** or **"Noteholders' Stock Distribution"** means 58,642

25    shares of New Class A Common Stock issued to holders of Class 9 Allowed Claims by

26    Reorganized Fountain View.

27        **"Ordinary Course Administrative Claims"** means any Administrative Claim

28    arising from the provision of goods or services to the Debtors in the ordinary course of

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 1 PAGE 32

1    business of the Debtors and the provider of goods or services after the Petition Date and

2    before the Effective Date.

3         **"Other Existing Interests"** means, collectively, any Interests in any of the

4    Debtors including options, warrants, and any other rights to purchase or otherwise acquire

5    Interests, and any stock appreciation or similar rights, existing prior to the Effective Date,

6    other than the Existing Class A Common Stock, Existing Class B Common Stock, Existing

7    Class C Common Stock, Existing Preferred Stock, Existing Warrants, and Existing

8    Management Incentives.

9         **"Other Reorganized Debtors"** mean those Debtors, if any, other than

10    Reorganized Fountain View or Reorganized Summit Care Pharmacy that will not be

11    dissolved as of the Effective Date pursuant to the Corporate Restructuring Plan.

12         **"Other Secured Claims"** means any Secured Claim (including without

13    limitation the Secured Claims of personal property lessors), other than those Secured Claims

14    in Classes 1, 2, 3, 4, 5, 6 or 8.

15         **"Other Subordinated Claims"** means any Claim that is subject to

16    subordination to an Allowed Claim in Classes 9, 10 or 11, or Allowed Interest in any junior

17    class, whether by contract, by operation of law, or in accordance with equitable principles,

18    including by operation of Code sections 510 or 726, including without limitation any Claim

19    for punitive damages, fines or penalties, and including without limitation Claims under

20    Texas Revised Civil Statutes article 4590(i) section 11.02, Texas Civil Practice & Remedies

21    Code section 41.008, California Welfare & Institutions Code section 15657(a), California

22    Business & Professions Code section 17200, California Civil Code sections 3294 & 3345,

23    and California Civil Procedure Code section 1021.5, as well as any predecessor or successor

24    laws thereto, or any similar foreign, federal, or state law, regulation or common law, from

25    any jurisdiction, giving rise to any such Claim.

26         **"Petition Date"** means (i) October 2, 2001 for all of the Debtors other than

27    Summit Care Texas No. 3, Inc., Fountain View Management Inc., and On-Track Therapy,

28    Inc.; and (ii) November 28, 2001 for Summit Care Texas No. 3, Inc., Fountain View

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

1  Management Inc., and On-Track Therapy, Inc.

2  **"Plan"** means the *Debtors' Third Amended Joint Plan of Reorganization*

3  *Dated April 22, 2003,* as it may be subsequently modified or amended.

4  **"Plan Supplement"** means the forms of supporting documents necessary to

5  implement the terms of the Plan to be Filed by the Debtors on or before the Exhibit Filing

6  Date.

7  **"Post-Effective Date Subsidiaries"** means the directly and indirectly held

8  subsidiaries of Reorganized Fountain View to be formed and become the successors (by sale,

9  assignment, or merger) to the Business Assets not retained by Reorganized Summit Care

10  Pharmacy or any Other Reorganized Debtor pursuant to the Plan and Corporate

11  Restructuring Closing Documents.

12  **"Prepetition Credit Agreement"** means that certain Amended and Restated

13  Credit Agreement dated April 16, 1998, as amended from time to time, between the Debtors

14  and the Agent, as agent for the Lenders and any and all related documents, including all

15  documents related to security interests, liens and secured claims of the Agent and Lenders.

16  **"Prepetition Professional Liability Policies"** mean (i) policy number B

17  1999CN00002000 subscribed by Certain Underwriters at Lloyds, London, including but not

18  limited to St. Paul Syndicate Management Limited, American Re/Insurance Company and

19  Great Lakes Reinsurance Company UK, each a subsidiary of Munich Re; (ii) policy number

20  B2000CM00002004 subscribed by Certain Underwriters at Lloyds, London, including but

21  not limited to St. Paul Syndicate Management Limited, American Re/Insurance Company

22  and Great Lakes Reinsurance Company UK, each a subsidiary of Munich Re; (iii) policy

23  number BE 357-94-52 issued by American International Specialty Lines; (iv) policy number

24  BE 476-09-60 issued by American International Specialty Lines/AIU; (v) policy number

25  2004776 issued by Lexington Insurance Co./AIU; (vi) policy number P159392046 issued by

26  CNA Health Pro; and (vii) policy number UP012395 issued by US Risk.

27  **"Priority Claim"** means an Allowed Claim entitled to priority against any

28  Estate under Code section 507(a)(3), 507(a)(4), or 507(a)(6).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1           **"Priority Tax Claim"** means an Allowed Claim entitled to priority against

2    any Estate under Code section 507(a)(8).

3           **"Pro Rata"** means proportionately so that the ratio of (i) the amount of

4    consideration distributed on account of a particular Allowed Claim or Allowed Interest to (ii)

5    the Allowed Amount of the Allowed Claim or Allowed Interest, is the same as the ratio of

6    (a) the amount of consideration available for distribution on account of all the Allowed

7    Claims or Allowed Interests of the Class in which the particular Allowed Claim or Allowed

8    Interest is included to (b) the amount of all Allowed Claims or Allowed Interests of that

9    Class.

10          **"Professional Fee Claim"** means:

11          (a)    A Claim under Code sections 327, 328, 330, 331, 503, or 1103 for

12   compensation for professional services rendered or expenses incurred; or

13          (b)    A Claim either under Code section 503(b)(4) for compensation for

14   professional services rendered or under Code section 503(b)(3)(D) for expenses incurred in

15   making a substantial contribution to the Estates.

16          **"Record Date"** means April 15, 2003, which is the date by which the record

17   holders of the 11¼% Notes must be identified for purposes of the Plan.

18          **"Rejection Damage Claim"** means a Claim for rent, other obligations, or

19   damages arising under an unexpired real property or personal property lease or executory

20   contract rejected by any of the Debtors under Bankruptcy Code section 365.

21          **"Reorganization Case"** means any particular case commenced by a Debtor

22   under chapter 11 of the Code on the Petition Date and pending before the Court.

23          **"Reorganized Enterprise"** means Reorganized Fountain View, Reorganized

24   Summit Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective Date

25   Subsidiaries.

26          **"Reorganized Fountain View"** means Fountain View, Inc., after the Effective

27   Date as reorganized pursuant to the Plan and the Confirmation Order.

28          **"Reorganized Summit Care Pharmacy"** means Summit Care Pharmacy,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   Inc., after the Effective Date as reorganized pursuant to the Plan and the Confirmation Order.

2   **"Resident Agreements"** means agreements between one or more of the

3   Debtors and each of the patients and residents at their long-term care facilities defining the

4   terms of the services and stay, which include, inter alia, authorization (such as consents for

5   treatment) necessary for the Debtors to carry out their services and bill third-party payors as

6   well as defining the payment obligations of the patients and residents, including all

7   agreements relating to surety bonds issued in connection with resident trust accounts

8   pursuant to general agreements of indemnity, including those certain general agreements of

9   indemnity (Form F5556-11-2000) between Summit Care-California, Inc., Summit Care-

10  Texas, L.P. and Fountain View, Inc., on the one hand, and Western Surety Company, on the

11  other hand.

12  **"Schedule of Assumed or Assigned Agreements"** means the schedule, as it

13  may be subsequently amended, to be Filed with the Court and served on all affected non-

14  debtor parties of executory contracts and unexpired leases that: (i) have been or will be

15  assumed by Reorganized Fountain View; or (ii) have been or will be assumed and assigned

16  by one or more of the Debtors to one or more of the Post-Effective Date Subsidiaries.

17  **"Schedule of Rejected Agreements"** means the schedule, as it may be

18  subsequently amended, to be filed with the Court and served on all affected non-debtor

19  parties to the hearing on the Disclosure Statement, of executory contracts and unexpired

20  leases to be rejected by one or more of the Debtors as of the Effective Date.

21  **"Schedules"** means the schedules of assets and liabilities filed by the Debtors

22  pursuant to Code section 521(1), as amended.

23  **"SEC"** means the United States Securities and Exchange Commission.

24  **"Secured Claim"** means a Claim that is secured by a valid and unavoidable

25  lien against property in which an Estate has an interest or that is subject to setoff under Code

26  section 553. A Claim is a Secured Claim only to the extent of the value of the holder's

27  interest in an Estate's interest in the collateral securing the Claim or to the extent of the

28  amount subject to setoff, whichever is applicable, and as determined under Code section

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1 DOC

16   EXHIBIT 1   PAGE 36

1   506(a).

2         **"Secured Tax Claim"** means a Secured Claim of a governmental unit for the

3   payment of taxes.

4         **"Stockholders' Agreement"** means that certain Stockholders' Agreement

5   dated March 27, 1998 among the holders of the Existing Class A Common Stock, Existing

6   Class B Common Stock, Existing Class C Common Stock, and the Existing Preferred Stock,

7   as subsequently amended on May 4, 1998 and as it shall be amended as of the Effective Date

8   to provide, that: (i) the holders of the Noteholders' Stock Distribution shall be aggregated for

9   purposes of determining whether any of them is a "Qualified Stockholder" (capitalized terms

10   between quotation marks in this paragraph carry the meaning set forth in the Stockholders'

11   Agreement) and all such holders shall be deemed to be entitled to all the rights and subject to

12   all the obligations of a "Qualified Stockholder," under the Stockholders' Agreement; (ii) no

13   waiver, modification or amendment of the Stockholders' Agreement shall be valid or binding

14   on the holders of the Noteholders' Stock unless it is in writing and approved by a majority in

15   interest of the holders of the Noteholders' Stock if the effect of such waiver, modification or

16   agreement (A) differs in a material and adverse manner from the effect on "Heritage" or (B)

17   would eliminate any of the material rights of such holders of Noteholders' Stock provided in

18   the Stockholders' Agreement or create any material additional obligations for the holders of

19   Noteholders' Stock; (iii) the last sentence of section 7.11 of the Stockholders' Agreement

20   shall provide that any waiver, modification or amendment which requires any "Investor,"

21   "Management Stockholder" or holder of Noteholders' Stock to make additional cash

22   contributions shall require the consent of such "Investor," "Management Stockholder" or

23   holder of Noteholders' Stock; and (iv) notwithstanding anything else to the contrary in the

24   Stockholders Agreement no holder of Noteholders' Stock shall be entitled to receive any

25   report, securities filing or other information described in section 7.02 of the Stockholders'

26   Agreement except as otherwise provided in the indenture governing the New Public Notes or

27   exercise the right of inspection afforded to "Qualified Stockholders" under section 7.03 of

28   the Stockholders' Agreement.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1        **"Tax Code"** means the Internal Revenue Code of 1986, as amended, and any

2  regulations promulgated thereunder.

3        **"TDHS Settlement"** means that certain settlement agreement, resolving

4  certain alleged deficiencies cited in prepetition surveys conducted by the Texas Department

5  of Human Services, between Summit Care Texas, L.P. and the Texas Department of Human

6  Services dated as of April 14, 2003.

7        **"Treasury Regulations"** means regulations promulgated under the Tax Code

8  by the United States Treasury Department.

9        **"Union Bank Extension Agreement"** means that certain First Amendment to

10  Extension and Modification Agreement and Modification of Deed of Trust to be entered into

11  between Union Bank of California, N.A. and the Debtors in the form filed with the Plan

12  Supplement and effective upon the occurrence of the Effective Date.

13        **"Unsecured Claim"** means a Claim that is not an Administrative Claim, an

14  Administrative Tax Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, a

15  Secured Tax Claim, or an Other Subordinated Claim.

16        **"U.S. Trustee"** means the Office of the United States Trustee.

17        **"Vendors' Lien"** means a junior lien in (i) the Debtors' real property leases,

18  and (ii) the Business Assets of the Reorganized Enterprise's pharmacy and therapy

19  businesses in favor of Continuing Creditors, securing extensions of credit by Continuing

20  Creditors in connection with the provision of goods or services to the Reorganized Enterprise

21  in an aggregate amount not to exceed $8 million, in all cases limited to the extent required by

22  the Exit Facility, such liens to be expressly subordinate to the Exit Facility, on terms

23  reasonably acceptable to the Exit Facility lenders, subject to any prior valid and enforceable

24  liens in such assets including those liens securing the Bergen Note and of equal rank with the

25  liens securing the Class 10 Deferred Obligation, the Continuing Creditor Deferred

26  Obligation, and the New Public Notes; provided, however, that the Vendors' Lien shall be

27  subject to the same "basket" and release provisions as the lien securing the New Public

28  Notes.   The Vendors' Lien shall be administered by the Claims Agent pursuant to the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   General Claim Holder Agency Agreement between the Debtors and the Claims Agent.  The

2   Vendors' Lien will expire on the date 18 months following the Effective Date unless there is

3   a then-existing default in payment of the Continuing Creditor Deferred Obligation or other

4   extension of maturity in which case the Vendors' Lien will continue in force until such

5   defaults are cured or the obligation satisfied.

6   **"Woodlands Place Deed of Trust"** means a new deed of trust between the

7   holder of the Class 2 Claim and the New Woodlands Entity that, except as may be expressly

8   agreed otherwise by the Debtors and the holder of the Class 2 Claim in accordance with the

9   Woodlands Place Stipulation, shall be on the same terms as the Bank Midwest Deed of Trust

10  provided however that such lien when properly perfected, will be junior to the lien of the

11  Bank Midwest Deed of Trust and shall constitute a second priority lien against the property

12  subject to the Bank Midwest Deed of Trust.

13  **"Woodlands Place Note"** means the secured promissory note in the form filed

14  with the Court on or before the Exhibit Filing Date issued (i) to the holder of the Class 2

15  Claim; (ii) by the New Woodlands Entity; (iii) in a principal amount equal to $1,887,866.62

16  less the sum of all adequate protection payments received by the holder of the Class 2 Claim

17  after June 6, 2003; (iv) bearing interest on the unpaid principal balance from and after

18  December 1, 2003 at the rate of 9% per annum; (v) with principal and interest being payable

19  monthly in arrears based on a 15-year amortization schedule commencing on the Effective

20  Date; provided, however, that no interest shall be paid or accrued prior to December 1, 2003

21  and 100% of all monthly payments made prior to December 1, 2003 shall be credited entirely

22  to principal and shall accordingly reduce the final payment due on maturity of the

23  Woodlands Place Note; (v) shall mature in full upon the earlier of (y) the seventh

24  anniversary of the Effective Date; or (z) the sale or other disposition of the Woodlands or the

25  New Woodlands Entity to any person ("Subsequent Transferee") that is not at least 80%

26  owned or controlled directly or indirectly by Fountain View, Inc., unless the net worth of the

27  Subsequent Transferee (or if the Subsequent Transferee is part of a consolidated group of

28  affiliated entities, the net worth of the Subsequent Transferee's consolidated group), as

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

19   EXHIBIT \_\_\_ PAGE 29

1    represented on its balance sheet, prepared in accordance with generally accepted accounting

2    standards and provided to the holder of the Woodlands Place Note at least 15 days prior to

3    the closing date of the transfer, is not less than that of the Reorganized Debtors on a

4    consolidated basis as of the Effective Date, (vi) shall be prepayable without premium or

5    penalty at any time and (vii) provide that the liens securing the Woodlands Place Note shall

6    be subordinate to those of the holder of the Bank Midwest Amended and Restated Note

7    (which, for the avoidance of doubt shall have been amended and restated to provide for, inter

8    alia, repayment of the Bank Midwest Advance).

9            **"Woodlands Place Security Agreement"** means a new security agreement

10   between the holder of the Class 2 Claim and the New Woodlands Entity that, except as may

11   be expressly agreed otherwise by the Debtors and the holder of the Class 2 Claim in

12   accordance with the Woodlands Place Stipulation, shall be on the same terms as the Bank

13   Midwest Security Agreement provided however that such lien when properly perfected, will

14   be junior to the lien of the Bank Midwest Security Agreement and will constitute a second

15   priority lien against the property subject to the Bank Midwest Security Agreement.

16           **"Woodlands Place Stipulation"** means that certain Stipulation Regarding

17   Treatment Of Woodlands Place Nursing Center L.P. Claim Under Debtors' Joint Plan Of

18   Reorganization dated June 9, 2003 between Woodlands Place Nursing Center L.P. and Filed

19   with the Court.

20       **B.**    **Rules of Construction.**

21           1.    The rules of construction in Code section 102 apply to this Plan.

22           2.    Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a)

23   applies when computing any time period under the Plan.

24           3.    A term that is used in this Plan and that is not defined in this Plan has

25   the meaning attributed to that term, if any, in the Code or the Bankruptcy Rules.

26           4.    The definition given to any term or provision in the Plan supersedes and

27   controls any different meaning that may be given to that term or provision in the Disclosure

28   Statement.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT __1__ PAGE __40__

5.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

7.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.      Unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

9.      Unless otherwise specified, all references to Sections or Exhibits are references to this Plan's Sections or Exhibits.

10.      Section captions and headings are used only as convenient references and do not affect this Plan's meaning.

11.      The words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to only a particular portion hereof.

## II.

## DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS

### A.      Summary of Classification of Claims.

This Section classifies Claims—except for Administrative Claims, Priority Claims, and Priority Tax Claims, which are not classified—for all purposes, including voting, confirmation, and distribution under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, that part of the Claim or Interest is classified in that different Class. The following table summarizes the Classes of Claims and Interests under this Plan.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| None | Administrative Claims, Priority Claims and Priority Tax Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

| Class 1 | Secured Claims of Bank Midwest (The Woodlands, TX) | Impaired | Entitled to Vote |
|---------|---------------------------------------------------|----------|------------------|
| Class 2 | Secured Claims of Woodlands Place Nursing Center, L.P. (The Woodlands, TX) | Impaired | Entitled to Vote |
| Class 3 | Secured Tax Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 4 | Secured Claims of Union Bank of California, N.A. | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 5 | Secured Claim of Leonard and Catherine May | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 6 | Secured Claims of Bergen | Impaired | Entitled to Vote |
| Class 7 | Other Secured Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 8 | Secured Claims of the Agent and the Lenders | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 9 | 11¼% Note Claims | Impaired | Entitled to Vote |
| Class 10 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 11 | Convenience Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 12 | Insured Professional Liability Claims | Impaired | Entitled to Vote |
| Class 13 | Uninsured Punitive Damage Claims and Other Subordinated Liabilities | Impaired | Entitled to Vote |
| Class 14 | Existing Preferred Stock | Impaired | Entitled to Vote |
| Class 15 | Existing Class A Common Stock | Impaired | Entitled to Vote |
| Class 16 | Existing Class B Common Stock | Impaired | Deemed to Reject – Vote Not Solicited |
| Class 17 | Existing Class C Common Stock | Impaired | Entitled to Vote |
| Class 18 | Existing Warrants | Impaired | Entitled to Vote |
| Class 19 | Existing Management Incentives and Other Existing Interests | Impaired | Deemed to Reject – Vote Not Solicited |

**Notwithstanding anything to the contrary herein, no distributions will be**

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33rd FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

made and no rights will be retained on account of any Claim (or Interest) that is not an Allowed Claim (or Allowed Interest).

The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each entity holding a Claim or an Interest may have in or against any Debtor, any Estate, or their respective property. This treatment supercedes and replaces any agreements or rights those entities have in or against any Debtor, any Estate, the Reorganized Enterprise, or their respective property. Except as otherwise specifically provided herein, all distributions under the Plan will be tendered to the entity holding the Allowed Claim or Allowed Interest.

**B.    Allowance and Treatment of Unclassified Claims (Administrative Claims, Priority Tax Claims, and Priority Claims).**

Entities that hold Administrative Claims other than Ordinary Course Administrative Claims and that do not timely file and serve a proof of Claim or a motion seeking payment in accordance with this Section are forever barred from asserting those Administrative Claims against the Debtors, the Estates, the Reorganized Enterprise, or their respective property.

**1.    Administrative Claims.**

**Allowance of Ordinary Course Administrative Claims:** An entity holding an Ordinary Course Administrative Claim may, but need not, File a request for payment of its Claim. The Debtors or the Reorganized Enterprise may File an objection to an Ordinary Course Administrative Claim in their discretion. Unless the Debtors object to an Ordinary Course Administrative Claim, such Claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Claim.

**Allowance of Cure Payments:** Cure Payments shall be allowed in accordance with the procedures set forth in Section III.A of the Plan.

**Allowance of Non-Ordinary Course Administrative Claims (other than Professional Fee Claims and Cure Payments):** Unless the Debtors or the Reorganized Enterprise otherwise agree or as otherwise expressly provided herein, Non-Ordinary Course

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT ___ PAGE 43

1   Administrative Claims other than Professional Fee Claims will be allowed <u>only</u> if:

2         (i)    On or before the sixtieth day after the Effective Date, the entity holding

3                 the Non-Ordinary Course Administrative Claim Files a request for

4                 payment of its Claim and serves the request on the Debtors' Counsel, the

5                 U.S. Trustee, and counsel for the Committees; and

6         (ii)   The Court allows the Claim by Final Order.

7        The Reorganized Enterprise or any other party in interest may File an objection

8   to such request for payment within the time provided by the Bankruptcy Rules or within any

9   other period that the Court establishes.   **Entities holding Non-Ordinary Course**

10   **Administrative Claims that do not timely File and serve a request for payment will be**

11   **forever barred from asserting those Claims against the Debtors, the Estates, the**

12   **Reorganized Enterprise, or their respective property.**

13        <u>**Allowance of Professional Fee Claims**</u>:   A Professional Fee Claim will be

14   allowed <u>only</u> if:

15         (i)    On or before the sixtieth day after the Effective Date, the entity holding

16                 the Professional Fee Claim both Files with the Court a final fee

17                 application or a motion requesting allowance and payment of the fees

18                 and serves the application or motion on the Debtors' Counsel, the U.S.

19                 Trustee, and counsel to the Committees; and

20         (ii)   The Court allows the Claim.

21        The Reorganized Enterprise or any other party in interest may File an objection

22   to such application or motion within the time provided by the Bankruptcy Rules or within

23   any other period that the Court establishes.   **Entities holding Professional Fee Claims who**

24   **do not timely File and serve a fee application or motion for allowance and payment will**

25   **be forever barred from asserting those Claims against the Debtors, the Estates, the**

26   **Reorganized Enterprise, or their respective property.**

27        <u>**Treatment of Allowed Ordinary Course Administrative Claims**</u>:   Unless

28   the entity holding an Allowed Ordinary Course Administrative Claim and the Debtors agree

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  otherwise, the Claim will be paid by the Disbursing Agent in accordance with the terms and

2  conditions of the particular transaction that gave rise to the Claim.

3  **Treatment of Allowed Non-Ordinary Course Administrative Claims:**

4  (i) Professional Fee Claims – Unless the entity holding a Professional Fee

5  Claim allowed by the Court agrees to different treatment, the Disbursing Agent will pay to

6  that entity cash in the full amount of the Professional Fee Claim, without interest, within five

7  days after the date on which the Court allows such Claim.

8  (ii) Cure Payments – Cure Payments will be made to the non-debtor parties to

9  the executory contracts or unexpired leases set forth on the Schedule of Assumed or

10  Assigned Agreements, in accordance with Section III.A.2 of the Plan.

11  (iii) U.S. Trustee fees under 28 U.S.C. § 1930 – The Disbursing Agent will pay

12  to the U.S. Trustee all fees due and owing under 28 U.S.C. § 1930 in cash on the Effective

13  Date.

14  (iv) Indenture Trustee's Fees and Expenses and Indenture Trustee's Attorneys'

15  Fees and Expenses.  The Disbursing Agent will pay the reasonable trustee fees and expenses

16  and the reasonable attorneys' fees and expenses of the Indenture Trustee in the aggregate

17  approximate amount of $125,000, without interest, on or before the later of: (i) 30 days after

18  the Effective Date; or (ii) 30 days after the date (I) on which Reorganized Fountain View

19  receives from the Indenture Trustee a reasonably detailed itemized statement of the trustee

20  fees and expenses and attorneys' fees and expenses it has incurred in connection with acting

21  as Indenture Trustee so long as Reorganized Fountain View does not, within such 30 day

22  period, give written notice to the Indenture Trustee that it disputes the reasonableness of such

23  fees and expenses or any part thereof, or (II)  the Claim of the Indenture Trustee for

24  reimbursement of its reasonable trustee fees and expenses and its reasonable attorneys' fees

25  and expenses becomes an Allowed Claim.   If Reorganized Fountain View gives the

26  Indenture Trustee timely written notice that it disputes the reasonableness of the trustee fees

27  and expenses or the attorneys' fees and expenses, or any part thereof, for which the Indenture

28  Trustee seeks reimbursement, the amount of the Allowed Claim on account of such fees and

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   expenses shall be determined by the Court as if such Claim were a Professional Fee Claim.

2   (v) <u>Other Non-Ordinary Course Administrative Claims</u> – Unless the entity

3   holding an Allowed Non-Ordinary Course Administrative Claim (other than a Professional

4   Fee Claim, Cure Payment, Indenture Trustee fee Claim, or U.S. Trustee fee Claim) and the

5   Debtors agree otherwise, the Disbursing Agent will pay to that entity cash in the Allowed

6   Claim's full amount, without interest, on or before the latest of: (a) 30 days after the

7   Effective Date; (b) 30 days after the date on which the Non-Ordinary Course Administrative

8   Claim becomes an Allowed Claim; or (c) the date on which the Allowed Claim becomes due

9   and payable in accordance with its terms.

10   **2.    Priority Claims.**

11   **Treatment of Priority Claims:**  Unless the entity holding an Allowed Priority

12   Claim and the Debtors agree otherwise, the Disbursing Agent will pay to that entity cash in

13   the full amount of the Allowed Priority Claims, without interest, on or before the latest of:

14   (i) the Distribution Date; (ii) 30 days after the date on which the Priority Claim becomes an

15   Allowed Priority Claim; or (iii) the date on which the Allowed Priority Claim becomes due

16   and payable in accordance with its terms.

17   **Treatment of Priority Tax Claims:**  Unless the entity holding an Allowed

18   Priority Tax Claim and the Debtors agree otherwise, the Disbursing Agent will pay to that

19   entity the amount of its Allowed Priority Tax Claim, together with interest from the Petition

20   Date to the date of payment calculated at the federal judgment rate as of the Petition Date, on

21   the latest of (i) the Distribution Date; (ii) 30 days after the date such Priority Tax Claim

22   becomes an Allowed Claim; or (iii) the date on which the Allowed Priority Tax Claim

23   becomes due and payable in accordance with its terms.

24   **C.    Classification and Treatment of Secured Claims (Classes 1, 2, 3, 4, 5, 6, 7,**

25   **& 8).**

26   **1.    Class 1 (Bank Midwest—Impaired).**

27   **Classification:**  Class 1 consists of all Claims held by Bank Midwest, N.A. as

28   assignee and successor in interest to the Secretary of Housing and Urban Development,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   pursuant to that certain Deed of Trust Note dated as of March 6, 1985 as renewed, modified,

2   extended and consolidated pursuant to that certain Allonge thereto dated as of December 1,

3   1993, and all documents collateral thereto.

4     **Treatment:** Unless the holder of the Class 1 Claim agrees to other treatment,

5   on or as soon as reasonably practicable after the Effective Date, in accordance with the terms

6   of the Bank Midwest Stipulation (which are incorporated by reference herein and thereby

7   made a part of the Plan), the holder of the Class 1 Claim shall make the Bank Midwest

8   Advance and shall receive the Bank Midwest Amended and Restated Note which shall be

9   secured by the Bank Midwest Deed of Trust and the Bank Midwest Security Agreement.

10    2. **Class 2 (Woodlands Place Nursing Center, L.P.—Impaired)**

11    **Classification:** Class 2 consists of all Claims of Woodlands Place Nursing

12  Center, L.P., and any successor thereto, on account of that certain Agreement of Purchase

13  and Sale of Assets dated November 6, 1993 between Woodlands Place Nursing Center, Inc.

14  and Summit Care Texas No. 3, Inc. and that certain Note dated as of December 1, 1993

15  which are secured pursuant to that certain Warranty Deed With Vendor's Lien dated as of

16  December 1, 1993 and recorded as instrument No. 9404875 in the Public Records of

17  Montgomery County, Texas and any other documents ancillary thereto.

18    **Treatment:** Unless the holder of the Class 2 Claim agrees to other treatment,

19  in accordance with the terms of the Woodlands Place Stipulation (which are incorporated by

20  reference herein and thereby made a part of the Plan), the holder of the Class 2 Claim shall

21  receive (i) reimbursement for its as yet unreimbursed actual, reasonable legal fees and

22  expenses in an amount not to exceed $35,000 (a) upon the Effective Date if the amount of

23  such fees and expenses is not then disputed in good faith by the Debtors, or (b) if the amount

24  of the reasonable actual legal fees and expenses is disputed in good faith by the Debtors,

25  upon the resolution by Final Order of such dispute; and (ii) as soon as reasonably practicable

26  after the Effective Date, the Woodlands Place Note and shall, as security for the payment of

27  the obligations thereunder, receive the Woodlands Place Deed of Trust and the Woodlands

28  Place Security Agreement.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT __1__ PAGE 47

60419_1 DOC

1        3.    **Class 3 (Secured Tax Claims—Unimpaired).**

2        **Classification:** Class 3 consists of the Secured Tax Claims.

3        **Treatment:** Unless the holder of an Allowed Class 3 Claim agrees to other

4    treatment, the Disbursing Agent shall pay to such holder cash in the allowed amount of such

5    holder's Class 3 Allowed Claim on the latest of (i) as soon as reasonably practicable after the

6    Effective Date; (ii) 30 days after the date on which the Secured Tax Claim becomes an

7    Allowed Secured Tax Claim; or (ii) the date such Allowed Secured Tax Claim becomes due

8    and payable in accordance with its terms.

9        4.    **Class 4 (Union Bank of California—Unimpaired).**

10        **Classification:** Class 4 consists of the Claims of Union Bank of California,

11    N.A. under that certain Amended and Restated Commercial Promissory Note dated as of

12    April 1, 2001 which are secured, pursuant to that certain Extension and Modification

13    Agreement and Modification of Deed of Trust dated April 1, 2001, in the real property and

14    personal property affixed thereto located at 730 North Frederick Street and 2600 West

15    Magnolia Boulevard, Burbank, California, as such obligations shall be further modified and

16    extended pursuant to the Union Bank Extension Agreement.

17        **Treatment:** Unless the holder of the Class 4 Claim agrees to other treatment,

18    on or as soon as reasonably practicable after the Effective Date, Reorganized Fountain View

19    shall (i) cure any default, other than a default of a kind specified in Bankruptcy Code section

20    365(b)(2), with respect to such holder's Allowed Class 4 Claim, without recognition of any

21    default rate of interest or similar penalty or charge, and upon such cure, no default shall

22    exist; (ii) reinstate the maturity of such Allowed Class 4 Claim as the maturity existed before

23    any default, without recognition of any default rate of interest or similar penalty or charge;

24    and (iii) leave unaltered all other legal, equitable, and contractual rights of such holder with

25    respect to such Allowed Class 4 Claim as such obligations shall be further modified by the

26    Union Bank Extension Agreement. Notwithstanding the foregoing, the Confirmation Order

27    shall constitute an order of the Court authorizing the sale of the property securing the Class 4

28    Claim free and clear of the liens of the holder of the Class 4 Claim in accordance with

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

EXHIBIT __1__ PAGE 48

1    sections 363, 1123 and 1129 of the Bankruptcy Code, and all applicable Bankruptcy Rules,

2    provided, however, that concurrently with any such sale the Class 4 Claim is satisfied by the

3    payment from the proceeds of any such sale to the holder of the Class 4 Claim of cash in an

4    amount equal to Allowed Class 4 Claim.

5         **5.**     **Class 5 (Leonard and Catherine May—Unimpaired).**

6    **Classification:** Class 5 consists of all Claims of Leonard and Catherine May.

7    **Treatment:** The holders of the Class 5 Claim shall receive in full satisfaction

8    of the Class 5 Allowed Claim cash in the amount of the Class 5 Allowed Claim (after

9    crediting all adequate protection payments made by the Debtors) without recognition of any

10    default rate of interest or similar penalty or charge.

11         **6.**     **Class 6 (Bergen—Impaired).**

12    **Classification:** Class 6 consists of all Claims of Bergen, and any affiliates or

13    successors thereto, secured by that certain Security Agreement dated March 29, 2001

14    between Bergen and Summit Care Pharmacy, Inc.

15    **Treatment:** The holder of the Class 6 Claims shall receive (i) cash in an

16    amount equal to forty percent of (a) $1,710,562.10 plus interest thereon from the Petition

17    Date to the Effective Date at the rate of 9½% per annum, and (b) Bergen's reasonable, actual

18    attorneys' fees and expenses incurred in connection with the Reorganization Cases not to

19    exceed $40,000; and (ii) the Bergen Note issued to (a) Bergen (or, if applicable, any

20    transferee of Bergen holding the Class 6 Claim), (b) by Reorganized Summit Care

21    Pharmacy, (c) in a principal amount equal to sixty percent of (x) $1,710,562.10 plus interest

22    thereon from the Petition Date to the Effective Date at the rate of 9½% per annum, and (y)

23    Bergen's reasonable, actual attorneys' fees and expenses incurred in connection with the

24    Reorganization Cases not to exceed $40,000, (d) bearing interest from and after the Effective

25    Date at the rate of 9½% per annum, (e) with interest only being payable in arrears for the

26    first six monthly payments following the Effective Date, and, thereafter, with principal and

27    interest being payable monthly in arrears and fully amortizing over the following eighteen

28    months, and (f) with a final maturity date of the second anniversary of the Effective Date;

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

29

EXHIBIT 1 PAGE 49

1  provided, however, that the Bergen Note may be prepaid in part or in whole at any time

2  without penalty or premium.

3          The Bergen Note shall be secured by a lien in all property of Reorganized

4  Summit Care Pharmacy of the same nature and type as that previously securing the Class 6

5  Claim other than the accounts receivable of Reorganized Summit Care Pharmacy which

6  accounts shall not be subject to any lien securing the obligations under the Bergen Note.  The

7  liens securing the Bergen Note shall be (i) expressly subordinated to the Exit Facility on

8  terms reasonably acceptable to the Exit Facility lenders; and (ii) senior to all other liens in

9  the property of Reorganized Summit Care Pharmacy subject to the liens securing the Bergen

10 Note, including the liens securing the New Public Notes, the Class 10 Deferred Obligation,

11 the Continuing Creditor Deferred Obligation, and the Vendors' Lien.

12          **7.    Class 7 (Other Secured Claims Including Personal Property**

13                  **Lessors—Unimpaired).**

14          **Classification:**  Class 7 consists of all Other Secured Claims including the

15 Claims of personal property lessors.

16          **Treatment:**  Unless the holder of the Class 7 Claim agrees to other treatment,

17 on or as soon as reasonably practicable after the Effective Date, the Reorganized Enterprise

18 shall at its option either (i) pay to such holder cash in the allowed amount of such holder's

19 Allowed Class 7 Claim plus interest calculated at 2.49%[1] per annum from the Petition Date

20 through the date of payment on the later of (a) as soon as reasonably practicable after the

21 Effective Date, or (b) 30 days after the date on which the Other Secured Claim becomes an

22 Allowed Other Secured Claim; (ii) abandon the collateral securing such Class 7 Claim; or

23 (iii) (a) cure any default, other than a default of a kind specified in Bankruptcy Code section

24 365(b)(2), with respect to such holder's Allowed Class 7 Claim, without recognition of any

25 default rate of interest or similar penalty or charge, and upon such cure, no default shall

26 exist, (b) reinstate the maturity of such Allowed Class 7 Claim as the maturity existed before

27

28 [1] 2.49% is the federal judgment rate of interest as of October 2, 2001, the Petition Date for Fountain View, Inc. and 19 of
its direct and indirect subsidiaries.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    any default, without recognition of any default rate of interest or similar penalty or charge,

2    and (c) leave unaltered all other legal, equitable, and contractual rights of such holder with

3    respect to such Allowed Class 7 Claim. Any defenses, counterclaims, rights of offset, or

4    recoupment of the Debtors, the Estates, or the Reorganized Enterprise with respect to such

5    Claims shall vest in and inure to the benefit of the Reorganized Enterprise.

6           **8.    Class 8 (Agent and Lenders—Unimpaired).**

7           **Classification:**  Class 8 consists of the Secured Claims of the Agent and the

8    Lenders.

9           **Treatment:**   The Disbursing Agent (i) shall pay to the Agent cash in an

10    amount equal to the aggregate amount of all Class 8 Allowed Claims on the Effective Date

11    (which shall include outstanding principal as of the Petition Date, plus interest as determined

12    under the terms of the Prepetition Credit Agreement, plus all fees and expenses and costs of

13    the Agent pursuant to the terms of the Prepetition Credit Agreement, less all adequate

14    protection payments, all supplemental adequate protection payments, and all expense

15    reimbursements pursuant to cash collateral orders); and (ii) shall, with respect to each

16    outstanding letter of credit issued by any of the Lenders for the account of any of the

17    Debtors, at the Debtors' option, either (a) cause such letter of credit to be released undrawn

18    by the beneficiary thereof, or (b) cash collateralize the reimbursement obligation under such

19    letter of credit in an amount equal to 110% of the then outstanding contingent obligation

20    under such letter of credit.

21           All Claims, liens, and security interests of the Agent and the Lenders under the

22    Prepetition Credit Agreement, as well as any rights held by the Agent and the Lenders

23    pursuant to any subordination agreement, including, without limitation, the subordination

24    provisions of the Indenture, shall be extinguished upon the satisfaction in full of the Class 8

25    Allowed Claims as set forth in this Section II.C.8.

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

31

EXHIBIT 1  PAGE 51

**D.    Classification and Treatment of Unsecured Claims (Classes 9, 10, 11, & 12).**

1.    **Class 9 (11¼% Notes—Impaired).**

**Classification:**  Class 9 consists of the 11¼% Notes.

**Treatment:**  All Class 9 Claims shall be satisfied by the distribution as soon as reasonably practicable after the Effective Date, but in no event later than 10 days after the Effective Date, to the Indenture Trustee, who shall act as the Disbursing Agent for Class 9 and shall distribute to the holders of the 11¼% Notes, as of the Record Date, Pro Rata:

        a. The Initial Cash Payment;

        b. The Noteholders' Stock Distribution; and

        c. The New Public Notes.

        Upon completion of all of its obligations as the Class 9 Disbursing Agent under the Plan, the Indenture Trustee shall be irrevocably released from all of its obligations under that certain indenture dated April 16, 1998 between the Indenture Trustee and Fountain View, Inc.  On the Effective Date, such indenture shall be deemed terminated, and the liens granted to secure the obligations under such indenture shall be deemed to be discharged.

        The Confirmation Order shall provide that each record holder of Noteholders' Stock shall be entitled to all the rights and shall be subject to all the obligations otherwise applicable under the Stockholders' Agreement to "Qualified Stockholders" as such term is defined therein.  Fractional shares of New Class A Common Stock will not be issued. Holders of Class 9 Allowed Claims entitled to a fractional share distribution of New Class A Common Stock out of the Noteholders' Stock Distribution equal to or greater than one-half of a share of New Class A Common Stock shall receive one whole share of New Class A Common Stock.  No distribution shall be made on account of fractional entitlements of less than one-half of a share of New Class A Common Stock.

        The New Public Notes shall be issued pursuant to a qualified trust indenture, in the form submitted by the Debtors in the Plan Supplement, in an aggregate principal amount equal to (i) $133,012,500, plus (ii) postpetition interest on $133,012,500 from the Petition

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    Date to the Effective Date of the Plan at the rate of 9½% per annum, less (iii) the Initial Cash

2    Payment. The Debtors will use reasonable best efforts to have the New Public Notes rated

3    by Standard & Poors Corp. and Moody's Investors Service as soon as reasonably practicable,

4    but, in any event, within three months of the Effective Date. The indenture governing the

5    New Public Notes shall include provisions incorporating the following terms and conditions:

6            Maturity Date: A maturity date one Business Day after the date on which the

7    final principal payment on the Exit Facility is due, but in no event beyond the sixth

8    anniversary of the Effective Date.

9            Lien: A junior lien to secure the New Public Notes in (i) the Debtors' real

10    property leases, and (ii) the Business Assets of the Reorganized Enterprise's pharmacy and

11    therapy businesses, in all cases limited to the extent required by the Exit Facility, such liens

12    to be expressly subordinate to the Exit Facility, subject to any prior valid and enforceable

13    liens in such assets including those liens securing the Bergen Note and of equal rank with the

14    liens securing the Class 10 Deferred Obligation, the Continuing Creditor Deferred

15    Obligation, and the Vendors' Lien; provided, however, that the New Public Notes shall

16    contain "basket" and release provisions[2] in connection with such liens as may be customary

17    in high-yield public trust indentures and to be negotiated in good faith and reasonably

18    acceptable to the Debtors and the Noteholders' Committee.

19            Covenants: The indenture shall contain such covenants as are customary in

20    high-yield public trust indentures and agreed upon in good faith by the Debtors and the

21    Noteholders' Committee; provided, however, that the indenture will contain: (i) limitations

22    on restricted payments (including a prohibition on dividends and distributions to

23    shareholders, management fees (other than reimbursement of actual out of pocket expenses

24    and, to the extent consistent with past practice, allocated expenses, which have historically

25    averaged approximately $200,000 per year), stock repurchases, non-mandatory payments on

26

27    _____

[2] "Basket and release provisions" permit limited substitution of collateral and sales free and clear of liens with respect to

28    property pledged as a pool to support a secured obligation. Such provisions are customary in secured public trust
indentures given the difficulty of obtaining transaction specific lien releases from the dispersed holders of public debt.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    account of debt subordinated to the New Public Notes, and investments other than

2    investments permitted by the terms of the indenture governing the New Public Notes); and

3    (ii) restrictive covenants regarding (a) debt incurrence (subject to tests and exceptions

4    contained in the indenture), and (b) use of asset sale proceeds; provided, further, however,

5    that any covenants in the indenture may be waived, amended, or modified with the consent

6    of the holders of 60% in interest of the New Public Notes.  So long as any New Public Notes

7    remain outstanding, Reorganized Fountain View will furnish to the indenture trustee for

8    distribution to the holders of the New Public Notes, and file with the SEC (unless such filing

9    will not be accepted) and otherwise make such information available to securities analysts

10    and prospective investors upon request, within the time periods specified by the rules and

11    regulations of the SEC (whether or not Reorganized Fountain View is required by such rules

12    or regulations to do so):  (i) all quarterly and annual financial information that would be

13    required to be contained in a filing with the SEC on Forms 10-Q and 10-K if Reorganized

14    Fountain View were required to file such forms, including a Management's Discussion and

15    Analysis of Financial Condition and Results of Operations and, with respect to the annual

16    financial information only, a report on the annual financial statements by an independent

17    certified public accounting firm; and (ii) all current reports that would be required to be filed

18    on Form 8-K if Reorganized Fountain View were required to file such reports.  So long as

19    any New Public Notes remain outstanding, Reorganized Fountain View shall comply with

20    section 314(a) of the Trust Indenture Act and shall furnish the information required to be

21    delivered pursuant to Rule 144(d)(4) under the Securities Act of 1933 upon the request of

22    any holder of the New Public Notes, securities analysts, or prospective investors.

23         Interest:  Interest will be payable semi-annually in arrears, at the rate of 9¼%

24    per annum until the first anniversary of the Effective Date, 11¼% per annum between the

25    first and second anniversaries of the Effective Date, 13¼% per annum between the second

26    and third anniversaries of the Effective Date, and 15% per annum thereafter until maturity.

27         Call:  The New Public Notes shall be callable at par plus accrued interest

28    through the applicable record date, in whole or in part, at any time.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    <u>Mandatory Prepayment</u>: To the extent permitted by the Exit Facility,

2    Reorganized Fountain View shall prepay the New Public Notes in an amount equal to 80%

3    of Excess Cash Flow.

4         **2.    Class 10 (General Unsecured Claims—Impaired).**

5         **Classification:**    Class 10 consists of all Unsecured Claims other than (i)

6    Claims in Classes 9, 11, 12, and 13, and (ii) Claims held by one of the Debtors extinguished

7    pursuant to Section IV.A of the Plan.  Claims that would otherwise be Class 10 Claims will

8    be classified and treated as Class 11 Claims, if the holder makes the Convenience Class

9    Election; provided, however, that any holder that makes the Convenience Class Election but

10   holds aggregate Allowed Class 10 Claims in excess of $1,250 will be classified and treated

11   in Class 10 under payment option 10A as voting to accept the Plan and will receive cash

12   equal to 80% of such holder's Allowed Claims without postpetition interest.

13        **Treatment:**    Holders of Class 10 Claims must elect in writing payment option

14   10A or 10B on or before the last date fixed by the Court for the timely submission of Ballots;

15   provided, however, that a holder of a Disputed Claim in Class 10 must make its election

16   before the later of the deadline to submit Ballots and 14 days after the date upon which its

17   Claim becomes an Allowed Claim.  Holders who fail to make a timely and valid election in

18   writing shall be afforded treatment under payment option 10B.  The Disbursing Agent will

19   make distributions to the holder of each Class 10 Allowed Claim, in accordance with such

20   holder's applicable payment option on the latest of (i) as soon as reasonably practicable after

21   the Effective Date; (ii) 30 days after the date on which the Claim becomes an Allowed

22   Claim; or (iii) the date such Claim becomes due and payable in accordance with its terms.

23        ***Payment Option 10A*** is cash equal to 80% of the Allowed Claim without

24   postpetition interest.

25        ***Payment Option 10B*** is:

26        (i) for all holders other than Continuing Creditors,

27          (a) cash equal to the sum of:

28            (y) 40% of the Allowed Claim, and

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    (z) postpetition interest calculated at the rate of 9½% per annum on the

2    full amount of the Allowed Claim from the Petition Date through the

3    date of payment (provided, however, that notwithstanding anything to

4    the contrary herein no prejudgment interest shall accrue or be paid with

5    respect to any unliquidated Class 10 Claim prior to its liquidation except

6    as provided by otherwise applicable non-bankruptcy law); and

7    (b) a Class 10 Deferred Obligation in a principal amount equal to 60% of the

8    Allowed Claim; or

9    (ii) for Continuing Creditors,

10    (a) cash equal to the sum of:

11    (y) 65% of the Allowed Claim, and

12    (z) postpetition interest calculated at the rate of 9½% per annum on the

13    full amount of the Allowed Claim from the Petition Date through the

14    date of payment; and

15    (b) a Continuing Creditor Deferred Obligation in a principal amount equal to

16    35% of the Allowed Claim.

17    The Class 10 Deferred Obligation and the Continuing Creditor Deferred

18 Obligation will be obligations of Reorganized Fountain View guaranteed by Reorganized

19 Summit Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective Date

20 Subsidiaries (except for any special purposes entities formed for insurance coverage

21 purposes) to the extent permitted by the Exit Facility. The Class 10 Deferred Obligation and

22 the Continuing Creditor Deferred Obligation will bear interest payable in arrears from and

23 after the date of the initial cash payment under payment option 10B in respect of such Class

24 10 Claim at the rate of 9½% per annum; provided, however, that after maturity (whether by

25 acceleration or otherwise) interest shall accrue at the rate of 11½% per annum. The Class 10

26 Deferred Obligation will be payable in five semiannual installments each of which shall

27 consist of principal installments equal to one-fifth its original principal amount together with

28 accrued interest on the remaining unpaid principal balance and the Continuing Creditor

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

36

EXHIBIT __1__ PAGE 56

1    Obligation will be payable in three semiannual installments each of which shall consist of

2    principal installments equal to one-third its original principal amount together with accrued

3    interest on the remaining unpaid principal balance, such installments to commence on the

4    first Business Day that is at least 180 days after the Effective Date; provided, however, that,

5    should the Noteholder Prepayment Percentage exceed 50%, Reorganized Fountain View

6    shall prepay the Class 10 Deferred Obligation and the Continuing Creditor Deferred

7    Obligation Pro Rata (to be credited against scheduled amortization payments relating to such

8    Class 10 Deferred Obligation or Continuing Creditor Deferred Obligation in reverse order of

9    maturity) in an amount equal to the initial amount of such Class 10 Deferred Obligation or

10   the Continuing Creditor Deferred Obligation multiplied by the Noteholder Prepayment

11   Percentage less all prior principal payments on account of such Class 10 Deferred Obligation

12   or Continuing Creditor Deferred Obligation.    The Class 10 Deferred Obligation and the

13   Continuing Creditor Deferred Obligation will be secured by liens (which shall be expressly

14   subordinated to those securing the Exit Facility on terms reasonably acceptable to the Exit

15   Facility lenders as well as any prior perfected and valid liens retained under the Plan) against

16   (a) the Debtors' real property leases, and (b) the Business Assets of the Reorganized

17   Enterprise's pharmacy and therapy businesses, such liens to be of equal rank and otherwise

18   subject to the same limitations as the liens securing the New Public Notes and the Vendors'

19   Lien.    The lien securing the Class 10 Deferred Obligation and the Continuing Creditor

20   Deferred Obligation shall be subject to the same "basket" and release provisions as the lien

21   securing the New Public Notes.[3]  The lien securing the Class 10 Deferred Obligation and the

22   Continuing Creditor Deferred Obligation shall be administered by the Claims Agent under a

23   collateral trust agreement or similar agreement, which agreement (together with such

24   ancillary documents as may be reasonably necessary to implement its terms) shall be in the

25   form submitted by the Debtors in the Plan Supplement and shall provide for acceleration of

26

27   _____

28   [3] "Basket and release provisions" permit limited substitution of collateral and sales free and clear of liens with respect to property pledged as a pool to support a secured obligation. Such provisions are customary in secured public trust indentures given the difficulty of obtaining transaction specific lien releases from the dispersed holders of public debt.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    the Class 10 Deferred Obligation and the Continuing Creditor Deferred Obligation and

2    enforcement of the lien by the Claims Agent in the event of (i) a payment default on the

3    Class 10 Deferred Obligation and Continuing Creditor Deferred Obligation (in either case,

4    following five business days written notice and failure to cure); (ii) upon the acceleration or

5    any exercise of remedies by any party of the New Public Notes, the Exit Facility, or any

6    comparable obligation following a default under such agreement; (iii) or the filing of a

7    bankruptcy case by Reorganized Fountain View.

8           For the avoidance of doubt, the amount of any mandatory prepayment under

9    the Noteholder Prepayment Percentage shall be calculated in accordance with the following:

10           Example 1: Class 10 Deferred Obligation:

11           Assume the Noteholder Prepayment Percentage is 60% on the date eight

12    months following the Effective Date and the regularly scheduled amortization payment in an

13    amount equal to 20% of the initial amount of the Class 10 Deferred Obligation has been

14    made, such that its principal amount has been reduced from $1500 to $1200. A mandatory

15    prepayment would then be due in the amount of $600 in order to further reduce the then

16    outstanding principal balance to $600. This mandatory prepayment would be credited

17    against the final two amortization payments. Assuming no further increase in the Noteholder

18    Prepayment Percentage, the regularly scheduled amortization payment on the first

19    anniversary of the Effective Date would, therefore, remain $300, and the third regularly

20    scheduled amortization payment due one year after the first Business Day following 180

21    days after the Effective Date would extinguish the Class 10 Deferred Obligation.

22           Example 2: Continuing Creditor Deferred Obligation:

23           Assume the Noteholder Prepayment Percentage is 60% on the date eight

24    months following the Effective Date and the regularly scheduled amortization payment in an

25    amount equal to 33.33% of the initial amount of the Continuing Creditor Deferred Obligation

26    has been made, such that its initial principal amount has been reduced from $1500 to $1000.

27    A mandatory prepayment would then be due in the amount of $400 in order to further reduce

28    the then outstanding principal balance to $600. This mandatory prepayment would be

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 1    PAGE 58

1  credited against the final amortization payment.   Assuming no further increase in the

2  Noteholder Prepayment Percentage, the regularly scheduled amortization payment on the

3  first anniversary of the Effective Date would, therefore, remain $500, and upon final

4  maturity the then remaining balance of $100 would be due.

5        **3.**    **Class 11 (Convenience Claims—Unimpaired).**

6        **Classification:**  Class 11 consists of Convenience Claims.

7        **Treatment:**  The legal, equitable and contractual rights of the holders of Class

8  11 Claim are unaltered under the Plan.  The Disbursing Agent will distribute to holders of

9  Class 11 Allowed Claims cash equal to the allowed amount of the Convenience Claim plus

10  interest calculated at 2.49%[4] per annum from the Petition Date through the date of payment

11  on the latest of (i) as soon as reasonably practicable after the Effective Date; (ii) 30 days

12  after the date on which the Convenience Claim becomes an Allowed Claim; or (iii) the date

13  such Convenience Claim becomes due and payable in accordance with its terms.

14        Holders of Class 10 Claims validly making the Convenience Class Election

15  will be treated as follows:  (i) if the aggregate amount of their Allowed Class 10 Claims is

16  equal to or less than $1,250, they will be treated in Class 11, deemed to accept the Plan, and

17  will receive $1,000 in full and final satisfaction of all of their Allowed Class 10 Claims; **or**

18  (ii) if the aggregate amount of their Allowed Class 10 Claims is in excess of $1,250, they

19  will be treated in Class 10 under payment option 10A, deemed to accept the Plan, and will

20  receive cash equal to 80% of such holder's Allowed Class 10 Claims without postpetition

21  interest.

22        **4.**    **Class 12 (Insured Professional Liability Claims—Impaired).**

23        **Classification:**  Class 12 consists of Claims that are insured pursuant to the

24  Debtors' Prepetition Professional Liability Policies.

25        **Treatment:**  Upon the later of (i) as soon as reasonably practicable after the

26  Effective Date, and (ii) 30 days after the date upon which the Class 12 Claim (as liquidated

27

28        [4] 2.49% is the federal judgment rate of interest as of October 2, 2001, the Petition Date for Fountain View, Inc. and 19 of its direct and indirect subsidiaries.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    through settlements, the ADR Procedures, Article IV.H of the Plan to the extent permitted by

2    applicable law, or litigation) becomes an Allowed Claim, the applicable Class 12 Allowed

3    Claim will be paid in full in cash exclusively from the applicable Prepetition Professional

4    Liability Policy, except to the extent of any unexhausted self-insured retention thereunder.

5    The uninsured portion of any Class 12 Allowed Claim, if any, shall, to that extent, be

6    reclassified as a Class 10 Allowed Claim; provided, however, that the uninsured punitive

7    damages portion of any Class 12 Allowed Claim shall be reclassified as a Class 13 Allowed

8    Claim.   The 14 day period to elect between payment option 10A or 10B under Class 10

9    treatment shall commence on the date the uninsured portion of any Class 12 Allowed Claim

10   is reclassified as a Class 10 Claim.

11          **5.      Class 13 (Other Subordinated Claims—Impaired).**

12          **Classification:** Class 13 consists of Other Subordinated Claims.

13          **Treatment:**  When and if any Class 13 Claim becomes an Allowed Claim, the

14   holder thereof will receive a promissory note in the form set forth in the Plan Supplement in

15   the principal amount of such holder's Allowed Claim issued by Reorganized Fountain View.

16   The promissory note will accrue interest from the date the Class 13 Claim becomes an

17   Allowed Claim at the current federal judgment rate in effect on the date the Class 13 Claim

18   becomes an Allowed Claim and shall be subordinated in right of payment to the New Public

19   Notes, the Vendors' Lien, and the liens securing the Continuing Creditor Deferred Obligation

20   and the Class 10 Deferred Obligation and the Exit Facility and mature on the eleventh

21   anniversary of the Effective Date.

22          **E.      Treatment of Interests (Classes 14, 15, 16, 17, 18, & 19).**

23          **1.      Class 14 (Existing Preferred Stock—Impaired).**

24          **Classification:** Class 14 consists of the Existing Preferred Stock.

25          **Treatment:**   The Existing Preferred Stock shall be cancelled and on the

26   Distribution Date the holders thereof shall receive in exchange for each share of Existing

27   Preferred Stock one share of New Preferred Stock; provided, however, no such holder shall

28   receive any New Preferred Stock unless and until such holder agrees in writing to be bound

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    by the Stockholders' Agreement. The New Preferred Stock to be issued and reserved under

2    the Plan shall have the same attributes as the Existing Preferred Stock except that

3    Reorganized Fountain View's articles of incorporation will be amended in the form provided

4    in the Plan Supplement, and pursuant to those amended and restated articles of incorporation

5    the holders of New Preferred Stock shall have one-tenth of a vote per share of New Preferred

6    Stock on all matters requiring a shareholder vote. The New Preferred Stock shall not be

7    convertible into New Class A Common Stock.

8            **2.**     **Class 15 (Existing Class A Common Stock—Impaired).**

9            **Classification:**  Class 15 consists of the Existing Class A Common Stock and,

10   pursuant to Code section 510(b), any Claims for rescission or damages related thereto.

11           **Treatment:**  The Existing Class A Common Stock and any Claims for

12   rescission or damages related thereto shall be cancelled and on the Distribution Date the

13   holders thereof will receive in exchange for each share of Existing Class A Common Stock

14   1.1142 shares of New Class A Common Stock of Reorganized Fountain View; provided,

15   however, that no such holder shall receive any New Class A Common Stock unless and until

16   such holder agrees in writing to be bound by the Stockholders' Agreement. The Class 15

17   Allowed Interests shall be diluted by the Noteholders' Stock Distribution. Fractional shares

18   of New Class A Common Stock will not be issued. Holders of Existing Class A Common

19   Stock that would otherwise be entitled to a fractional share distribution of New Class A

20   Common Stock equal to or greater than one-half of a share of New Class A Common Stock

21   shall receive one whole share of New Class A Common Stock. No distribution shall be

22   made on account of fractional entitlements of less than one-half of a share of New Class A

23   Common Stock. The New Class A Common Stock to be issued and reserved under the Plan

24   shall have the following attributes:

25           a.     <u>Authorization and Issuance</u>.  Reorganized Fountain View's articles of

26   incorporation will authorize the issuance of 1,500,000 shares of New Class A Common

27   Stock (subject to further amendment after the Effective Date), of which approximately

28   1,193,586 shares will be outstanding as of the Effective Date.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT __1__ PAGE __61__

1            b.     <u>Par Value</u>. The New Class A Common Stock shall have a par value of

2    S.01 per share.

3            c.     <u>Rights</u>. The New Class A Common Stock shall have such rights with

4    respect to dividends, liquidations, voting, and other matters as are set forth in Fountain View,

5    Inc.'s articles of incorporation, as amended and restated and filed with the Court in the Plan

6    Supplement, and as otherwise provided by applicable law.

7          **3.**    **Class 16 (Existing Class B Common Stock—Impaired).**

8    **Classification:** Class 16 consists of the Existing Class B Common Stock and,

9    pursuant to Code section 510(b), any Claims for rescission or damages related thereto.

10    **Treatment:** Class 16 Allowed Interests and any Claims for rescission or

11    damages related thereto will be cancelled and the holders of Class 16 Allowed Interests will

12    neither receive nor retain any property on account of the Plan.

13          **4.**    **Class 17 (Existing Class C Common Stock—Impaired).**

14    **Classification:** Class 17 consists of the Existing Class C Common Stock and,

15    pursuant to Code section 510(b), any Claims for rescission or damages related thereto.

16    **Treatment:** Class 17 Allowed Interests and any Claims for rescission or

17    damages related thereto will be cancelled and the holders of Class 17 Allowed Interests shall

18    receive on the Distribution Date the number of New Class A Common Stock in Reorganized

19    Fountain View equal to the number of cancelled shares of Existing Class C Common Stock

20    held by such entity; <u>provided</u>, <u>however</u>, that no holder of any Class 17 Interests shall receive

21    any New Class A Common Stock unless and until such holder agrees in writing to be bound

22    by the Stockholders' Agreement. The Class 17 Allowed Interests shall be diluted by the

23    Noteholders' Stock Distribution.

24          **5.**    **Class 18 (Existing Warrants—Impaired).**

25    **Classification:** Class 18 consists of the Existing Warrants and, pursuant to

26    Code section 510(b), any Claims for rescission or damages related thereto.

27        **Treatment:** Class 18 Allowed Interests and any Claims for rescission or

28    damages related thereto will be cancelled. On the Distribution Date, the holders of Class 18

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

Allowed Interests shall be issued new warrants, with substantially the same terms and conditions as the Existing Warrants and in the form provided in the Plan Supplement, for the number of shares of New Class A Common Stock in Reorganized Fountain View equal to the number of cancelled shares of Existing Class C Stock subject to issuance to that holder on account of the Existing Warrants; provided, however, that no holder of any Class 18 Interests shall receive any New Class A Common Stock unless and until such holder agrees in writing to be bound by the Stockholders' Agreement.

> **6.    Class 19 (Existing Management Incentives and Other Existing Interests—Impaired).**

**Classification:**  Class 19 consists of the Existing Management Incentives and Other Existing Interests and, pursuant to Code section 510(b), any Claims for rescission or damages related thereto.

**Treatment:**  Class 19 Allowed Interests and any Claims for rescission or damages related thereto will be cancelled and the holders of Class 19 Allowed Interests will neither receive nor retain any property on account of the Plan.

**III.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.    Assumption and Assignment of Contracts and Leases.**

**1.    Schedule of Assumed or Assigned Agreements.**

On the Effective Date, the Debtors will assume (i) the Resident Agreements (including any general agreements of indemnity related to Resident Agreements) and (ii) the executory contracts and unexpired leases—except for any agreements that were previously assumed or rejected by Final Order or under Bankruptcy Code section 365—that are identified on the Schedule of Assumed or Assigned Agreements, and will assign those executory contracts and unexpired leases as further provided herein.

By the first business day that is at least twenty (20) days prior to the Confirmation Hearing Date, the Debtors will file an amended Schedule of Assumed or Assigned Agreements, and will serve the amended schedules on the non-debtor parties to the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  executory and unexpired leases whose treatment differs from that provided in the Exhibits

2  attached to the Disclosure Statement. The Debtors reserve the right to amend the Schedule

3  of Assumed or Assigned Agreements at any time before the Confirmation Date to: (i) delete

4  any executory contract or unexpired lease and provide for its rejection under Section III.B

5  below; or (ii) add any executory contract or unexpired lease and provide for its assumption

6  or assignment under this Section. The Debtors will provide notice of any amendment to the

7  Schedule of Assumed or Assigned Agreements to the party or parties to the agreement

8  affected by the amendment and counsel to the Committees.

9         The Confirmation Order will constitute a Court order approving the

10  assumption, and, as applicable, assignment, on the Effective Date, of the Resident

11  Agreements and the executory contracts and unexpired leases then identified on the Schedule

12  of Assumed or Assigned Agreements.

13         **2.    Cure Payments.**

14         The Schedule of Assumed or Assigned Agreements also identifies any amounts

15  that the Debtors believe Bankruptcy Code sections 365(b)(1)(A) or (B) require be paid in

16  order to cure defaults under the executory contracts and unexpired leases to be assumed or

17  assigned under the Plan. The Debtors will file an amended Schedule of Assumed or

18  Assigned Agreements not later than 20 days before the Confirmation Hearing Date, setting

19  forth any cure amounts under the executory contracts and unexpired leases to be assumed or

20  assigned under Section III.A.1, above. The Debtors reserve the right to further amend the

21  Schedule of Assumed or Assigned Agreements, including modifying the cure amounts, up to

22  the Confirmation Date. There are no cure payments to be made with respect to the Resident

23  Agreements.

24         As required by Code section 365(b)(1), any and all monetary defaults under

25  each executory contract and unexpired lease to be assumed or assigned under this Plan will

26  be satisfied in one of the following three ways: (i) the Disbursing Agent will pay to the non-

27  debtor party to the executory contract or unexpired lease the Cure Payments, as set forth on

28  the Schedule of Assumed or Assigned Agreements (as it may be amended), in cash within 10

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

1   days after the Effective Date; (ii) the Disbursing Agent will satisfy any other terms that are

2   agreed to by both the Debtors and the non-debtor party to an executory contract or unexpired

3   lease that will be assumed or assigned, including, with respect to the applicable Medicare

4   provider agreements, the terms of the CMS Stipulation and the TDHS Settlement; or (iii) if a

5   dispute arises regarding (a) the amount of any proposed Cure Payments, (b) whether the

6   Debtors have provided adequate assurance of future performance under an executory

7   contract or unexpired lease to be assumed or assigned, or (c) any other matter pertaining to a

8   proposed assumption or assignment, the proposed Cure Payments will be made within 30

9   days after entry of a Final Order resolving the dispute and approving the assumption or

10   assignment.

     **3.**      **Objections to Assumption or Assignment or Proposed Cure**

                  **Payments.**

13        Any party to an executory contract or unexpired lease that will be assumed or

14   assigned under the Plan who either contends that the proposed Cure Payment specified on

15   the Schedule of Assumed or Assigned Agreements is incorrect or otherwise objects to the

16   contemplated assumption or assignment <u>must</u> File with the Court and serve upon the

17   Debtors, Debtors' Counsel, and counsel to the Committees, a written statement and

18   supporting declaration stating the basis for its objection. This statement and declaration must

19   be Filed and served by the later of: (i) twenty (20) days before the Confirmation Hearing

20   Date; or (ii) with respect to objections relating to an executory contract or unexpired lease

21   added to the Schedule of Assumed or Assigned Agreements by an amendment, or with

22   respect to any changed cure amount, ten (10) days after the Debtors file and serve any

23   amendments to the Schedule of Assumed or Assigned Agreements   Any entity that fails to

24   timely File and serve such a statement and declaration will be deemed to waive any and all

25   objections to the proposed assumption or assignment and the proposed Cure Payments.

     **4.**      **Liens with Respect to Assumed Contracts and Leases Pursuant to**

                  **the Exit Facility and Plan.**

28        As of the Effective Date, the Reorganized Enterprise is authorized to grant

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   liens to secure the Exit Facility, the New Public Notes, the Class 10 Deferred Obligation, the

2   Continuing Creditor Deferred Obligation, and the Vendors' Lien, in accordance with the

3   terms of the Exit Facility Closing Documents, the indenture pursuant to which the New

4   Public Notes are to be issued, and the agreement between the Claims Agent and Reorganized

5   Fountain View, in the Debtors' interests in all unexpired real property leases (and, as

6   applicable, executory contracts) included on the Schedule of Assumed or Assigned

7   Agreements, notwithstanding anything to the contrary in otherwise applicable law or in any

8   such lease.  The Debtors and the Reorganized Enterprise are authorized to execute such

9   documents and memoranda and record such instruments as may be appropriate to perfect

10  such liens under otherwise applicable law.

**B.    Rejection of Contracts and Leases.**

**1.    Schedule of Rejected Agreements.**

13          On the Effective Date, the Debtors will reject all executory contracts and

14  unexpired leases on the Schedule of Rejected Agreements—except for any agreements that

15  were previously assumed or rejected by Final Order or under Bankruptcy Code section 365

16  or that will be assumed under Section III.A of the Plan—but only to the extent that these

17  agreements constitute executory contracts or unexpired leases under Bankruptcy Code

18  section 365.  (Listing an agreement on the Schedule of Rejected Agreements is not an

19  admission that the agreement is an executory contract or unexpired lease or that the Debtors

20  have any liability under the agreement.)

21          The Debtors reserve the right to amend the Schedule of Rejected Agreements

22  at any time before the Confirmation Date to:  (i) delete any executory contract or unexpired

23  lease and provide for its assumption or assignment under Section III.A, above; or (ii) add any

24  executory contract or unexpired lease and provide for its rejection under this Section III.B.

25  The Debtors will provide notice of any amendment to the Schedule of Rejected Agreements

26  to the party or parties to the executory contracts or unexpired leases affected by the

27  amendment and counsel to the Committees.

28          The Confirmation Order will constitute a Court order approving the rejection,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   on the Effective Date, of any and all of the agreements that the Debtors executed before the

2   Petition Date—except for any agreements that were previously assumed or rejected either by

3   a Final Order or under Bankruptcy Code section 365 or that will be assumed under Section

4   III.A—including without limitation the executory contracts or unexpired leases identified on

5   the Schedule of Rejected Agreements.

6   **2.    Bar Date for Rejection Damage Claims.**

7   Any Rejection Damage Claim or other Claim for damages arising from the

8   rejection under the Plan of an executory contract or unexpired lease must be filed with the

9   Court and served upon the Debtors' Counsel and the Reorganized Enterprise within 30 days

10  after the mailing of notice of entry of the Confirmation Order at which time the holder of the

11  Claim may elect between payment option 10A or 10B, if applicable, by delivering to the

12  Debtors' counsel and the Reorganized Enterprise a written notice of election of option 10A

13  or 10B.   Holders of Class 10 Claims failing to make a timely election between payment

14  option 10A or 10B shall be deemed to elect payment option 10B.  Any such damage Claims

15  that are not timely Filed and served will be forever barred and unenforceable against the

16  Debtors, the Estates, the Reorganized Enterprise, and their respective property; and Entities

17  holding these Claims will be barred from receiving any distributions under the Plan on

18  account of their Rejection Damage Claims or other damage Claims.  Nothing herein extends

19  the bar date applicable to any contract or lease rejected otherwise than under the Plan or for

20  any Claim other than one arising directly as a result of the rejection of a contract or lease

21  under the Plan.

22  **C.    Postpetition Contracts and Leases.**

23  Except as expressly provided in the Plan or the Confirmation Order, each

24  contract, lease, or other agreement that any of the Debtors entered into after the Petition Date

25  will either revest in Reorganized Fountain View, Reorganized Summit Care Pharmacy or the

26  Other Reorganized Debtors, or be assigned to a Post-Effective Date Subsidiary pursuant to

27  the terms of the Corporate Restructuring Closing Documents.  These agreements will then

28  become obligations solely of the entities so designated in the Corporate Restructuring

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT ___1___ PAGE 67

1    Closing Documents and will remain in full force and effect after the Confirmation Date and

2    the Effective Date.  The CMS Stipulation and the TDHS Settlement will be binding on the

3    Reorganized Enterprise in accordance with their terms notwithstanding anything else to the

4    contrary in the Plan.

## IV.

## MEANS OF EXECUTION AND IMPLEMENTATION

## OF THE PLAN AND OTHER PROVISIONS

8         Except as otherwise specifically provided herein, Fountain View, Inc., and,

9    after the Effective Date, Reorganized Fountain View, shall serve as the duly authorized agent

10    of the Debtors, the Estates, and the Reorganized Enterprise for the purposes of performing

11    and consummating the Plan pursuant to the Bankruptcy Code.

12        **A.    Substantive Consolidation.**

13         As of the Effective Date, solely for the purposes of the Plan, the assets, claims,

14    and affairs of the Debtors and the Estates shall be substantively consolidated pursuant to

15    Bankruptcy Code section 105(a).  As a result of the substantive consolidation, on the

16    Effective Date, all property, rights, and claims of the Debtors and the Estates, and all Claims

17    against the Debtors and the Estates shall be deemed pooled for purposes of allowance,

18    treatment, and distributions under the Plan and multiple proofs of Claim on account of any

19    Claim upon which any of the Debtors are co-obligors or guarantors or otherwise may be

20    contingently liable shall without necessity of objection by any party be deemed to constitute

21    a single proof of Claim entitled to a single satisfaction from the substantively consolidated

22    Estates in accordance with the terms of the Plan; the duplicative Claims being otherwise

23    deemed disallowed.  Further, as a result of this substantive consolidation, all Claims between

24    and among the Debtors and the Estates shall be cancelled without being entitled to any

25    distribution under the Plan.

26        **B.    Corporate Restructuring Plan.**

27         On the Effective Date, the Debtors will consummate the transactions

28    contemplated in the Corporate Restructuring Plan.  Upon consummation of the Corporate

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

48    EXHIBIT    1    PAGE 68

1    Restructuring Plan, all of the Business Assets, free and clear of all liens, Claims,

2    encumbrances, and Interests, except as otherwise provided in the Plan, shall be held by

3    Reorganized Summit Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective

4    Date Subsidiaries in accordance with the Corporate Restructuring Plan.    Reorganized

5    Fountain View will own directly or indirectly 100% of the equity interests in Reorganized

6    Summit Care Pharmacy, the Other Reorganized Debtors, and the Post-Effective Date

7    Subsidiaries.    The Debtors (other than Fountain View, Inc., Summit Care Pharmacy, Inc.,

8    and the Other Reorganized Debtors) will, following consummation of the Corporate

9    Restructuring Plan, cease their independent existence through dissolution or merger.

10    **C.    Exit Facility.**

11            On the Effective Date, the Debtors will consummate the transactions

12    contemplated in the Exit Facility Commitment Letters.    The Disbursing Agent shall use the

13    proceeds of the Exit Facility together with the Bank Midwest Advance and the Debtors' cash

14    and cash equivalents on hand to fund payments under the Plan as follows:

15        • Payments in satisfaction of Allowed Administrative Claims, Allowed Priority

16            Claims, and Allowed Priority Tax Claims and any required cure payments with

17            respect to unimpaired Claims;

18        • Payments in satisfaction of Allowed Claims in Classes 3, 5, 7, 8, and 11;

19        • Payments in partial satisfaction of Allowed Claims in Class 6;

20        • Payments in satisfaction of Allowed Claims in Class 10 electing payment

21            option 10A;

22        • Payments in partial satisfaction of Allowed Claims in Class 10 electing (or

23            deemed to elect) payment option 10B;

24        • Payment of the Initial Cash Payment in partial satisfaction of Allowed Claims

25            in Class 9; and

26        • Retention of sufficient funds to meet the Reorganized Enterprise's working

27            capital needs after the Effective Date.

28            The closings of the Exit Facility and the Corporate Restructuring Plan are

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT __1__ PAGE __69__

1    integral and necessary conditions and terms of the Plan.

2    **D.    Amendment to Articles of Incorporation.**

3            Reorganized Fountain View's articles of incorporation will be amended in the

4    form provided in the Plan Supplement to eliminate Class B Common Stock and Class C

5    Common Stock and prohibit the issuance of nonvoting equity securities.    Reorganized

6    Summit Care Pharmacy's and the Other Reorganized Debtors' articles of incorporation will

7    be amended in the form Filed with the Plan Supplement to, inter alia, prohibit the issuance of

8    nonvoting equity securities.

9    **E.    The Claims Agent.**

10            **1.    Designation of the Claims Agent.**

11            The Claims Agent shall be designated by the Creditors' Committee with the

12    prior consent of the Debtors, which consent shall not be unreasonably withheld, pursuant to

13    the terms and conditions of the General Claim Holder Agency Agreement submitted by the

14    Debtors in the Plan Supplement.    The General Claim Holder Agency Agreement shall

15    provide that financial and business information concerning Reorganized Fountain View

16    provided to the indenture trustee for the New Public Notes that is not otherwise publicly

17    available shall be concurrently provided to the Claims Agent so long as any Class 10

18    Deferred Obligation remains outstanding.

19            **2.    Powers and Duties.**

20            The Claims Agent shall have the following rights, powers and duties under the

21    General Claim Holder Agency Agreement pursuant to which it serves:

22            a.            The Claims Agent may employ counsel reasonably acceptable to

23                            the Debtors. The reasonable costs, fees, and expenses of counsel

24                            for the Claims Agent shall be paid by Reorganized Fountain

25                            View;

26            b.            The Claims Agent may exercise rights and remedies in

27                            accordance with the terms of the General Claim Holder Agency

28                            Agreement upon (i) default by Reorganized Fountain View in the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    payment of the Class 10 Deferred Obligation, the Continuing

2    Creditor Deferred Obligation or the obligations secured by the

3    Vendors' Lien (in any case, following five (5) business days

4    written notice and failure to cure); (ii) acceleration or any

5    exercise of remedies by any party under the Exit Facility, the

6    New Public Notes, or any comparable obligation following a

7    default under such agreement; or (iii) the filing of a bankruptcy

8    case by Reorganized Fountain View; and

9    c.    The Claims Agent may file suit or any appropriate motion for

10    relief in the Court or in any other court of competent jurisdiction

11    to exercise his rights, powers, or duties, or to receive

12    compensation or its counsel's compensation under the General

13    Claim Holder Agency Agreement.

14    All functions and procedures applicable to the Claims Agent and the power and

15  duties of the Claims Agent not expressly set forth in the Plan shall be governed by the

16  provisions of the General Claim Holder Agency Agreement.

17    **F.**    **Revesting of Assets.**

18    Except as otherwise provided in the Plan, the Corporate Restructuring Closing

19  Documents, the Exit Facility Closing Documents, or in any other agreements contemplated

20  under the Plan, on the Effective Date, all property of the Estates shall vest in the Reorganized

21  Enterprise, free and clear of all Claims, liens, encumbrances, and other Interests. From and

22  after the Effective Date, the Reorganized Enterprise may operate the businesses and use,

23  acquire, and dispose of property without supervision by the Court and free of any restrictions

24  of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed

25  by the Plan and the Confirmation Order.

26    **G.**    **Preservation of Causes of Action.**

27    Except as expressly released pursuant to the Plan, pursuant to section 1123(b)

28  of the Bankruptcy Code, the Reorganized Enterprise shall be vested with and shall retain and

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 1 PAGE 71

1    may enforce any claims, rights, and causes of action that the Debtors or the Estates may hold

2    or have against any entity, including without limitation, the Avoidance Actions.

3           Any such rights shall be retained by the Reorganized Enterprise free and clear

4    of all Claims and Interests, and the Reorganized Enterprise may pursue the Avoidance

5    Actions or any other such claims, rights, and causes of action that Debtors or the Estates may

6    hold or have against any entity, in accordance with its best interests.

7    **H.    Objections to Claims and Interests.**

8           Except as otherwise provided in Section II.B, above (regarding allowance of

9    Administrative Claims), objections to any Claims or Interests shall be filed and served upon

10   the holder of such Claim or Interest no later than the date that is the later of (i) nine months

11   after the Effective Date, unless extended by the Court; or (ii) nine months after the date on

12   which a proof of Claim or Interest has been filed, unless extended by the Court. After the

13   Effective Date, only the Reorganized Enterprise shall have the authority to file, settle,

14   compromise, withdraw, or litigate to judgment objections to Claims and Interests. The

15   Reorganized Enterprise may file, settle, compromise, withdraw, or litigate to judgment such

16   objections without further order of the Court.

17          Holders of debts that arise prior to the Confirmation Date involving personal

18   injury or wrongful death shall be enjoined by the injunction established by the Confirmation

19   Order from commencing or continuing any action to collect such Claim except in conformity

20   with the ADR Procedures applicable after the Effective Date (or, as applicable, the Code's

21   claim adjudication procedures).

22          In voting on the Plan, creditors may not rely on the absence of an objection to

23   their proofs of Claim as any indication that the Debtors, the Committees or other parties in

24   interest, ultimately will not object to the amount, priority, security or allowability of their

25   Claims. Moreover, except as otherwise expressly provided in the Plan or by written

26   stipulation Filed with the Court, the Debtors reserve, and intend that the Reorganized

27   Enterprise shall prosecute, claims of the Debtors and the Estates (including rights to

28   affirmative recovery, rights to subordinate claims, and rights to avoid transfers). In

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  particular, creditors should anticipate that the Reorganized Enterprise may object to any

2  Claim asserted in an amount greater than the amount set forth in the Schedules.

3  Notwithstanding anything else to the contrary herein, with respect to Class 10 Claims and

4  Class 11 Claims, the Debtors and the Reorganized Enterprise may only object to a Claim if it

5  is (i) listed on Exhibit 8 (Schedule of Disputed Claims) to the Disclosure Statement (as such

6  exhibit may be subsequently amended through the date the Debtors serve the Disclosure

7  Statement upon creditors and interest holders), (ii) not timely Filed, or (iii) duplicative of

8  another Claim that is not objected to.

9  **I.    Distribution of Property Under the Plan.**

10  The following procedures set forth in this Section IV.I shall apply to

11  distributions made pursuant to this Plan by the Disbursing Agent, and, where applicable, any

12  such agents as they may appoint to effectuate such distributions.

13  **1.    Manner of Cash Payments Under The Plan.**

14  Payments to domestic entities holding Allowed Claims will be tendered in U.S.

15  Dollars and will be made by checks drawn on a domestic bank selected by the party making

16  such distribution or, at its option, by wire transfer from a domestic bank. Payments made to

17  foreign creditors holding Allowed Claims may be paid, at the option of the Disbursing

18  Agent, as set forth in the preceding sentence or in such funds and by such means as are

19  necessary or customary in the particular foreign jurisdiction.

20  **2.    No *De Minimis* Distributions.**

21  Notwithstanding anything to the contrary in this Plan, no cash payment of less

22  than $25 will be made by the Disbursing Agent to any entity holding an Allowed Claim. No

23  consideration will be provided in lieu of the de minimis distributions that are not made under

24  this Section.

25  **3.    No Distribution with Respect to Disputed Claims**

26  Notwithstanding any other provisions of the Plan, no payments of cash or

27  distributions of other property or other consideration of any kind shall be made on account of

28  any Disputed Claim unless and until such Claim becomes an Allowed Claim or is deemed to

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   be such for purposes of distribution, and then only to the extent that the Claim becomes, or is

2   deemed to be for distribution purposes, an Allowed Claim.   The presence of a Disputed

3   Claim in any Class will not be a cause to delay distribution to Allowed Claims in that Class

4   or in other Classes. Any holder of a Claim that becomes an Allowed Claim after the

5   Effective Date will receive its distribution (including, as applicable, interest from the

6   Effective Date through the date of payment) within 30 days from the date that such Claim

7   becomes an Allowed Claim.

8          **4.      Delivery of Distributions and Undeliverable or Unclaimed**

9                  **Distributions.**

10                 **a.      Delivery of Distributions in General.**

11         The Disbursing Agent shall make distributions to each holder of an Allowed

12  Claim as follows:  (i) by mail at the addresses set forth on the respective proof of Claim filed

13  by such holder of an Allowed Claim; (ii) by mail at the address set forth in any written notice

14  of address change delivered to the Disbursing Agent after the date of any related proof of

15  Claim; (iii) by mail at the address reflected in the Schedules if no proof of Claim is filed and

16  the Disbursing Agent has not received a written notice of a change of address; (iv) with

17  respect to the holders of Class 8 Allowed Claims to the Agent in such manner as the Agent

18  may reasonably instruct the Disbursing Agent in writing; and (v) with respect to holders of

19  Class 9 Allowed Claims, at the last known address of record holders of such Allowed Claims

20  as of the close of business on the Effective Date, as determined by the Indenture Trustee or

21  applicable transfer agent.

22         As set forth in Section IV.I.1 above, the Disbursing Agent may, at its option

23  make a distribution to a holder of an Allowed Claim by wire transfer pursuant to the wire

24  transfer instructions provided by the holder of such Allowed Claim.

25                 **b.      Delivery of 11¼% Noteholder Distributions.**

26         As soon as reasonably practicable after the Effective Date, but in no event later

27  than 10 days after the Effective Date, Reorganized Fountain View shall make the

28  distributions called for in Part II.D.1 of the Plan on account of the Claims for principal and

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   interest arising under the 11¼% Notes to the Indenture Trustee.  The Indenture Trustee will

2   receive such cash and securities for the benefit of the record holders, as of the Record Date,

3   of the Claims for principal and interest arising under the 11¼ Notes and will deliver, as soon

4   as reasonably practicable after the Effective Date, such cash and securities to each record

5   holder, as of the Record Date, of a Claim for principal and interest arising under the 11¼

6   Notes in accordance with the Indenture, or applicable law, and the Plan.  The reasonable fees

7   and expenses of the Indenture Trustee for making distributions under the Plan shall be paid

8   by Reorganized Fountain View.

9          As a condition to the receipt of any Pro Rata share of the Noteholders' Stock

10   Distribution, a holder of a Claim for principal and interest arising under the 11¼% Notes

11   shall agree in writing to be bound by the Stockholders' Agreement.  As a further condition to

12   participation under the Plan, a holder of a Claim for principal and interest arising under the

13   11¼% Notes that desires to receive property to be distributed on account of such Claim shall

14   surrender the security representing such Claim to the Indenture Trustee in accordance with

15   the procedures set forth in the Indenture, to the extent applicable, or in accordance with such

16   other procedures as shall be established by the Indenture Trustee as may be reasonably

17   acceptable to Reorganized Fountain View.  Following confirmation of the Plan, record

18   holders of such securities shall receive specific instructions regarding the time and manner in

19   which the 11¼% Notes are to be surrendered, which instructions shall be given by

20   Reorganized Fountain View, the Disbursing Agent, or the Indenture Trustee to such record

21   holders as soon practicable after the Effective Date.  Pending such surrender, such securities

22   shall be cancelled and represent only the right to receive the distributions to which the holder

23   is entitled under the Plan.

24          Any Claims for principal and interest arising under the 11¼% Notes

25   represented by a security which is lost, stolen, mutilated, or destroyed shall be deemed

26   surrendered when the holder of the Claim based thereon delivers to the Indenture Trustee (i)

27   evidence satisfactory to the Indenture Trustee of the loss, theft, mutilation, or destruction of

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1    such instrument, and (ii) such security or indemnity as may be required by the Indenture

2    Trustee to hold it harmless with respect thereto.

c.    **Distribution to Interest Holders Under the Plan.**

4    As soon as reasonably practicable after the Effective Date, Reorganized

5    Fountain View shall make the distributions called for in Part II.E of the Plan on account of

6    the Class 14, Class 15, Class 17, and Class 18 Interests to the record holders of those

7    respective Interests, in accordance with applicable law and the Plan.

8    As a condition to participation under the Plan, a holder of an Interest entitled to

9    distributions of New Class A Common Stock, New Warrants, or New Preferred Stock under

10    the Plan that desires to receive property to be distributed on account of such Interest shall

11    agree in writing to be bound by the Stockholders' Agreement and shall surrender the security

12    representing such Interest to Reorganized Fountain View or its designee in accordance with

13    procedures as shall be established by Reorganized Fountain View.  Record holders of such

14    Interests shall receive specific instructions regarding the time and manner in which the

15    securities representing such Interests are to be surrendered, which instructions shall be given

16    by Reorganized Fountain View to such record holders as soon as practicable after the

17    Effective Date.  Pending such surrender, such securities shall be cancelled and represent only

18    the right to receive the distributions to which the holder is entitled under the Plan.

19    Any Interests represented by a security which is lost, stolen, mutilated, or

20    destroyed shall be deemed surrendered when the holder of the Interest based thereon delivers

21    to Reorganized Fountain View (i) evidence satisfactory to Reorganized Fountain View of the

22    loss, theft, mutilation, or destruction of such instrument, and (ii) such security or indemnity

23    as may be required by Reorganized Fountain View to hold it harmless with respect thereto.

24    All equity securities issued under the Plan shall be deemed to be issued subject to the

25    Stockholders' Agreement notwithstanding the failure of any holder thereof to have agreed in

26    writing to be bound by the terms of the Stockholders' Agreement and the securities issued

27    shall be legended with a notation to the effect that such securities are issued subject to the

28    terms and restrictions, including restrictions on transfer, set forth in the Stockholders'

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60419_1.DOC

EXHIBIT ___1___ PAGE _76_

1    Agreement as well as any restrictions on transfer imposed by applicable securities law.

2            Securities issued in accordance with the Plan will not be registered pursuant to

3    the Securities Act of 1933. Such securities are issued pursuant to the exemption from the

4    registration requirements of the Securities Act of 1933 under Code section 1145.

5            **d.    Undeliverable and Unclaimed Distributions.**

6            If the distribution to the holder of any Allowed Claim is returned to the

7    Disbursing Agent as undeliverable, no further distribution shall be made to such holder

8    unless and until the Disbursing Agent is notified in writing of such holder's then current

9    address. Subject to the other provisions of the Plan, undeliverable distributions shall remain

10   in the possession of the Disbursing Agent pursuant to this Section until such time as a

11   distribution becomes deliverable. The Disbursing Agent will hold undeliverable cash

12   distributions in an unsegregated, interest-bearing bank account for the benefit of the entities

13   entitled to the distributions. These entities will be entitled to any interest actually earned on

14   account of the undeliverable distributions. The bank account will be maintained in the name

15   of the Disbursing Agent, but it will be accounted for separately.

16           Notwithstanding any otherwise applicable laws regarding unclaimed

17   distributions including the law of escheat, any holder of an Allowed Claim who does not

18   assert a claim in writing for an undeliverable distribution held by the Disbursing Agent

19   within one year after the Effective Date shall no longer have any claim to or interest in such

20   undeliverable distribution, and shall be forever barred from receiving any distributions under

21   this Plan, or from asserting a Claim against the Debtors, the Estates, the Reorganized

22   Enterprise, the Claims Agent, the Indenture Trustee or their respective property, and the

23   Claim giving rise to the undeliverable distribution will be discharged.

24           Any undeliverable distributions that are not claimed under this Section will be

25   retained by or returned to Reorganized Fountain View, free from any restrictions thereon.

26   Nothing contained in the Plan shall require the Debtors, the Estates, the Disbursing Agent,

27   the Reorganized Enterprise, the Claims Agent, or the Indenture Trustee, as the case may be,

28   to attempt to locate any holder of an Allowed Claim.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 1 PAGE 77

1        This section V.H.4.d shall not apply to the Class 8 Claims, the distributions on

2    account of which shall be made in their entirety to the Agent upon the Effective Date or the

3    date upon which the Class 8 Claims shall become Allowed Claims.

4    **J.    Cancellation of Interests.**

5        On the Effective Date, all Interests in the Debtors other than Fountain View,

6    Inc., Summit Care Pharmacy, Inc., and the Other Reorganized Debtors will be deemed

7    cancelled or extinguished pursuant to Section IV.A hereof.

8    **K.    Full Satisfaction.**

9        The Disbursing Agent shall make, and each holder of a Claim shall receive, the

10   distributions provided for in the Plan in full satisfaction and discharge of such Claim.

11   **L.    Compliance With Tax Requirements.**

12       The Disbursing Agent shall comply with all withholding and reporting

13   requirements imposed on it by governmental units, and all distributions pursuant to the Plan

14   shall be subject to such withholding and reporting requirements, if any.

15   **M.    Setoff, Recoupment and Other Rights.**

16       Notwithstanding anything to the contrary contained in the Plan, the

17   Reorganized Enterprise may, but shall not be required to, setoff, recoup, assert

18   counterclaims, or withhold against the distributions to be made pursuant to this Plan on

19   account of any Allowed Claim, any claims that the Debtors, the Estates, and the Reorganized

20   Enterprise may have against the entity holding the Allowed Claim; provided, however, that

21   neither the failure to effect such a setoff or recoupment, nor the allowance of any Claim

22   against the Debtors, the Estates, and the Reorganized Enterprise, nor any partial or full

23   payment during the Reorganization Cases or after the Effective Date in respect of any

24   Allowed Claim, shall constitute a waiver or release by Debtors, the Estates, and the

25   Reorganized Enterprise of any claim that they may possess against such holder.

26   **N.    Dissolution of the Debtors other than Fountain View, Inc., Summit Care**

27         **Pharmacy, Inc., and the Other Reorganized Debtors.**

28       As of the Effective Date, the Debtors other than Fountain View, Inc., Summit

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   Care Pharmacy, Inc., and the Other Reorganized Debtors (i) will be dissolved or merged; (ii)

2   their assets distributed to the Reorganized Enterprise as provided for in this Plan and the

3   Corporate Restructuring Plan; and (iii) their liabilities will be discharged except as otherwise

4   provided for in this Plan.  The Reorganized Enterprise is authorized to file all documents and

5   instruments necessary to effectuate dissolution of any of the Debtors in accordance with

6   otherwise applicable law.

7       **O.    Conditions to Effectiveness of the Plan.**

8           **1.    Conditions.**

9           The Plan shall not become binding unless and until the Effective Date occurs.

10  The Effective Date is the first Business Day that, as determined by Debtors in their

11  reasonable discretion, is a Business Day (i) that is at least eleven days after the Confirmation

12  Date; (ii) on which no stay of the Confirmation Order is in effect; and (iii) on which all of

13  the following conditions have been satisfied or waived by Debtors in writing:

14          a.    The Confirmation Order shall be entered in a form reasonably

15  acceptable to the Debtors and the lenders providing the Exit Facility;

16          b.    All the conditions to the execution and enforceability of the Exit Facility

17  Closing Documents and the Corporate Restructuring Closing Documents shall have been

18  satisfied or waived and the Exit Facility lenders shall have funded the Exit Facility;

19          c.    The Claims Agent shall have been duly appointed and qualified to serve

20  and all the conditions to the execution and enforceability of the General Claim Holder

21  Agency Agreement (which shall be in a form reasonably acceptable to the Debtors and the

22  Creditors' Committee) have been satisfied or waived; and

23          d.    The indenture trustee for the New Public Notes shall have been duly

24  appointed and qualified to serve under the indenture governing the New Public Notes (which

25  shall be in a form reasonably acceptable to the Debtors and the Noteholders' Committee).

26          **2.    Waiver of Conditions.**

27          The requirement that the conditions to the occurrence of the Effective Date, as

28  specified in Section IV.O.1, above, be satisfied may be waived in whole or in part, and the

1    time within which any such conditions must be satisfied may be extended, in writing by the

2    Debtors or, in the case of Section IV.O.1.c and IV.O.1.d above, with the consent of the

3    Creditors' Committee and the Noteholders' Committee, respectively. To be effective, such

4    written waiver or extension must be filed with the Court. The failure to satisfy or waive any

5    of such conditions may be asserted by the Debtors regardless of the circumstances giving rise

6    to the failure of such condition to be satisfied, including any action or inaction by the

7    Debtors. The failure of the Debtors to exercise any of the foregoing rights shall not be

8    deemed a waiver of any other rights and each such right shall be deemed ongoing and

9    assertable at any time.

## V.

## MISCELLANEOUS PROVISIONS

**A.**    **Limitations of Liability.**

**1.**    **For Solicitation or Participation.**

Pursuant to section 1125(e) of the Bankruptcy Code, entities that solicit
acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or
purchase of securities offered or sold under the Plan, in good faith and in compliance with
the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such
solicitation or participation, for violation of any applicable law, rule, or regulation governing
the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or
purchase of securities.

**2.**    **For Actions in Connection with Plan and Related Matters.**

To the maximum extent permitted by law, none of the Debtors, the Estates, the
Reorganized Enterprise, the Committees, or any of their employees, officers, directors,
attorneys, agents, members, or representatives, or professional advisors employed or retained
by any of them, whether or not pursuant to a Final Order of the Court, shall have or incur any
liability to any entity for any act taken or omission made in good faith in connection with or
related to formulating, implementing, or confirming the Plan, the Disclosure Statement, or
any contract, instrument, release, or other agreement or document created in connection with

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1   the Plan.

2        **3.      No Admissions.**

3            Notwithstanding anything to the contrary in the Plan, if the Plan is not

4   confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing

5   contained in the Plan or the Disclosure Statement will:  (i) be deemed to be an admission by

6   any Debtor with respect to any matter set forth in the Plan, including, without limitation,

7   liability on any Claim or the propriety of any Claim's classification; (ii) constitute a waiver,

8   acknowledgment, or release of any Claims by or against, or any Interests in, any Debtor; or

9   (iii) prejudice in any manner the rights of the Debtors, the Estates, or any creditors in any

10  further proceedings.

11       **B.      Dissolution of Committees.**

12           On the Effective Date, the Committees and any other committee appointed

13  pursuant to Bankruptcy Code section 1102 shall be released and discharged from the rights

14  and duties arising from or related to the Reorganization Cases, except with respect to final

15  applications for professionals' compensation and objections thereto.   The professionals

16  retained by the Committees and any other committee appointed pursuant to Bankruptcy Code

17  section 1102 and the members thereof shall not be entitled to compensation or

18  reimbursement of expenses for any services rendered or expenses incurred after the Effective

19  Date, except for services rendered and expenses incurred in connection with any applications

20  by such professionals or committee members for allowance of compensation and

21  reimbursement of expenses pending on the Effective Date or timely Filed after the Effective

22  Date as provided in the Plan and objections thereto, as approved by the Court.

23       **C.      Exemption from Certain Transfer Taxes.**

24           In accordance with Bankruptcy Code section 1146(c), neither the issuance,

25  transfer, exchange of a security, nor the delivery of an instrument of transfer under this Plan

26  or the Corporate Restructuring Plan shall be taxed under any law imposing a stamp or similar

27  tax. The Confirmation Order shall direct all governmental officials and agents to forego the

28  assessment and collection of any such tax or governmental assessment and to accept for

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  filing and recordation any of the foregoing instruments or other documents without payment

2  of such tax or other governmental assessment.

**D.    Modifications of the Plan.**

4  Subject to the conditions and terms of the Exit Facility Closing Documents and

5  restrictions set forth in Code section 1127, the Debtors and Reorganized Fountain View

6  reserve the right to alter, amend, or modify the Plan before its substantial consummation.

7  **E.    Revocation of the Plan.**

8  The Debtors reserve the right to revoke or withdraw the Plan prior to the

9  Confirmation Date. If the Plan is not confirmed or the Effective Date does not occur—either

10  because the Debtors revoked or withdrew the Plan or for any other reason—the Plan will be

11  null and void, and nothing contained in the Plan or the Disclosure Statement will: (i) waive

12  or release any Claims by or against, or any Interests in, the Debtors; or (ii) prejudice in any

13  manner any rights that the Debtors, the Estates, or any creditors or equity security holders

14  have in any further proceedings.

15  **F.    Post-Effective Date Effect of Evidences of Claims or Interests.**

16  Except as otherwise provided in the Plan, commencing on the Effective Date,

17  notes, stock certificates, warrants, and other evidences of Claims against, or Interests in, a

18  Debtor will represent only the right to receive the distributions contemplated under the Plan.

19  **G.    Nonapplicability of Local Rule 3020-1(2).**

20  Neither the Debtors nor the Reorganized Enterprise will be required to comply

21  with Local Bankruptcy Rule 3020-1(2), which otherwise requires the filing of certain status

22  reports after the Confirmation Date, or otherwise file reports after the Confirmation Date

23  with the Court, except as expressly provided in the Confirmation Order.

24  **H.    Successors and Assigns.**

25  The rights, benefits, and obligations of any entity named or referred to in this

26  Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator,

27  successor, or assign of such entity.

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT __1__ PAGE 82

60419_1.DOC

**I.    Saturday, Sunday, or Legal Holiday.**

If any payment or act under the Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**J.    Governing Law.**

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

**K.    Severability of Plan Provisions.**

If, before confirmation, the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

**L.    Application of Code Section 1145.**

The exemption from the requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and any state or local law requiring registration or qualification for the offer or sale of a security, provided under Bankruptcy Code section 1145, shall apply to the securities distributed under the Plan.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 1  PAGE 83

60419_1.DOC

# VI.

## EFFECT OF CONFIRMATION OF THE PLAN

### A.    Discharge and Injunction.

The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Reorganized Enterprise, and any of their property; and holders of Claims or Interests are not allowed to enforce their rights with respect to prepetition Claims or Interests outside the terms of the Plan.  Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date:  (i) the Debtors, the Estates, the Reorganized Enterprise, and their property shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Code from all Claims and Interests, including, demands, liabilities, Claims, and Interests that arose before the Confirmation Date and all debts of the kind specified in Code sections 502(g), 502(h), or 502(i), regardless of whether or not (a) a proof of Claim or Interest based on such debt or Interest is filed or deemed filed; (b) a Claim or Interest based on such debt or Interest is allowed pursuant to section 502 of the Code; or (c) the holder of a Claim or Interest based on such debt or Interest has or has not accepted the Plan; and (ii) all entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Enterprise, and their property any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date.

Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against and all debts and liabilities of the Debtors, as provided in sections 524 and 1141 of the Code, and such discharge shall void any judgment against any of the Debtors obtained at any time to the extent that such judgment is a determination of the personal liability of any of the Debtors.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all entities who have held, currently hold, or may hold a debt,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

1  Claim, or Interest discharged pursuant to the terms of the Plan are permanently enjoined

2  from taking any of the following actions on account of any such discharged debt, Claim, or

3  Interest: (i) commencing or continuing in any manner any action or other proceeding against

4  the Debtors, the Estates, the Reorganized Enterprise, or their property in any manner, in any

5  place that does not comply with or is inconsistent with the provisions of the Plan, the ADR

6  Procedures, or the Confirmation Order; (ii) enforcing, attaching, collecting, or recovering in

7  any manner any judgment, award, decree, or order against the Debtors, the Estates, the

8  Reorganized Enterprise, or their property; (iii) creating, perfecting, or enforcing any lien or

9  encumbrance against the Debtors, the Estates, the Reorganized Enterprise, or their property

10  to enforce a claim that arose preconfirmation; (iv) terminating or canceling any Resident

11  Agreement on account of its assumption or assignment hereunder; (v) asserting any setoff,

12  right of subrogation, or recoupment of any kind (other than as expressly provided by the Plan

13  with respect to claims of setoff preserved pursuant to section 553 of the Code) against any

14  obligation due to the Debtors, the Estates, the Reorganized Enterprise, or their property; (vi)

15  enforcing any contractual or legal right of subordination inconsistent with the terms of the

16  Plan; and (vii) commencing or continuing any action, in any manner, in any place that does

17  not comply with or is inconsistent with the provisions of the Plan, the ADR Procedures,

18  or the Confirmation Order. Any entity injured by any willful violation of such injunction

19  shall recover actual damages, including costs and attorneys' fees, and, in appropriate

20  circumstances, may recover punitive damages, from the willful violator.

21  **B.    Payment of Statutory Fees.**

22  The Disbursing Agent shall pay all fees due under 28 U.S.C. § 1930 in

23  accordance with Section II.B.1 of the Plan.

24  **C.    Retention of Jurisdiction.**

25  Notwithstanding the entry of the Confirmation Order or the occurrence of the

26  Effective Date, the Court shall retain jurisdiction over the Reorganization Cases after the

27  Effective Date to the fullest extent provided by law, including the jurisdiction to:

28  1.    Allow, disallow, determine, liquidate, classify, establish the priority or

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT ___ PAGE 85

1   secured or unsecured status of, estimate, or limit any Claim, Interest, or Administrative

2   Claim, and with respect to Claims based on personal injury or wrongful death, continue to

3   enforce the ADR Procedures;

4        2.    Rule on applications for allowance of compensation or reimbursement

5   of expenses authorized pursuant to the Code or the Plan, for periods ending on or before the

6   Effective Date;

7        3.    Resolve any motions pending on the Effective Date to assume, assume

8   and assign, or reject any executory contract or unexpired lease to which any of the Debtors is

9   a party or with respect to which any of the Debtors may be liable and to hear, determine and,

10   if necessary, liquidate, any and all Claims arising therefrom;

11        4.    Ensure that distributions to holders of Allowed Claims, Administrative

12   Claims, and Interests are accomplished pursuant to the provisions of the Plan;

13        5.    Resolve any and all applications, motions, adversary proceedings, and

14   other matters involving the Debtors that may be pending on the Effective Date or that may be

15   instituted thereafter in accordance with the terms of the Plan;

16        6.    Enter such orders as may be necessary or appropriate to implement or

17   consummate the provisions of the Plan and all contracts, instruments, releases, and other

18   agreements or documents entered into in connection with the Plan;

19        7.    Resolve any and all controversies, suits, or issues that may arise in

20   connection with the consummation, interpretation, or enforcement of the Plan or any person's

21   rights or obligations in connection with the Plan;

22        8.    Modify the Plan before or after the Effective Date pursuant to Code

23   section 1127, or modify the Disclosure Statement or any contract, instrument, release, or

24   other agreement created in connection with the Plan or Disclosure Statement; or remedy any

25   defect or omission or reconcile any inconsistency in any order of the Court, the Plan, the

26   Disclosure Statement, or any contract, instrument, release, or other agreement or document

27   created in connection with the Plan or Disclosure Statement, in such manner as may be

28   necessary or appropriate to consummate the Plan, to the extent authorized by the Code;

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 1 PAGE 86

60419_1 DOC

9.  Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to enforce the Plan or restrain interference by any entity with consummation or enforcement of the Plan;

10.  Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.  Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Avoiding Actions or any contract, instrument, release, or other agreement or document created in connection with the Plan, Plan Supplement or the Disclosure Statement or approved by the Court; and

12.  Enter an order closing the Reorganization Cases.

If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter, this Section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

# VII.

## RECOMMENDATION AND CONCLUSION

The Debtors believe that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will maximize the value of the Estates. Creditors will receive payment in full of their Allowed Claims and preferred and common shareholders in Classes 14, 15, 17, and 18 will receive equity interests in Reorganized Fountain View in exchange for their Interests.

Dated:  June 30, 2003

FOUNTAIN VIEW, INC. and its 22
CHAPTER 11 AFFILIATES

By: BOYD HENDRICKSON
Title: Chief Executive Officer

SUBMITTED BY:

DANIEL J. BUSSEL, ESQ.,
MICHAEL L. TUCHIN, ESQ., and
BRENDT C. BUTLER, ESQ., Attorneys with
KLEE, TUCHIN, BOGDANOFF & STERN LLP
Reorganization Counsel for Debtors and Debtors in Possession

EXHIBIT ___ PAGE ___

60419_1.DOC

## PROOF OF SERVICE

I am over eighteen years of age, and I am not a party to this action. I am employed by Klee, Tuchin, Bogdanoff & Stern LLP, and my business address is: Fox Plaza, 2121 Avenue of the Stars, Thirty-Third Floor, Los Angeles, CA 90067-5061. Klee, Tuchin, Bogdanoff & Stern LLP employs a member of the bar of the State of California at whose direction this service was made.

On June 30, 2003, I served the following pleading:

**DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIATION DATED APRIL 22, 2003**

on the interested parties in this action by placing true and correct copies of the pleading with the United States Postal Service, enclosed in sealed envelopes, with postage fully paid, addressed as indicated on the attached list.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED on June 30, 2003, at Los Angeles, California.

_____
Yvonne Alamillo, Declarant

EXHIBIT __I__ PAGE 89

Debtors
Fountain View, Inc.
Attn: Roland Rapp
27442 Portola Parkway, Suite 200
Foothill Ranch, CA 92610

U.S. Trustee
Office of the United States Trustee
Attn: Joseph Caceres, Esq.
Ernst & Young Plaza
725 South Figueroa Street, 26th Floor
Los Angeles, CA 90017

Counsel/Creditors Committee–via FED EX
Carole Neville, Esq.
Sonnenschein Nath & Rosenthal
1221 Avenue of the Americas
New York, NY 10020-1089

Counsel to Creditors' Committee
Michael Lubic/Christopher Prince
Sonnenschein Nath & Rosenthal
601 S. Figueroa St, Suite 1500
Los Angeles, CA 90017-5704

Counsel to Bondholders–via FED EX
Akin Gump Strauss Hauer & Feld LLP
Attn M. Stamer/J. Savin
590 Madison Avenue
New York, NY 10022

Counsel to Bondholders
Akin, Gump, Strauss, Hauer & Feld, LLP
Attn: Robert M. Aronson, Esq.
2029 Century Park East #2600
Los Angeles, CA 90067

Secured Lender
Bank of Montreal
Mark F. Spencer, Managing Dir.
601 South Figueroa Street, Suite 4900
Los Angeles, CA 90017

Counsel for the Secured Lenders
Chapman and Cutler
James E. Spiotto/Ann Acker
111 West Monroe Street
Chicago, IL 60603

Counsel for Bank Midwest, N.A.
Bryan Cave LLP
Sheldon Eisenberg, Esq.
120 Broadway, Suite 300
Santa Monica, CA 90401

Atty/Bank of Montreal
Pillsbury Winthrop LLP
Attn: Kenneth Russak, Esq.
725 S. Figueroa St, #2800
Los Angeles, CA 90017-5406

Indenture Trustee/20 Largest
State St Bank & Trust Co of CA N.A.
Attn. Corporate Trust Dept
633 W. Fifth St, 12th Fl
Los Angeles, CA 90071

Counsel for Indenture Trustee
Brown, Rudnick, Freed & Gesmer
Attn. Kevin Mallery, Esq.
City Place I, 185 Asylum St
Hartford, Ct. 06103

Attys to Heritage Partners LP
Choate, Hall & Stewart
Stephen Cohen/Charles Glerum
Exchange Place
53 State Street
Boston, MA 02109-2891

Counsel for Margaret Muccianti, et al.
Stephen M. Garcia, Esq.
Wilkes & McHugh
222 W. Sixth St, #780
San Pedro, CA 90731

Internal Revenue Service
Special Procedures Function
Collection Division
Rm 4062 Federal Bldg. (Stop 5022)
300 N. Los Angeles St
Los Angeles, CA 90012

UCC Party
Union Bank of CA, N.A.
As Admin & Syndication Agent
445 S.Figueroa St, 16th Fl
Los Angeles, CA 90017

UCC Party
Union Bank of California, N.A.
18300 Von Karman Ave, #200
Irvine, CA 92612

UCC Party
Bank of Montreal, As Agent
115 South LaSalle St
Chicago, IL 60603

UCC Party
Robert & Sheila Snukal
8489 W. 3rd Street #101
Los Angeles, CA 90048

UCC Party
Robert & Sheila Snukal
Locomotion Therapy, Inc.
10284 Century Woods Dr
Los Angeles, CA 90067

UCC Party
Consolacion Padama
8489 W. 3rd Street, #1001
Los Angeles, CA 90048

UCC Party
Manuel Padama
8489 W. 3rd Street #1001
Los Angeles, CA 90048

UCC Party
HLFC Group
35 S. Raymond Ave., Ste. 206
Pasadena, CA 91105

UCC Party
Cal Fed Credit
25 E. Anapamu St., 3rd Flr.
Santa Barbara, CA 93101-2704

UCC Party
Calif Thrift & Loan
P. O. Box 1199
Santa Barbara, CA 93102-1199

UCC Party
Garnett & Co.
P.O. Box 92165
Pasadena, CA 91109-2165

UCC Party
Garnett & Co.
35 S. Raymond Ave., #206
Pasadena, CA 91105-1931

UCC Party
ern Bank
i Westwood Blvd.
Los Angeles, CA 90024-4811

UCC Party
Bank of the West
1450 Treat Blvd.
Walnut Creek, CA 94596

UCC Party
Shackelford Incorporated
10900 Northwest Fwy., Ste. 103
Houston, TX 77092

EXHIBIT 1 PAGE 90

UCC Party
Safeco Credit Co. Inc.
dba Safeline Leasing
10915 Willows Rd. NE
Redmond, WA 98052

UCC Party
Norwest Financial Leasing, Inc.
1700 Iowa Ave., Ste. 240
Riverside, CA 92507

UCC Party
First Nat'l Bank of Chicago Agent
1 First National Plaza, 8th Flr., #0091
Chicago, IL 60670

UCC Party
Harris Trust & Savings Bank, Coll Agent
Attn: Indenture Trust Admin
311 W. Monroe St. 12th Fl
Chicago, IL 60606

UCC Party
Minolta Business Systems Inc.
POB 728
Park Ridge, NJ 07656

UCC Party
Fleet Leasing Corp
P.O. Box 7023
Troy, MI 48007

UCC Party
FUL Incorporated
100 Corporate North
Bannockburn, IL 60015

UCC Party
Standard Restaurant Equip
2922 East McDowell Road
Phoenix, AZ 85008

UCC Party
Ikon Office Solutions
2090 Woodward
Austin, TX 78744

UCC Party
Board of Equalization
P.O. Box 942879
Sacramento, CA 94279-0001

UCC Party
Employment Develop Dept
P.O. Box 826880
Sacramento, CA 94280-0001

UCC Party
Mellon First United Leasing
100 Corporate North
Bannockburn, IL 60015

UCC Party
IRS – Los Angeles
300 N. Los Angeles St., Rm 1216
Los Angeles, CA 90012

UCC Party
Master Lease Corp.
One Presidential Blvd.
Bala Cynwyd, PA 19004-1017

UCC Party
Chemical Trust Co. of CA
Attn  Corporate Trust Depart
300 South Grand Ave., 4th Floor
Los Angeles, CA 90071

UCC Party
Hans Henry Helley, Jr., As Trustee
300 S. Grand Ave., 4th Fl
Los Angeles, CA 90071

UCC Party
Delight Gunnarsson
Locomotion Therapy, Inc.
10284 Century Woods Drive
Los Angeles, CA 90067

UCC Party
Gundi Gunnarsson
Locomotion Therapy, Inc.
10284 Century Woods Drive
Los Angeles, CA 90067

UCC Party
AmerisourceBergen Drup Corp.
Financial Services Dept.
POB 5910
Orange, CA 93813-5910

UCC Party
Wallace Moir Co.
130 El Camino
Beverly Hills, CA 90212-2705

UCC Party
The Great West Life Assurance Co.
60 Osborne St. North
Winnipeg, Manitoba
Canada R3C 1V3

Member of Unsecured Creditors' Committee
Twin Med, Inc.
Steve Rechnitz, President/CEO
4646 Hampton Street
Vernon, CA 90058

Member of Unsecured Creditors' Committee
Pharmacy Support Services
Attn  Andrew F. Torok, Esq.
27071 Aliso Creek Road, Suite 100
Aliso Viejo, CA 92656

Member of Unsecured Creditors' Committee
U.S. Food Service
Attn  Mark H. Speiser
9755 Patuxent Woods Drive
Columbia, MD 21046

Member Unsec Creditors' Committee
Service Employees Int'l Union, AFL-CIO
Andrew L. Stern, Int'l. President
1313 L Street, N.W.
Washington, D.C. 20005

Member Unsec Creditors Committee
SEIU Local 399, AFL-CIO
Atn Jorge Rodriguez, Ex Sec
1247 W. 7th St
Los Angeles, CA 90017

20 Largest
Intercare Insurance Services
Attn  Mike Silcox
3010 Lava Ridge Court #200
Roseville, CA 95661

20 Largest
'staf Healthcare
J Spring Rd #515
Oak Brook, IL 60523

20 Largest
Aseterth Medical Services
Attn Teresa Taylor
1224 E. Green St 2nd Fl
Pasadena, CA 91106

20 Largest
Symphony Mobilex
Attn Mary Johnson
920 Ridgebrook Rd
Sparks, MD 21152

EXHIBIT 1  PAGE 91

20 Largest
Jackson Walker LLP
100 Congress Ave, Ste 1100
Austin, TX 78701-9722

20 Largest
US Foodservice, Inc.
Attn Linda Fitzgerald
80 International Dr., Ste. 200
Greenville, SC 29615

20 Largest
Sysco Food Services
Attn: Jim Peightal
20701 E. Currier Road
Walnut, CA 91789

20 Largest
Starmed Staffing Group
Attn: Brandi Hubert
7737 Forsyth Blvd #1700
Clayton, MO 63105

20 Largest
Healthcare Design & Supply
6217 Rimbank Ave
Pico Rivera, CA 90660

Request for Special Notice
Attys/Jackson Walker LLP
Jackson Walker LLP
Attn: C. Wade Cooper
100 Congress Ave, #1100
Austin, TX 78701

Request for Special Notice
Attys/Floor Covering Design
Attn: Steven L. Bergh
Prenovost Normandin Bergh & Dawe
2122 N. Broadway, #200
Santa Ana, CA 92706-2614

Request for Special Notice
Attys/Brenda Low/Harlan Estate
Floyd, Isgur, Rios & Wahrlich
Marvin Isgur/Patrick Griffin
700 Louisiana, Suite 4600
Houston, TX 77002-2732

Request for Special Notice
Attys/Twin Med
Alan J. Stomel, Esq.
369 S. Doheny Dr #374
Beverly Hills, CA 90211

Atty/New Braunfels ISD/Bexar Cty
' ' ebarger Goggan Blair
a & Sampson LLP
, i Navarro #300
San Antonio, TX 78205

20 Largest
Vencare Ancillary Services
680 S 4th Ave 5th Fl
Louisville, KY 40202

Member of Unsecured Creditors' Committee
Mediq
Attn Alan Einhorn, Esq.
1 Mediq Plaza
Pennsauken, NJ 08110

20 Largest/Member of Unsecured Creditors'
Committee
Ancillary Provider Service
Attn: Cora
5416 Jillson Street
Commerce, CA 90040

20 Largest
Diagnostic Laboratories
Attn: Don Goldberg
1111 S. Central Ave
Glendale, CA 91204

Global Crossing
PO Box 741276
Cincinnati, OH 45274-1276

Request For Special Notice
Amelia Tovar
Wise Senior Serv Ombudsman
255 S. Hill St, Rm 406
Los Angeles, CA 90012

Request for Special Notice
Atty/Ancillary Provider Services
Law Office of Baruch C. Cohen
4929 Wilshire Blvd, #940
Los Angeles, CA 90010

Request for Special Notice
Radcliff Frandsen Dongell & Lawrence
Jules G. Radcliff, Jr.
707 Wilshire Blvd, 45th Fl
Los Angeles, CA 90017

Req Spec Not/Atty-Arkansas /Round Rock ISD/
McMallenCity/Lavaca Cty/Live Oak/New
Braunfels
Lori Robertson/David G. Aelvoet,
Linebarger Goggan Blair Pena & Sampson
1949 South IH 35
Austin, TX 78741

Request for Special Notice
Mark Schreiber, Esq.
16501 Ventura Blvd, #401
Encino, CA 91436-2068

20 Largest
Foley & Lardner
Jonathon E. Cohn. Esq.
2029 Century Pk East, 35th Fl
Los Angeles, Ca 90067-3000

20 Largest/Member of Unsecured Creditors'
Committee
Culver Dairy, Inc., dba Dairy King
Attn Allan Dalfen, President/CEO
815 Thompson Avenue
Glendale, CA 91201

20 Largest
Floor Covering Design Specialists
13006 E Philadelphia, # 509
Whittier, CA 90601

20 Largest
Nestle USA
Attn William T. Ferioli, Esq.
800 N. Brand Blvd
Glendale, CA 91203

Request for Special Notice
Atty to State St Bank & Trust
Buchalter, Nemer, Fields & Younger
Attn: R. Soref/ B. Seigel
601 S. Figueroa St, #2400
Los Angeles, CA 90017-5704

Request for Special Notice/Member of
Unsecured Creditors' Committee
Waltz Medical Specialties, Inc.
Attn: Phyllis Waltz
4520 E. Eisenhower Circle
Anaheim, CA 92807

Request for Special Notice
Attys/AmerisourceBergen Drip Corp.
Henrichs Law Firm
Attn: Alan W. Forsley, Esq.
835 Wilshire Blvd #300
Los Angeles, CA 90017

Request for Special Notice
Attys/Tranquilino & Raynaldo Mendoza
and Brenda Low/Harlan Estate
David Marks/The Marks Firm
10000 Memorial Dr, #760
Houston, TX 77024

Atty to Jefferson County
Linebarger Goggan Blair Pena & Sampson
Attn Clayton Mayfield, Esq.
1148 Park Street
Beaumont, TX 77701-3614

Request for Special Notice
Atty/State St Bank
Steven B. Levin, Esq.
Brown Rudnick Freed & Gesmer
One Financial Center
Boston, MA 02111

EXHIBIT __1__ PAGE 92

Request for Special Notice
State St Bank Trust Co/Global Inv Serv
Corp Trust
Robert C. Butzier
2 Ave de Lafayette, 6th Fl
_ _on, MA 02102-0778

Request for Special Notice
Jonathan Mitchell, President
2828 Roanoke Lane
Tyler, TX 75701

Request for Special Notice
Holly E. Kendig. Esq.
O'Melveny & Myers LLP
400 South Hope St
Los Angeles, CA 90071-2899

Req Spec Not/Atty County of Comal
Michael Reed, Esq.
McCreary Veselka Bragg & Allen PC
Post Office Box 26990
Austin, TX 78755

Req for Spec Not/IOS Capital,Inc.
Rosa Dominy, Bankruptcy Admin
IOS Capital, Inc.
1738 Bass Road
Post Office Box 13708
Macon, GA 31208-3708

Req for Spec Not
Atty/Meridian/Lloyd's/Great Lakes
Musick Peeler & Garrett LLP
Attn: Richard S. Conn
624 S. Grand Ave #2000
Los Angeles, CA 90017

Req for Spec Notice
Co- Def Atty to Nandial Patel MD
Wright & Kidwell PC
Attn: Matt Catalano
505 N. Big Spring #300
Midland, TX 79701

Req Spec Not/Atty for McIlroy Estate
Gray.Hart LLP
Attn: Jay K. Gray
2419 Highway 121
Bedford, TX 76021

Req Spec Not/Atty HPH Associates
Hardy & Atherton, P.C.
Attn Jerry L. Atherton
909 ESE Loop 323, Suite 750
Tyler, TX 75701

Req Spec Not
__̄°T Corp
   Judith Archer, Esq.
_ _ N. Maple Ave, Rm 1128M1
Basking Ridge, NJ 07920

Request for Special Notice
Attys/Robert & Sheila Snukal
Milbank Tweed Hadley & McCloy LLP
Attn G.Bray/F. Neufeld
601 S. Figueroa St, 30th Fl
Los Angeles. CA 90017

Req Spec Not/US Dept of Health &
Human Svcs. Ctrs Medicare/Medicaid Svcs
Assistant U.S. Attorney
J.Gordon/L.Weidman/C.Bauer
300 N. Los Angeles St #7516
Los Angeles. CA 90012-9834

Request for Special Notice
Atty/Fayette County Appraisal Dist
John T. Banks, Esq.
Perdue, Brandon, Fielder, Collins & Mott
6300 La Calma, Suite 450
Austin, TX 78752

Req Spec Not Atty/Eleanor Fleming
Houck & Balisok
Attn: Russell S. Balisok, Esq.
PO Drawer 8170
Universal City, CA 91618-8170

Req for Spec Not/Atty for
Superior Nat'l Ins Co In Liquidation
Carole Runcie Sherman, Esq.
26541 Agoura Road
Calabasas, CA 91302

Req for Spec Notice
Dennis Simon
Crossroads LLC
9 Executive Circle, Suite 190
Irvine, CA 92614

Req for Spec Not/John Przybyla
Provost Umphrey Law Firm
Attn: J. Fisher/M.Sparks
490 Park Street
Beaumont, TX 77704

Req Spec Not/Atty for Covenant Care
Pharmacy Support Services
c/o Andrew Torok, Gen Counsel
27071 Aliso Creek Rd #100
Aliso Viejo, CA 92656

Req Spec Not/Atty Osburn Estate
Noteboom & Parker
Attn: Dina K. Madison
669 Airport Freeway, #100
Hurst, TX 76053

Req Spec Not
Sun Healthcare Group, Inc.
Alicy Nystel Page, Esq.
101 Sun Ave NE
Albuquerque, NM 87109

Request for Special Notice
Attys/Sysco Foodservice/Citicorp Vendo
Financer
Hemar Rousso & Heald LLP
Attn: Kenneth G. Lau
15910 Ventura Blvd, 12th Fl
Encino, CA 91436-2829

Req Spec Not/US Dept of Health &
Human Svcs. Ctrs Medicare/Medicaid
Suzanne K. Yurk
Ass't Regional Counsel
Health Care Financing Admin
50 United Nations Plaza #420
San Francisco, CA 94102

Request for Special Notice
Todd Andrews
3924 Park Place No. 20
Montrose, CA 91020

Req Spec Not
Bill Angelowitz
Daily Insights
225 West 34th St #403
New York, NY 10122

Req for Special Notice
L.Degroat/C.Geller/Heirs DeGroat Estate
The Williams Firm
Attn: Stephen N. Williams
2467 Calder Ave
Beaumont, TX 77702

Req for Spec Notice
Atty/Asereth Medical Services Inc.
Paul B. Nesbitt, Esq.
Nesbitt & Associates
9601 Wilshire Blvd, #828
Los Angeles, CA 90210

Req Spec Not/Atty for Mildred Gaines
Bain, Files, Jarrett & Bain
109 West Ferguson
PO Box 2013
Tyler, TX 75710

Req Spec Not/Atty M. Muccianti
Rein Evans & Sestanovich LLP
Attn: Byron Z. Moldo/Patrick Fraioli
1925 Century Park East, 16th Fl
Los Angeles, CA 90067

Req Spec Not/Atty to Comal and
Taylor Counties/Abilene
Attn Michael Reed, Esq.
McCreary Veselka Bragg & Allen
PO Box 26990
Austin, TX 78755-0990

Spec Not Req/Atty for O'Quinn
Charles Soechting
O'Quinn, Laminack & Pirtle
400 West Hopkins, Suite 101
San Marcos, TX 78666


EXHIBIT 1 PAGE 93

Spec Not Req/Atty for Quinn
Gerald Treece
South Texas College of Law
1303 San Jacinto
Houston, TX 77002

Spec Not Req/Atty to Shepard Estate
Perkins Coie LLP
Attn: Steven G.F. Polard
1620 26th St, 6th Fl
Santa Monica, CA 90404

Spec Not Req/Atty to So Desert Clinic Pharm e
tal
Irell & Manella
Jeffrey Reisner/Ravi Flanagan
840 Newport Center Dr, #400
Newport Beach, CA 92660-6324

Spec Not Req/O'Burton Estate
Law Office Jeffrey H. Rasansky
Attn Davette J. Speer, Paralegal
3811 Turtle Creek Blvd #1640
Dallas, TX 75219

Spec Not Req/Atty Lloyds, et al
Kristi Weiler Dean, Esq.
Law Office Kristi Weiler Dean
6345 Balboa Blvd
Office Park II Suite 230
Encino, CA 91316-1525

Spec Not Req/Atty to Riverside Cty
Paul McDonnell – Treasurer/Tax Collector
Attn Maria O'Neil
County of Riverside
P.O. Box 12005
Riverside, CA 92502-2205

Spec Not Req/Regan Capital I, Inc.
Regal Capital I, Inc.
Attn Elliot H. Herskowitz
PO Box 626 Planetarium Station
New York, NY 10024-0540

Spec Not Req/Atty to May
Sorrell Anderson Lehrman Maixner Ridulfo
711 N. Carancahua, #1200
Corpus Christi, TX 78475

Spec Not Request
Tyler & Wilson
Attn Francesca Brotman-Orner
6500 Wilshire Blvd #125
Los Angeles, CA 90048

Attorney for Medicom, Inc.
. nt M. Lentini, Esq.
. ld County Road, Suite 202
Garden City, NY 11530

Spec Not Req/Atty for the Bradys
Nunley Davis Jolley & Hill LLP
Attn: William A. Brant, Esq.
1580 S. Main St, Suite 200
Boerne, TX 78006

Spec Not Req/Atty Gates McDonald Gibbons
#120515 Gates McDonald fka Gibbons Co
Seals & Tenenbaum, APC
Attn: Jay M. Tenenbaum, Esq.
2323 W. Lincoln Ave, #127
Anaheim, CA 92801

Spec Not Req
Southern Desert Clinic Pharmacy
27071 Aliso Creek Road
Aliso Viejo, CA 92656

Spec Not Req/Atty to Andrews-Beseda
Law Offices of Dean W. Greer
2929 Mossrock, Suite 105
San Antonio, TX 78230

Spec Not Req/Atty TX Human Resources
Flora A. Fearon, Asst Atty Gen of TX
Bankruptcy & Collections Div
P.O. Box 12548
Austin, TX 78711-2548

Spec Not Req/Atty to Amer Express
SVCS Co Inc Corp Card
c/o Becket & Lee LLP
PO Box 3001 Dept. AC
Malvern, PA 19355-0701

Spec Not Req/TX Comptroller
John Mark Stern
Ass't Atty General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Spec Not Request
Leonard & Catherine May
7433 FM 70
Bishop, TX 78343

Atty to AIES Ins Co
Brad Reager, Claims Analyst
A.I.G.T.S
Healthcare Claims Department
2 Rincon Center
121 Spear Street, 6th Floor
San Francisco, CA 94105

Attorneys for Ken Kerr
Robert Brumfield, Esq.
Price & Brumfield
841 Mohawk Street, Suite 200
Bakersfield, CA 93309

Spec Not Req/Atty for Anna Louis Daniels
Clarkson, Gore & Marsella
Attn: Scott C. Clarkson. Esq.
3424 Carson Street, Suite 350
Torrance, CA 90503

Spec Not Req/Atty for Summit Care TX
Leonard A. Goldman. Esq.
Law Office of Leonard A. Goldman
1900 Ave of the Stars, #1800
Los Angeles, CA 90067

Spec Not Req/Atty to GE Cap
Glass & Goldberg
Attn Marshall F. Goldberg
21700 Oxnard St, #430
Woodland Hills, CA 91367-3665

Spec Not Req/Atty Lloyds, London et al
J. Sheldon Capeloto
McKinley & Capeloto
225 South Lake Avenue, Suite 300
Pasadena, California 91101

Spec Not Req/Atty to Susan Fleishman
Law Office of Marc Lieberman
Attn Marc Lieberman/Karie Kaiser
1875 Century Park East, #2200
Los Angeles, CA 90067-2523

Spec Not Req/Atty to G. Scurlock
Attn J. Wayne Little
Riley Dornburg Little & Wham
220 W. Davis
Conroe, TX 77301

Spec Not Req/Atty to E. Zolla
Good Wildman Hegness & Walley
Attn John A. Stillman, Esq.
5000 Campus Drive
Newport Beach, CA 92660

Spec Not RequestAtty to Baylor Health
Haynes & Boone LLP
900 Main St, Suite 3100
Dallas, TX 75202

Spec Not Request
Atty to Calwest Industrial Properties
Glen Dresser, Esq.
12650 Riverside Dr #100
North Hollywood, CA 91607

Kaye Scholer LLP
Ronald L. Leibow
1999 Avenue of the Stars, Ste. 1600
Los Angeles, CA 90067


EXHIBIT __L__ PAGE 94

Madison Liquidity Investors
4210 Shawnee Mission Parkway, Suite
310A
Fairway, KS 66205
Attn: Antonia Roberson

Scott Krochek
Argo Partners
12 W 37th Street, 9th Floor
New York, NY 10018

Spec Not Request
Attys. For Cedar-Sinai Med. Ctr.
Lance N. Jurich, Esq.
Loeb & Loeb LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA  90067-4164

Spec Not Request
Neil H. Herskowitz
ReGen Capital I, Inc.
PO Box 626, Planetarium Station
New York, NY 10024-0540

EXHIBIT   1   PAGE 95

DANIEL J. BUSSEL (State Bar No. 121939),
MICHAEL L. TUCHIN (State Bar No. 150375), and
BRENDT C. BUTLER (State Bar No. 211273), Attorneys with
KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 Avenue of the Stars, 33rd Floor
Los Angeles, California 90067-5061
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090

Reorganization Counsel for
Debtors and Debtors in Possession

Debtors' Mailing Address
27442 Portola Parkway, Suite 200
Foothill Ranch, CA 92610

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>**FOUNTAIN VIEW, INC.**, a Delaware corporation, et al.<br><br>                 Debtors. | Case No.:   LA 01-39678 BB through<br>              LA 01-39697 BB<br><br>And       LA 01-45516 BB;<br>              LA 01-45520 BB; and<br>              LA 01-45525 BB<br><br>(Jointly Administered under Case No. LA 01-39678 BB)<br><br>Chapter 11<br><br>**MODIFICATION OF DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION DATED APRIL 22, 2003**<br><br>**Hearing Held:**<br><br>**Date:**   July 10, 2003<br>**Time:**   11:00 a.m.<br>**Place:**  Courtroom 1475<br>              Roybal Federal Building<br>              255 E. Temple Street<br>              Los Angeles, CA 90012 |

*(margin text, vertical:)* KLEE, TUCHIN, BOGDANOFF & STERN LLP 2121 AVENUE OF THE STARS, 33RD FLOOR LOS ANGELES, CALIFORNIA 90067-5061 (310) 407-4000

EXHIBIT 2 PAGE 96

1   Fountain View, Inc. and its 22 chapter 11 affiliates, the debtors and debtors in

2   possession in the above-captioned, jointly administered chapter 11 cases (the "Debtors")

3   hereby modify the *Debtors' Third Amended Joint Plan Of Reorganization Dated April 22,*

4   *2003* (as further amended, the "Plan")[1] as follows:

5       1.      The Debtors modify the definition of Ordinary Course Administrative

6   Claims in Section I (Definitions) of the Plan to include Administrative Tax Claims.

7   Accordingly, the definition of Ordinary Course Administrative Claims will now provide as

8   follows:

9       **"Ordinary Course Administrative Claims"** means any
   Administrative Tax Claims and any Administrative Claim arising
10   from the provision of goods or services to the Debtors in the
   ordinary course of business of the Debtors and the provider of
11   goods or services after the Petition Date and before the Effective
   Date.
12

13

14      2.      The Debtors modify the treatment of Claims in Class 3 (Secured Tax

15   Claims) to provide that such treatment leaves unaltered all other legal, equitable, and

16   contractual rights of such holders with respect to such Allowed Class 3 Claims.  In addition,

17   the second romanette (ii) is modified to romanette (iii) to conform to the appropriate

18   numbering sequence.  Accordingly, the treatment of Claims in Class 3 will now provide as

19   follows:

20      **Treatment:** Unless the holder of an Allowed Class 3 Claim
   agrees to other treatment, (A) the Disbursing Agent shall pay to
21   such holder cash in the allowed amount of such holder's Class 3
   Allowed Claim on the latest of (i) as soon as reasonably
22   practicable after the Effective Date; (ii) 30 days after the date on
   which the Secured Tax Claim becomes an Allowed Secured Tax
23   Claim; or (iii) the date such Allowed Secured Tax Claim becomes
   due and payable in accordance with its terms, or (B) the holder of
24   a Claim in Class 3 shall retain unaltered all other legal, equitable,
   and contractual rights of such holder with respect to such Class 3
25   Allowed Claim.
26

27                      EXHIBIT 2 PAGE 97

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1880 CENTURY PARK EAST, SUITE 200
LOS ANGELES, CALIFORNIA 90067-1698
(310) 407-4000

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

3. The Debtors modify the definition of ADR Procedures in Section I (Definitions) of the Plan to provide that the injunction implementing the ADR procedures in furtherance of the discharge provisions of section 1141(d) of the Bankruptcy Code shall (i) not extend to the commencement or continuation of litigation against bona fide third party defendants not affiliated with the Debtors or the Reorganized Enterprise, and (ii) expressly reference the discharge provisions of section 1141(d) as the statutory basis for an injunction implementing the ADR Procedures. Accordingly, the definition of ADR Procedures will now provide:

> **"ADR Procedures"** means those procedures (as they may be modified by the Plan and Confirmation Order) supplementing the Claims adjudication procedures set forth in the Code and the Bankruptcy Rules for the liquidation of professional liability Claims established by the *Order Establishing Alternative Dispute Resolution Procedures* (the "ADR Order") entered on the Court's official docket on June 17, 2002. Pursuant to the ADR Procedures, and in furtherance of the discharge provisions of section 1141 of the Bankruptcy Code and the Plan, all holders of prepetition personal injury or wrongful death claims and their attorneys, agents, employees, servants, and successors are enjoined from proceeding against the Debtors and any successors (including the Estates and the Reorganized Enterprise), or any defendant or defendants related to the Debtors or the Reorganized Enterprise with respect to such claims and their insurers. Notwithstanding anything else to the contrary in the Plan, the injunction implementing the ADR Procedure shall not prevent the commencement or continuation of litigation against bona fide third party defendants not affiliated with the Debtors or the Reorganized Enterprise. The Debtors' primary and excess insurance carriers are also obligated to participate in good faith in the mediations provided for by the ADR Procedures. Those parties that submit to the ADR Procedures agree to participate in negotiations and mediate with the Debtors to attempt to reach a settlement. The Plan provides for the Court to enter an injunction pursuant to the Confirmation Order, providing that the commencement or continuation of all personal injury or wrongful death actions will be enjoined from proceeding except in conformity with the ADR Procedures (or, as applicable, the Code's claim adjudication process). Pursuant to the Plan and the Confirmation Order, the ADR Procedures will apply to all personal injury or wrongful death actions that are based on Claims

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 2/2 PAGE 90

1     that arose prior to the Confirmation Date. Relief from the
injunction implementing the ADR Procedures and established by
2     the Confirmation Order will not be granted unless (i) both the
entity seeking relief from the injunction and the Reorganized
3     Enterprise certify in writing that they have attempted to settle their
dispute in good faith pursuant to the ADR Procedures, and,
4     notwithstanding the completion of the ADR Procedures, they have
failed to reach a settlement; or (ii) the entity seeking relief from
5     the injunction established by the Confirmation Order otherwise
establishes good cause not to follow the ADR Procedures under
6
7     the circumstances of the particular case.

8

9     4.  The Debtors modify Section V.A.2 (For Actions in Connection with

10 Plan and Related Matters) to add additional entities to the provisions of that Section and to

11 limit the applicability that Section to acts or omissions only up to the date of the entry of the

12 Confirmation Order. Accordingly, Section V.A.2 of the Plan will now provide:

13    To the maximum extent permitted by law, none of the Debtors,
the Estates, the Reorganized Enterprise, the Agent, the Lenders,
14    the Exit Lenders or their predecessors in interest, the Creditors'
Committee, the Noteholders' Committee or any of their respective
15    members, officers, directors, employees, advisors, professionals or
agents shall have or incur any liability to any holder of a Claim or
16    Interest for any act or omission, from the beginning of time up to
the Confirmation Date in connection with, related to, or arising
17    out of the Reorganization Cases, the pursuit of confirmation of the
Plan, or the consummation of the Plan, except for willful
18    misconduct or gross negligence, and in all respects, the Debtors,
the Estates, the Reorganized Enterprise, the Agent, the Lenders or
19    their predecessors in interest, the Creditors' Committee, the
Noteholders' Committee, and each of their respective members,
20    officers, directors, employees, advisors, professionals or agents
shall be entitled to rely on the advice of their respective counsel
21    with respect to their duties and responsibilities under the Plan.
22
23

24    **PLEASE TAKE FURTHER NOTICE** that at the Confirmation Hearing

25 scheduled for July 10, 2003 at 11:00 a.m. before the Honorable Sheri Bluebond, United

26 States Bankruptcy Judge, Courtroom 1475, Roybal Federal Building, 255 E. Temple Street,

27 Los Angeles, CA 90012, the Debtors will request that the Court find that the preceding

28 modifications comply with Bankruptcy Code section 1127(a) and do not adversely change

EXHIBIT 2 PAGE 99
3

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60778_1.DOC

1  the treatment of the Claim or Interest of any holder who has not accepted such modification

2  in writing.

3

4  DATED:  July 10 , 2003

5

BRENDT C. BUTLER, a Member of
KLEE, TUCHIN, BOGDANOFF & STERN
Reorganization Counsel for Debtors
and Debtors in Possession

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

EXHIBIT 2 PAGE 100

60778_1 DOC

1  DANIEL J. BUSSEL (State Bar No. 121939),
   MICHAEL L. TUCHIN (State Bar No. 150375), and
2  BRENDT C. BUTLER (State Bar No. 211273), Attorneys with
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3  2121 Avenue of the Stars, 33rd Floor
   Los Angeles, California 90067-5061
4  Telephone:    (310) 407-4000
   Facsimile:    (310) 407-9090
5
   Reorganization Counsel for
6  Debtors and Debtors in Possession

7  Debtors' Mailing Address
   27442 Portola Parkway, Suite 200
8  Foothill Ranch, CA 92610

9
                   UNITED STATES BANKRUPTCY COURT
10                  CENTRAL DISTRICT OF CALIFORNIA
                        LOS ANGELES DIVISION
11

12 | In re:                          | Case No.:   LA 01-39678 BB through
                                     |             LA 01-39697 BB
13 | FOUNTAIN VIEW, INC., a Delaware |
   | corporation, et al.             | And         LA 01-45516 BB;
14 |                                 |             LA 01-45520 BB; and
                                     |             LA 01-45525 BB
15 |            Debtors.             |
                                     | (Jointly Administered under Case No.
16                                   | LA 01-39678 BB)

17                                   | Chapter 11

18                                   | **NOTICE OF ENTRY OF ORDER
                                     | CONFIRMING DEBTORS' THIRD
19                                   | AMENDED JOINT PLAN OF
                                     | REORGANIZATION DATED APRIL
20                                   | 22, 2003 AND AUTHORIZING
                                     | SUBSTANTIVE CONSOLIDATION**

21

22                                   |        **Hearing Held:**

23                                   | **Date:**   July 10, 2003
                                     | **Time:**   11:00 a.m.
24                                   | **Place:**  Courtroom 1475
                                     |             Roybal Federal Building
25                                   |             255 E. Temple Street
                                     |             Los Angeles, CA 90012
26

27

28

                        EXHIBIT 3 PAGE 101

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60665_1.DOC

1   **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY**

2   **JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; ALL CREDITORS,**

3   **INTEREST HOLDERS AND INTERESTED PARTIES; AND ALL PARTIES**

4   **ENTITLED TO NOTICE:**

5   **PLEASE TAKE NOTICE THAT** on July 10, 2003, the Bankruptcy Court for

6   the Central District of California entered its *Order Confirming Debtors' Third Amended*

7   *Joint Plan Of Reorganization Dated April 22, 2003 And Authorizing Substantive*

8   *Consolidation* (the "Confirmation Order").[1]

9   **PLEASE TAKE FURTHER NOTICE THAT** except as otherwise provided

10  in the Plan or the Confirmation Order, all entities that have held, currently hold, or may hold

11  a Claim or Interest that would be discharged upon confirmation of the Plan are permanently

12  enjoined from taking any of the following actions on account of that Claim or Interest:

13  (a)   Commencing or continuing any action or proceeding on account of that

14  Claim or Interest other than to enforce a right to a distribution with respect to that Claim or

15  Interest under the Plan;

16  (b)   Enforcing any judgment, award, decree, or order against any property to

17  be distributed under the Plan other than as permitted under the Plan including in accordance

18  with the ADR Procedures approved by the Confirmation Order; and

19  (c)   Creating, perfecting, or enforcing any lien or encumbrance against any

20  property to be distributed under the Plan other than as permitted under the Plan.

21

22

23

24

25

26

27  EXHIBIT 3 PAGE 102

28

---

[1] All terms not defined herein shall have the meaning ascribed to them in the Plan.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60665_1.DOC

1    **PLEASE TAKE FURTHER NOTICE THAT** any entity injured by a willful

2    violation of this injunction is entitled to recover from the violator actual damages (including,

3    without limitation, costs and attorneys' fees) and, in appropriate circumstances, punitive

4    damages.

5    DATED:  July [___], 2003

6                                                            DANIEL J. BUSSEL, ESQ.
                                                            KLEE, TUCHIN, BOGDANOFF & STERN LLP
7                                                            Reorganization Counsel for Debtors and Debtors in
                                                            Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

EXHIBIT 3 PAGE 103

60665_1.DOC

1 DANIEL J. BUSSEL (State Bar No. 121939),
   MICHAEL L. TUCHIN (State Bar No. 150375), and
2 BRENDT C. BUTLER (State Bar No. 211273), Attorneys with
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3 2121 Avenue of the Stars, 33rd Floor
   Los Angeles, California 90067-5061
4 Telephone:    (310) 407-4000
   Facsimile:    (310) 407-9090
5
   Reorganization Counsel for
6 Debtors and Debtors in Possession
7 <u>Debtors' Mailing Address</u>
   27442 Portola Parkway, Suite 200
8 Foothill Ranch, CA 92610
9
                 **UNITED STATES BANKRUPTCY COURT**
10                **CENTRAL DISTRICT OF CALIFORNIA**
                   **LOS ANGELES DIVISION**
11

12 In re:                              | Case No.:    LA 01-39678 BB through
                                                     LA 01-39697 BB
13 **FOUNTAIN VIEW, INC.**, a Delaware
   corporation, et al.                   And          LA 01-45516 BB;
14                                                     LA 01-45520 BB; and
                                                       LA 01-45525 BB
15            Debtors.
                                         (Jointly Administered under Case No.
16                                       LA 01-39678 BB)
17                                       Chapter 11
18                                       **NOTICE OF OCCURRENCE OF
                                         EFFECTIVE DATE OF DEBTORS'
19                                       THIRD AMENDED JOINT PLAN
                                         OF REORGANIZATION DATED
20                                       APRIL 22, 2003**
21                                       _____
22                                            <u>**No Hearing Required**</u>
23
24
25
26
27
28

                    EXHIBIT _4_ PAGE _104_

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; ALL CREDITORS, INTEREST HOLDERS AND INTERESTED PARTIES; AND ALL PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE THAT** on July [__], 2003, the United States Bankruptcy Court for the Central District of California entered its Order Confirming Debtors' Third Amended Joint Plan Of Reorganization Dated April 22, 2003 and Authorizing Substantive Consolidation (the "Confirmation Order").

**PLEASE TAKE FURTHER NOTICE THAT** Section IV.O of the *Debtors' Third Amended Joint Plan Of Reorganization Dated April 22, 2003* (the "Plan")[1] provides that the Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date is defined in the Plan as follows:

> "Effective Date" means the first day that is a Business Day (i) that is at least eleven days after the Confirmation Date, (ii) on which no stay of the Confirmation Order is in effect, and (iii) on which all of the conditions set forth in Section IV.O, below, have been satisfied or waived in accordance with the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors have determined, in their reasonable discretion, that [_____] [__], 2003 is the first Business Day: (i) that is at least eleven days after the Confirmation Date; (b) on which, to the best of the Debtors' knowledge, no stay of the Confirmation Order is in effect; and (c) all of the conditions set forth in Section IV.O of the Plan have been satisfied or waived in accordance with the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors, in their reasonable discretion, have determined that the Plan's Effective Date is [_____] [__], 2003.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan and the Confirmation Order establish a number of bar dates and deadlines in these cases.  These bar dates and deadlines are summarized below:

EXHIBIT 4 PAGE 105

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

ELKE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA, 90067-5061
(310) 407-4000

60662_1.DOC

1        **Bar Date for Non-Ordinary Course Administrative Claims (other than**

2 **Professional Fee Claims and Cure Payments):** Unless the Debtors or the Reorganized

3 Enterprise otherwise agree or as otherwise expressly provided herein, Non-Ordinary Course

4 Administrative Claims other than Professional Fee Claims will be allowed only if:

5          (i)     On or before the [Insert date that is sixtieth day after the Effective

6 Date], the entity holding the Non-Ordinary Course Administrative Claim Files a request for

7 payment of its Claim and serves the request on the Debtors' Counsel, the U.S. Trustee, and

8 counsel for the Committees; and

9          (ii)    The Court allows the Claim by Final Order.

10        The Reorganized Enterprise or any other party in interest may File an objection

11 to such request for payment within the time provided by the Bankruptcy Rules or within any

12 other period that the Court establishes. Entities holding Non-Ordinary Course

13 Administrative Claims that do not timely File and serve a request for payment will be forever

14 barred from asserting those Claims against the Debtors, the Estates, the Reorganized

15 Enterprise, or their respective property.

16        **Bar Date for Professional Fee Claims:** A Professional Fee Claim will be

17 allowed only if:

18          (i)     On or before the [Insert date that is the sixtieth day after the Effective

19 Date], the entity holding the Professional Fee Claim both Files with the Court a final fee

20 application or a motion requesting allowance and payment of the fees and serves the

21 application or motion on the Debtors' Counsel, the U.S. Trustee, and counsel to the

22 Committees; and

23          (ii)    The Court allows the Claim.

24        The Reorganized Enterprise or any other party in interest may File an objection

25 to such application or motion within the time provided by the Bankruptcy Rules or within

26 any other period that the Court establishes. Entities holding Professional Fee Claims who do

27 not timely File and serve a fee application or motion for allowance and payment will be

28 forever barred from asserting those Claims against the Debtors, the Estates, the Reorganized

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1221 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

60662_1.DOC

EXHIBIT 4 PAGE 106

1    Enterprise, or their respective property.

2         **Bar Date for Claims Arising from the Rejection of Executory Contracts or**

3    **Unexpired Leases:**  Any Rejection Damage Claim or other Claim for damages arising from

4    the rejection under the Plan of an executory contract or unexpired lease must be filed with

5    the Court and served upon the Debtors' Counsel and the Reorganized Enterprise by August

6    [__], 2003 at which time the holder of the Claim may elect between payment option 10A or

7    10B, if applicable, by delivering to the Debtors' counsel and the Reorganized Enterprise a

8    written notice of election of option 10A or 10B.  Holders of Class 10 Claims failing to make

9    a timely election between payment option 10A or 10B shall be deemed to elect payment

10   option 10B.  Any such damage Claims that are not timely Filed and served will be forever

11   barred and unenforceable against the Debtors, the Estates, the Reorganized Enterprise, and

12   their respective property; and Entities holding these Claims will be barred from receiving

13   any distributions under the Plan on account of their Rejection Damage Claims or other

14   damage Claims.  Nothing herein extends the bar date applicable to any contract or lease

15   rejected otherwise than under the Plan or for any Claim other than one arising directly as a

16   result of the rejection of a contract or lease under the Plan.

17   DATED:  [____] [__], 2003

18                               DANIEL J. BUSSEL, ESQ.
                            KLEE, TUCHIN, BOGDANOFF & STERN LLP

19                               Reorganization Counsel for

20

21

22

23

24

25

26

27

28                             EXHIBIT A  PAGE 107

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
(310) 407-4000

| In re:                          | CASE NO.: LA 01-39678 BB |
| FOUNTAIN VIEW, INC. et al.,      |                          |
|                        Debtor.   | CHAPTER 11               |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO:

Mr. Roland Rapp, Fountain View, Inc. et al.,
27442 Portola Parkway, Suite 200, Foothill Ranch, CA 92610

Daniel J. Bussel, Esq., Klee, Tuchin, Bogdanoff & Stern LLP,
2121 Avenue of the Stars, 33rd Floor, Los Angeles, CA 90067-5061

Joseph Caceres, Esq., Office of the U.S. Trustee
Ernst & Young Plaza, 725 S. Figueroa Street, 26th Fl, Los Angeles, CA 90017

Counsel for the Bondholders/Robert Aronson, Esq., Akin, Gump, Strauss, Hauer & Feld, LLP
2029 Century Park East, Suite 2600, Los Angeles, CA 90067

Counsel for the Bondholders/James R. Savin, Esq. and Michael S. Stamer, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP, 590 Madison Ave, 20th Fl., New York, NY 10022

Counsel/Unsecured Creditors Committee/Carole Neville, Esq., Sonnenschein Nath & Rosenthal
1221 Avenue of the Americas, New York, NY 10020-1089

Counse/Unsecured Creditors Committee/Michael Lubic, Esq., Sonnenschein Nath & Rosenthal
601 South Figueroa Street, Suite 1500, Los Angeles CA 90017-5704

Counsel for the Secured Lenders/James E. Spiotto, Esq., Chapman and Cutler
111 West Monroe Street, Chicago, IL 60603

1.    You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(1)(a)(v), that a judgment or order entitled (specify) **ORDER CONFIRMING DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION DATED APRIL 22, 2003 AND AUTHORIZING SUBSTANTIVE CONSOLIDATION** was entered on *(specify date)*:  JUL 1 0 2003

2.    I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*:   JUL 1 0 2003

Dated:  JUL 1 0 2003                    JON D. CERETTO
                                        Clerk of the Bankruptcy Court

                                        By: _____
                                        Deputy Clerk

EXHIBIT 4 PAGE 108